# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### SOUTHERN DIVISION

### Case No.: 7:13-cv-145-F

| | | |
|---|---|---|
| LISA COOPER, | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | **MEMORANDUM OF LAW IN** |
| | ) | **SUPPORT OF DEFENDANT'S MOTION** |
| v. | ) | **TO DISMISS PLAINTIFF'S COMPLAINT** |
| | ) | **Fed. R. Civ. P. 12(b)(6) and Local Civil Rule 7.1** |
| THE SMITHFIELD PACKING | ) | |
| COMPANY, INC., | ) | |
| | ) | |
| **Defendant.** | ) | |

Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 7.1, Defendant The Smithfield Packing Company, Incorporated[1] ("Smithfield" or the "Company"), by counsel, submits this memorandum of law in support of its Motion to Dismiss Plaintiff Lisa Cooper's ("Plaintiff" or "Cooper") Complaint for failure to state any claim upon which relief can be granted.

## I. PRELIMINARY STATEMENT

Plaintiff's Complaint is long on bark and short on bite. Her lawsuit arises out of her employment with Smithfield, which she admits ended with her voluntary resignation in July of 2011. The gist of her Complaint is that she was subjected to sexual harassment and then forced to resign. Although these contentions are the lynchpin of her Complaint, Plaintiff fails to support

---

[1] Plaintiff's pleading incorrectly identifies Defendant as The Smithfield Packing Company, Inc.

them with the slightest additional detail. Instead, her Complaint abounds with hollow references to legal buzzwords and conclusory assertions devoid of factual support.

To atone for the factual shortcomings in her pleading, Plaintiff adopts a kitchen sink approach as to the law. She asserts virtually every theory of Title VII and state statutory and common law liability one can muster under the circumstances. But upon cursory review, it is apparent all of her claims suffer the same basic deficiency – a fundamental lack of factual support. This shortcoming spawns additional problems for Plaintiff, as the barren nature of her pleading leaves several claims deficient as a matter of law.

The Supreme Court has explained that a plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff does just this in her Complaint. The Court should not allow her to proceed to discovery on such threadbare allegations. Plaintiff's Complaint should be dismissed.

## II.  FACTUAL ALLEGATIONS[2]

Plaintiff became employed by Smithfield in approximately December 1995. (Compl. ¶ 9.) She voluntarily resigned her employment with the Company on July 19, 2011. (*Id*. ¶ 17.) Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about December 21, 2011. (*Id*. ¶ 4.) The EEOC issued Plaintiff a Notice of Right to Sue on or about April 19, 2013. (*Id*.) Plaintiff then initiated this action.

---

[2] While Defendant disputes the majority of the allegations made in the Complaint on their merits, they are presumed to be true and correct for purposes of this motion only. *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 188 (4th Cir. 2007).

Plaintiff makes a variety of nebulous assertions in her Complaint that sound primarily in sexual harassment. She contends that throughout her employment, she "was qualified for the positions that she held." (*Id.* ¶ 8.) Plaintiff alleges that "beginning in 2007," she was "repeatedly" subjected to "sexually explicit comments" by Superintendent Tommy Lowery ("Lowery"). (*Id.* ¶ 10.) Providing no specifics, Plaintiff asserts Lowery's misconduct continued "over the years 2008, 2009 and 2010." (*Id.*) She then claims that in 2011, the harassment "worsened" when Lowery subjected her to sexual advances, inappropriate sexual contact, and continuous physical and emotional threats. (*Id.*) Plaintiff provides no facts, examples or even anecdotes in support of these claims.

Plaintiff also claims that in 2011, Lowery "subjected her to disparate treatment due to her gender" when he required her to work later than her coworkers; forced her to work closely with him in the office, physically harassed her as she would enter and/or exit the office; required her to complete menial tasks; subjected her to inappropriate inquiries regarding her personal life; and made inappropriate disclosures about his personal life. (*Id.* ¶ 11.) Additionally, Plaintiff contends Lowery pursued an intimate relationship with her and criticized her spouse. (*Id.* ¶¶ 12-13.)

At some point "in 2011," Plaintiff states she requested a transfer to another department, but "was told that there were no vacancies to facilitate the transfer." (*Id.* ¶ 14.) Plaintiff does not identify the individual or individuals with whom she may have spoken about such a transfer.

Plaintiff then contends she "complained" about Lowery to Human Resources Manager Jamie Pope. (*Id.* ¶ 15.) Plaintiff claims she provided Pope with "details of the sexual harassment" and gave him the names of several witnesses "who could support her allegations." (*Id.*) She contends Pope did not investigate her allegations or contact any of the witnesses whose

names she provided. (*Id.*) Plaintiff offers no specific timeframe for this activity, suggesting only that it occurred "in 2011." (*Id.*) Besides making an obtuse reference to the fact that "Supervisors and Human Resources Managers" were aware of "ongoing sexual harassment and other sexually inappropriate workplace behaviors," (*Id.* ¶ 20), Plaintiff fails to assert she ever complained to anyone about Lowery between 2007 – 2010, the timeframe during which she claims Lowery was "repeatedly" harassing her.

Plaintiff alleges that after her "2011" complaint to Human Resources, Lowery's harassment "increased" and no one at the Company "supported her." (*Id.* ¶ 17.) She goes so far as to speculate that the Company "retaliated against her" by "making a concerted effort to get the Plaintiff to quit." (*Id.*) Plaintiff offers absolutely no factual support for this allegation. She only contends that by July 19, 2011, her "working conditions had become so intolerable" – again, a contention leveled with zero factual support – that she was "forced" to submit her resignation and end her employment with Smithfield. (*Id.*)

On this threadbare set of facts, Plaintiff advances a smattering of claims:

COUNT ONE: retaliation in violation of Title VII of the Civil Rights Act of 1964;

COUNT TWO: "wrongful termination" due to "gender discrimination" and because of "sexual harassment, including a Hostile Work Environment," and for "disparate treatment," all in violation of Title VII and North Carolina General Statute §143-422.2;

COUNT THREE: negligent infliction of emotional distress;

COUNT FOUR: intentional infliction of emotional distress; and

COUNT FIVE: negligent supervision and retention of Lowery.

(*Id.* p. 7-8.)

All of these claims should be dismissed for the reasons that follow.

# III. <u>ARGUMENT</u>

## A.     Standard of Review.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the plaintiff's complaint.  When considering such a motion, the Court "'must accept as true all of the factual allegations contained in the complaint.'"  *Anderson*, 508 F.3d at 188 (quoting *Erickson v. Pardus*, 551 U.S. 89, 127 (2007)).  The Court, however, "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments."  *E. Shore Mkts. Inc. v. J.D. Assocs., LLP*, 213 F.3d 175, 180 (4th Cir. 2000).

To satisfy the pleading requirements under Rule 12(b)(6), the plaintiff has the burden of alleging each element of her claim and facts that would support relief.  *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003), *cert. denied*, 540 U.S. 940 (2003) ("While a plaintiff is not charged with pleading facts sufficient to prove her case, as an evidentiary matter, in her complaint, a plaintiff <u>is</u> required to allege <u>facts</u> that support a claim for relief." (emphasis added)); *see also Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 346 (4th Cir. 2006) ("the burden of a plaintiff [is] to allege facts sufficient to state all the elements of her claim").  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the <u>elements</u> of a cause of action." *Twombly*, 550 U.S. at 555 (alteration in original) (emphasis added).

The Supreme Court has explained that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  As a result, a complaint will not survive Rule 12(b)(6) where it contains "'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).

Additionally, there must be sufficient factual allegations in the complaint "to raise a right to relief above the speculative level." *Twombly* 550 U.S. at 555-56. "[T]he pleadings must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action, on the assumption that all the allegations in the complaint are true." *Id*. (internal quotations omitted). Specifically, a plaintiff must present facts that "state a claim to relief that is plausible on its face." *Id.* at 557. A complaint that "pleads facts that are 'merely consistent with' a defendant's liability, . . . 'stops short of the line between possibility and plausibility of entitlement to relief'" and will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557 (explaining that a plaintiff cannot survive a motion to dismiss if the factual allegations in the complaint are "merely consistent with" unlawful conduct).

### B.     Plaintiff Fails to State a Claim of Retaliation.

Retaliation claims brought under Title VII require a plaintiff to show that: 1.) she engaged in a protected activity; 2.) an adverse action was taken against her by her employer; and 3.) a causal connection exists between the first two elements. *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006). Plaintiff fails to establish each of these elements. She alleges she complained to Human Resources Manager Pope about Lowery's conduct, that the Company retaliated against her by making a concerted effort to get her to quit, and that she resigned because her working conditions became intolerable. (Compl. ¶¶ 15, 17.)

These allegations are nothing more than a conclusory recitation of the elements of a retaliation claim. They lack factual support and fail to establish Plaintiff has any right to relief that is plausible on its face. *Twombly*, 550 U.S. at 557. Plaintiff's retaliation claim must be dismissed for several reasons.

First, Plaintiff fails to allege sufficiently any adverse action. Notably, Plaintiff admits she resigned from her employment and was not involuntarily terminated. Her retaliation claim therefore hinges upon a finding she was constructively discharged. Constructive discharge occurs where an employer deliberately makes the working conditions of an employee intolerable in an effort to induce the employee to quit. *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1353-54 (4th Cir. 1995). To prove constructive discharge, a plaintiff must establish: 1.) deliberate employer actions and 2.) intolerable working conditions. *Id*. at 1354. Whether working conditions are made "intolerable" is an objective determination based on a reasonable person standard. *Williams v. Giant Food, Inc.*, 370 F.3d 423, 434 (4th Cir. 2004). Not all unfavorable working conditions render a work environment intolerable. *Id.* (yelling at employee, criticism of employee that she was a poor manager, poor evaluations, chastising employee in front of customer and requiring employee to work when she was injured failed to establish intolerable working conditions establishing constructive discharge).

Here, the Complaint lacks any factual allegations indicating Smithfield made Plaintiff's working conditions intolerable after her complaint against Lowery. Plaintiff simply throws a few choice buzzwords into her pleading, claiming her work conditions became "so intolerable that . . . she was forced to resign." (Compl. ¶ 17.) Thus, all she offers is a generic reference to this element of her retaliation claim, without any additional factual support. Plaintiff therefore fails to allege Smithfield made her working conditions intolerable following her complaint. *Williams*, 370 F.3d at 434 (granting defendant's 12(b)(6) motion where plaintiff failed to show an adverse action under Title VII because she failed to allege facts to support intolerable work conditions for constructive discharge); *Auriemma v. Logan's Roadhouse, Inc.,* No. 7:12cv00284, 2012 WL

5844967, at *4 (W.D. Va. Nov. 19, 2012) (unpublished)[3] (dismissing plaintiff's Title VII retaliation claim on defendant's 12(b)(6) motion because plaintiff failed to assert facts to suggest intolerable working conditions, without which she could not maintain a claim of constructive discharge).[4]

Plaintiff also fails to demonstrate a causal connection between her alleged protected activity – her complaint to Pope – and her resignation. Again, Plaintiff makes only the conclusory statement that Pope and Smithfield "retaliated against her by . . . making a concerted effort to get [her] to quit." (Compl. ¶ 17.) A plaintiff's mere belief that retaliation has occurred "alone is insufficient" to show causation. *See, e.g.*, *Brackman v. Fauquier County, Va.*, No. 02-1161, 72 F. App'x 887, 894 (4th Cir. July 9, 2003) (unpublished); *Tisdale v. Enter. Leasing Co.-SE, LLC*, No. 3:13CV221-MU, 2013 WL 3227927, at *2 (W.D.N.C. June 25, 2013) (unpublished) ("Plaintiff cannot allege a claim of retaliation merely by stating his belief he experienced retaliation."); *Cole v. Hill Phoenix, Inc.*, No. 3:12CV621-HEH, 2013 WL 499341, at *3 (E.D. Va. Feb. 7, 2013) (unpublished) (granting defendant's 12(b)(6) motion and dismissing

---

[3] The unpublished decisions cited throughout this Memorandum of Law are attached as Exhibit A.

[4] Although Plaintiff does not clearly allege it, her Complaint might be read to suggest that her working conditions were made intolerable based on Lowery's alleged sexual harassment. Even if she were making such an allegation, it would not establish constructive discharge. As discussed in more detail below, Plaintiff provides no facts to support her allegations of sexual harassment. *Taylor v. Patuxent Inst.*, No. CCB-09-1111, 2009 WL 4349092, at *5 (D. Md. Nov. 30, 2009) (unpublished) (finding that plaintiff failed to show that she was subjected to objectively intolerable working conditions where plaintiff only alleged that she was the target of continuous harassment and failed to support such a conclusory statement with any facts); *see also infra* Sec. III.C.4.

plaintiff's retaliation claim where plaintiff failed to plead that her employer untimely transmitted her paycheck in response to the plaintiff filing an EEOC charge).

Thus, Plaintiff must do more than baldly assert the Company made a "concerted effort" to get her to quit. How did it do so? What facts, if accepted as true, demonstrate Smithfield engaged in such an effort? Plaintiff's Complaint offers no answers.

Plaintiff cannot rely on temporal proximity alone to establish a causal connection. Temporal proximity may serve to establish the causal connection element of retaliation only where the protected activity and adverse employment action occurred in "very close" temporal proximity. *Krahenbuhl v. Hyde County Schs.*, No. 4:12-CV-170-BO, 2013 WL 1163787, at *3 (E.D.N.C. Mar. 20, 2013) (unpublished) (noting that causal connection can be inferred when an employer's knowledge of a protected activity and the subsequent adverse employment action occur in very close temporal proximity but in the absence of such proximity the plaintiff must offer additional evidence to establish causation); *see also Popo v. Giant Foods LLC*, 675 F. Supp. 2d 583, 590-91 (D. Md. 2009) (proximity between June 2003 protected activity and October 2003 adverse action was insufficient to establish causal connection). A gap of three to four months between the protected activity and the adverse action cannot establish a causal connection based on temporal proximity alone. *Pascual v. Lowe's Home Centers, Inc.*, No. 05-1847, 193 F. App'x 229, 233 (4th Cir. May 24, 2006) (unpublished); *see Crockett v. SRA Int'l*, No. 8:13-cv-00261-AW, 2013 WL 1856447, at *8, __ F. Supp. 2d ___ (D. Md. 2013) ("Standing alone . . . temporal proximity of four months is insufficient to suggest causation").

Plaintiff fails to allege her complaint to Pope and her resignation occurred within a "very close" temporal period. All the Complaint suggests is Plaintiff spoke to Pope sometime in 2011 and resigned on July 19, 2011. Plaintiff's vague allegation that she spoke to Pope – "in 2011" –

prevents any inference of causation between her conversation with Pope and her alleged constructive discharge. The temporal proximity between the two events cannot even be determined. These vague allegations are not enough to meet the pleading standard. *See, e.g.*, *Pyatt v. Harvest Hope Food Bank*, No. C/A No. 3:10-2002-MBS-PJG, 2012 WL 1098632, at *9 (D.S.C. Feb. 1, 2012) (unpublished) (dismissing Plaintiff's claim of retaliation because plaintiff's "vagueness as to the time frame of her opposition activity . . . prevented a reasonable inference of causation based on temporal proximity"); *EEOC v. Tuscarora Yarns, Inc.*, No. 1:09-cv-217, 2010 WL 785376, at *4 (M.D.N.C. Mar. 3, 2010) (unpublished) (dismissing claim of retaliation on defendant's motion to dismiss where no dates were provided and no factual allegations were plead to draw a reasonable inference of sufficient causal connection between alleged protected activity and plaintiff's suspension).

C. **Plaintiff Fails to State a Claim Under Title VII or N.C. Gen. Stat. § 143-422.2.**

Plaintiff haphazardly asserts a number of claims in Count Two of her Complaint. She makes a claim of wrongful termination in violation of N.C. Gen. Stat. § 143-422.2 and brings the following claims under Title VII: wrongful termination due to her gender, disparate treatment, and sexual harassment based on hostile work environment. Plaintiff fails to provide sufficient facts to establish a plausible basis for any of these claims.

1. Plaintiff Fails to State a Claim For Wrongful Termination in Violation of N.C. Gen. Stat. § 143-422.2.

To bring a claim of wrongful termination under North Carolina state law, a plaintiff must show: 1.) she was discharged from employment, and 2.) the discharge was unlawful or in violation of the express public policy of North Carolina. *U.S. EEOC v. Bojangles Rests., Inc.*, 284 F. Supp. 2d 320, 328 (M.D.N.C. 2003). Plaintiff contends she was discharged in violation of

the public policy of the North Carolina Equal Employment Practices Act ("NCEEPA"), N.C. Gen. Stat. § 143-422.2. This claim fails as a matter of law.

As stated in her Complaint, Plaintiff resigned her employment with Smithfield on July 19, 2011. (Compl. ¶ 17.) Although Plaintiff contends her resignation amounted to a constructive discharge, North Carolina does not recognize constructive discharge as a basis for wrongful termination in violation of NCEEPA. Instead, wrongful termination claims brought under North Carolina law must be based on an actual, involuntary discharge. *Jones v. Duke Energy Corp.*, No. 02-1024, 43 F. App'x 599, 600 (4th Cir. Aug. 9, 2002) (unpublished) ("North Carolina courts and federal courts applying North Carolina law have . . . f[ound] repeatedly that no private cause of action exists for . . . constructive discharge in violation of public policy"); *Littell v. Diversified Clinical Servs., Inc.*, No. 1:10CV152, 2013 WL 1951912, at *5-11 (M.D.N.C. May, 10, 2013) (unpublished) (citing *Jones*, noting North Carolina courts have taken no action suggesting they recognize a claim for wrongful constructive discharge, and observing "vast majority of federal district courts addressing the issue have construed North Carolina law in similar fashion"); *Baldwin v. Tradesmen Int'l, Inc.*, No. 5:12-cv-00116-FL, 2013 WL 1192314, at *9 (E.D.N.C. Mar. 22, 2013) (unpublished) (same).

Because Plaintiff does not allege she was involuntarily terminated, her claim of wrongful termination based on N.C. Gen. Stat. § 143-422.2 is legally deficient. *Jones*, No. 02-1024, 43 F. App'x. at 600; *Baldwin*, No. 5:12-cv-00116-FL, 2013 WL 1192314, at *9. The Court should dismiss it.[5]

---

[5] To the extent Plaintiff also alleges disparate treatment and sexual harassment in violation of NCEEPA, these claims fail as a matter of law. NCEEPA does not provide a private cause of action for these claims. *See, e.g.*, *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (continued…)

2.    <u>Plaintiff Fails to State a Claim For Wrongful Termination Due to Gender.</u>

Absent direct evidence, a plaintiff may establish a claim of wrongful termination under Title VII by showing that: 1.) she is a member of a protected class; 2.) she suffered an adverse employment action; 3.) she was performing her job duty at a level that met the expectations of her employer at the time she suffered the adverse employment action; and 4.) with regard to a termination claim, her position remained open or was filled by a similarly qualified applicant outside the plaintiff's protected class. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004).

Plaintiff fails to allege at least three of these elements. First, she does not even attempt to allege her position was left open or filled by someone outside of her protected class. Plaintiff's Complaint lacks any mention of, or reference to, her position following her resignation.

Second, Plaintiff fails to allege she was performing her job at a level that met Smithfield's expectations. She summarily states she was "qualified" for the position she held, (Compl. ¶ 8), but provides no factual support for this assertion. *See, e.g., Baqir v. Principi*, 434 F.3d 733, 742 (4th Cir. 2006) (dismissing plaintiff's Title VII claim where she failed to show that she met her employer's legitimate job expectations); *Hill*, 354 F.3d at 298 (same); *see also DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (plaintiff's own belief that her job performance met the expectations of her employer is irrelevant). Being qualified for a position is not indicative of an individual's job performance at the time of an alleged adverse action.

---

(4th Cir. 2000) (no cause of action under NCEEPA for sexual harassment); *Jones*, No. 02-1024, 43 F. App'x. at 600 ("[N]o private cause of action exists for retaliation, hostile work environment, disparate treatment . . . in violation of [North Carolina] public policy.").

Finally, Plaintiff fails to allege she suffered an adverse action. An adverse employment action is a "discriminatory act that 'adversely affect[s] the terms, conditions or benefits of the plaintiff's employment.'" *James v. Booz-Allen & Hamilton, Inc.*, 368 F.2d 371, 375 (4th Cir. 2004). It involves "a change in the terms or conditions of employment which has a significant detrimental effect on [] opportunities for promotion or professional development." *Id.* at 376; *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999). Actions typically found to be adverse include discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility or reduced opportunities for promotions. *Boone*, 178 F.3d at 255.

The only factual allegation in Plaintiff's Complaint that could possibly represent an adverse action is Plaintiff's contention she was forced to resign. As explained above, this allegation is insufficient because Plaintiff provides no factual support for her assertion the Company made her working conditions "intolerable." As a result, even accepting all of the allegations in Plaintiff's Complaint as true, she fails to establish a claim of wrongful termination due to her gender. *Jordan*, 458 F.3d at 346 (plaintiff must allege each element of his claim and facts to support it).[6]

---

[6] To be sure, Plaintiff complains she was required to work later than her coworkers, spend time working closely with Lowery, perform menial tasks, and endure inappropriate inquiries regarding her personal life as well as disclosures regarding Lowery's personal life. (Compl. ¶ 11.) As discussed in more detail in Section III.C.3, these allegations sound in relation to Plaintiff's claim of disparate treatment – presumably they are her attempt to demonstrate she was treated differently than individuals outside her protected class. (*Id.*); *infra* Sec. III.C.3. More importantly, however, even if these allegations did support Plaintiff's claim of wrongful termination due to gender, they do not qualify as adverse actions. These allegations do not affect the terms, conditions or benefits of Plaintiff's employment, nor are they the types of actions that typically constitute adverse actions such as discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility or reduced opportunities for promotions. *Boone*, 178 F.3d at 255.

3.    Plaintiff Fails to State a Claim For Disparate Treatment.

To establish a prima facie case of disparate treatment, Plaintiff must plead that: 1.) she was a member of a protected class; 2.) she was satisfactorily performing her job; 3.) she suffered an adverse employment action; and 4.) she was treated differently than similarly situated employees outside her protected class. *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). Again, Plaintiff fails to plead the elements of her claim and accordingly fails to state a claim upon which relief can be granted.

As discussed above, Plaintiff does not plead that she was satisfactorily performing her job or that she suffered an adverse employment action. While these failures alone are sufficient to merit dismissal of this claim, Plaintiff also fails to plead that that she was treated differently than others outside her protected class. *Garcia v. Teledyne Energy Sys. Inc.*, No. 12-cv-1634-JKB, 2012 WL 4127878, at *2 (D. Md. Sept. 19, 2012) (unpublished) ("Plaintiff does not identify in the complaint a similarly situated employee or allege that he was treated differently than such an employee, so the complaint does not state a claim for disparate treatment under Title VII.").

Plaintiff provides no examples or incidents in which she was treated differently than male co-workers, let alone those similarly situated to her. In fact, the only reference she makes to individuals outside her protected class is her statement that Smithfield's employees "were unjustifiably treating female employees differently than non-female employees," a statement for which Plaintiff provides absolutely no factual support. (Compl. ¶ 22.) Plaintiff also conclusorily states she suffered "disparate treatment" when she was required to work later than her coworkers, spend time working closely with Lowery, perform menial tasks, and endure inappropriate inquiries regarding her personal life as well as disclosures regarding Lowery's personal life. (*Id*. ¶ 11.) These allegations also miss the mark. None show or even infer that

while Plaintiff was allegedly subjected to these work conditions, others outside of her protected class were not.

The best Plaintiff can do is point to her claim that she had to work later than her "coworkers."  But Plaintiff does not suggest these "coworkers" were exclusively male.  Thus even this assertion falls woefully short of establishing that she was treated differently than similarly situated employees outside her protected class.  As such, Plaintiff fails to state a claim of disparate treatment and her claim fails as a matter of law.

4.    Plaintiff Fails to State a Claim For Sexual Harassment Based on Hostile Work Environment.

Plaintiff fails to state a claim of hostile work environment because she does not allege harassment that was sufficiently severe or pervasive.  To establish a claim of sexual harassment based on hostile work environment under Title VII, a plaintiff must allege: 1.) she was harassed because of her sex; 2.) the harassment was unwelcome; 3.) the harassment was sufficiently severe or pervasive to create an abusive working environment; and 4.) there is some basis for imposing liability on the employer.  *Hartsell v. Duplex Prods. Inc.*, 123 F.3d 766, 772 (4th Cir. 1997).  "[P]laintiffs must clear a high bar in order to satisfy the severe or pervasive test." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008).  Conduct is sufficiently severe or pervasive to be actionable only where it "alter[s] the conditions of the victim's employment and creates an abusive working environment.'" *First Union Nat'l Bank*, 202 F.3d at 242 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  To determine whether a work environment is hostile or abusive, a court will look to all of the circumstances surrounding the alleged conduct including: 1.) the frequency of the discriminatory conduct; 2.) its severity; 3.) whether it is physically threatening or humiliating, or a mere offensive utterance; and 4.) whether it

unreasonably interferences with an employee's work performance.  *Id*. (citing *Harris*, 510 U.S. at 23).

Plaintiff's Complaint does not establish Lowery's conduct was severe or pervasive.  The heart of Plaintiff's hostile work environment claim is her allegation that she was subjected to sexually explicit statements and comments, sexual advances, inappropriate sexual contact, continuous physical and emotional threats, and pursuits from Lowery of an intimate relationship including Lowery's implications that Plaintiff submit to his demands to continue her employment.[7]  (Compl. ¶¶ 10, 12.)  These allegations are conclusory statements without any factual support.  Because not all harassment directed at an individual because of her sex is actionable, Plaintiff must plead additional facts to establish a plausible claim of sexual harassment.  *Hartsell*, 123 F.3d at 772.

Here, Plaintiff asserts claims that are "merely consistent with" unlawful conduct.  As such, she fails to state a claim for relief that is plausible on its face and her claim cannot survive at the motion to dismiss stage.  *Iqbal*, 556 U.S. at 678; *Twombly* 550 U.S. at 557.  Plaintiff's allegations do not indicate what was said, how Plaintiff was touched, or the nature of the any of

---

[7] Smithfield focuses on these allegations regarding Plaintiff's claim of sexual harassment because they are the only allegations that even come close to pleading a claim of sexual harassment.  Plaintiff additionally alleges that Lowery required her to work late, forced her to work closely with him in the office, physically harassed her as she would enter and/or exit the office; required her to complete menial tasks; subjected her to inappropriate inquiries regarding her personal life; and made inappropriate disclosures about his personal life.  But these allegations were pled by Plaintiff as "disparate treatment."  (Compl. ¶ 11.)  Additionally, Plaintiff's allegation that Lowery criticized her husband cannot serve as a basis of her sexual harassment claim because there is no indication that this resulted because of her sex.  (*Id*. ¶ 13.); *Hartsell*, 123 F.3d at 772 (explaining that Title VII requires offensive comments should be related to the victim's gender nothing that "only harassment that occurs because of gender is actionable").  A plaintiff is harassed "because of" his or her sex only if, "but for" the employee's sex, he or she would not have been the victim of discrimination.  *Id*.

the alleged propositions. Without this information it is impossible to determine whether the conduct was sufficiently severe or pervasive to establish a claim of hostile work environment. *Tuscarora Yarns*, No. 1:09-cv-217, 2010 WL 785376, at *3 (dismissing plaintiff's claim of hostile work environment on a 12(b)(6) motion because plaintiff relied only conclusory allegations of harassment including unwelcome sexual comments, inappropriate touching, sexual assault and propositioning for sex).

Plaintiff's sexual harassment claim is precisely the type of "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements" that the Supreme Court has rejected. *Iqbal*, 556 U.S. at 678. Complaints, such as this one, that may be "flush with innuendo" but lacking in sufficient facts, fail to demonstrate plausibility. Therefore, Plaintiff's claim of sexual harassment should be dismissed. *See Tuscarora Yarns*, No. 1:09-cv-217, 2010 WL 785376, at *3.

**D.  Plaintiff's Claim of Intentional Infliction of Emotional Distress Fails as a Matter of Law Because She Has Not Alleged Outrageous Conduct.**

The elements of a claim of intentional infliction of emotional distress are: 1.) extreme and outrageous conduct by the defendant; 2.) which is intended to and does in fact cause 3.) severe emotional distress. *Bonham v. Wolf Creek Acad.*, 767 F. Supp. 2d 558, 572 (W.D.N.C. 2011); *Waddle v. Sparks*, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992). Extreme and outrageous conduct is conduct "'so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Bonham*, 767 F. Supp. 2d at 572. Whether conduct is extreme and outrageous is a question of law. *Id.*

While "North Carolina courts have been extremely reluctant to find actionable IIED claims in the employment context," there are circumstances where conduct involving sexual harassment may constitute outrageous conduct. *Bratcher v. Pharm. Prod. Dev. Inc.*, 545 F. Supp. 2d 533, 544-45 (E.D.N.C. 2008) (citing *Efird v. Riley*, 342 F. Supp. 2d 413, 427 (M.D.N.C. 2004)). Conduct has been found to be outrageous where the allegations include the following: "an unfair power relationship between defendant and plaintiff; explicitly obscene or 'X rated' language; sexual advances towards plaintiff; statements expressing desire to engage in sexual relations with plaintiff, or; defendant either touching plaintiff's private areas or touching any part of the plaintiff's body with his private parts." *Guthrie v. Conroy*, 152 N.C. App. 15, 23, 567 S.E.2d 403, 409 (2002).

Significantly, not all conduct involving sexual harassment will automatically qualify as extreme and outrageous. *Ortiz v. Big Bear Events, LLC*, No. 3:12-cv-341-RJC-DCK, 2013 WL 247444, at *4 (W.D.N.C. Jan. 23, 2013) (unpublished). For example, the Western District of North Carolina held that conduct was not extreme and outrageous where the alleged harasser was plaintiff's supervisor, touched plaintiff inappropriately, made sexually offensive comments toward plaintiff, and made comments toward third parties about engaging in sexual acts with the plaintiff. *Id.* (granting defendant's motion to dismiss on plaintiff's intentional infliction of emotional distress claim). This Court likewise held there was no outrageous conduct – and therefore no claim of intentional infliction of emotional distress – where the harasser attempted to kiss the plaintiff, followed the plaintiff to her car and the restroom, and became so aggressive with his flirtations that the plaintiff had to physically push him away. *Moody-Williams v. Liposcience*, No. 5:12-CV-104, 2013 WL 3064010, at *8, 13 __ F. Supp. 2d at ___ (E.D.N.C.

2013) (dismissing intentional infliction of emotional distress claim at the motion to dismiss stage).

Plaintiff's lack of factual allegations and conclusory pleading is once again her undoing. Just as Plaintiff fails to plead facts sufficient to support a plausible claim of sexual harassment, she fails to plead facts sufficient to state extreme and outrageous conduct. Plaintiff's conclusory allegations of sexually explicit statements and comments, sexual advances, inappropriate sexual contact and continuous physical and emotional threats are devoid of any factual details. Consequently, they do not allege behavior that rises to the level of extreme and outrageous conduct. *Dwyer v. Smith*, 867 F.2d 184, 194-95 (4th Cir. 1989) (evidence insufficient for sexual harassment claim is also necessarily insufficient for a claim of intentional infliction of emotional distress based on the same conduct). To plead outrageous conduct, the behavior alleged must differ even from that universally regarded as inappropriate and abhorrent. *Ortiz*, No. 3:12-cv-341-RJC-DCK, 2013 WL 247444, at *4. Plaintiff's vague and conclusory allegations do not meet this standard and therefore her intentional infliction claim fails as a matter of law.

### E. Plaintiff's Claims of Negligence Fail as a Matter of Law.

Finally, Plaintiff advances two negligence-based claims: negligent infliction of emotional distress, and negligent supervision and retention. As a threshold matter, both claims are barred by the exclusivity provisions of the North Carolina Workers' Compensation Act and the Court must dismiss them on that basis. Additionally, and even if the principle of workers' compensation exclusivity did not bar Plaintiff's negligence claims, she fails to state facts sufficient to allow either to advance beyond the pleading stage.

1.    <u>Plaintiff's Negligent Infliction of Emotional Distress Claim Fails as a Matter of Law.</u>

Plaintiff's claim of negligent infliction of emotional distress is barred by the North Carolina Workers' Compensation Act. Workplace injuries resulting from negligence are covered by the North Carolina Workers' Compensation Act. *McAllister v. Cone Mills Corp.*, 88 N.C. App. 577, 580, 364 S.E.2d 186, 188 (1988) ("Even where the complaint alleges willful and wanton negligence and prays for punitive damages, the remedies under the Act are exclusive."). Injuries are covered by the Workers' Compensation Act where they: 1.) are caused by an accident; 2.) arise out of the employment; and 3.) are sustained in the course of employment. *Shaw v. Goodyear Tire & Rubber Co.*, ____N.C. App. ____, 737 S.E.2d 168, 177 (2013). The only remedies available for covered injuries are those provided by the Act; employees may not choose to pursue an "alternate avenue of recovery." *McAllister*, 88 N.C. App. at 580, 364 S.E.2d at 188.

Without incorporating any specific facts, Plaintiff alleges Smithfield "negligently engaged in conduct and it was reasonably foreseeable that such conduct would cause [Plaintiff] to suffer emotional distress." (Compl. ¶ 25.) While Plaintiff does not specifically label them as such, the only allegations in the Complaint that sound in negligence are her claims Pope failed to investigate her report of Lowery's conduct and that the Company retained Lowery "in spite of his known previous illegal and unethical conduct." (*Id.* ¶¶ 15; 21.)[8] The North Carolina Court of Appeals has recently ruled that a "plaintiff's NIED claim caused by defendant's mishandling of her [harassment] complaint would fall within the purview of the Industrial Commission as her

_____

[8] The latter allegation, which presumably forms the basis for Plaintiff's negligent supervision and retention claim, is addressed in Section III.E.2 below.

emotional distress is an 'injury' recognized by the Workers Compensation Act." *Shaw*, ___ N.C. App. at ___, 737 S.E.2d at 177-78. Plaintiff pleads precisely this scenario. As such, she pleads herself out of the jurisdiction of this Court.

*Shaw* makes clear that Plaintiff's emotional distress allegations constitute an injury within the meaning of the Workers' Compensation Act. To the extent Plaintiff alleges she incurred such injuries as a result of Smithfield's negligence, she is barred from pursuing them before this Court. Consequently, her negligent infliction claim must be dismissed.

Plaintiff's negligent infliction claim fails on an additional ground. Once her terse allegations regarding Pope's conduct are removed as a basis for supporting an allegation of negligent infliction, she is left only with allegations Smithfield – specifically, Lowery – intentionally caused her injuries. These assertions cannot form the basis of a negligent infliction claim.

To establish a claim of negligent infliction, a plaintiff must plead that: 1) the defendant engaged in negligent conduct; 2) it was foreseeable that such conduct would cause the plaintiff severe emotional distress, and 3) the conduct caused the plaintiff severe emotional distress. *Bonham*, 767 F. Supp. 2d at 573. Negligent infliction claims cannot be based on the same facts that support a plaintiff's intentional infliction claim. *Id.* (explaining that negligent infliction of emotional distress claims based on the same facts as the plaintiff's claim of intentional infliction of emotional distress are subject to dismissal because the factual allegations are only intentional).

All of Lowery's alleged acts, however, are intentional acts. Indeed, they serve as the basis for Plaintiff's sexual harassment and intentional infliction claims. Acts of sexual harassment are "'inherently intentional'" and facts that support a plaintiff's claim of intentional infliction cannot support a claim of negligent infliction. *Bonham*, 767 F. Supp. 2d at 573;

*Barbier v. Durham County. Bd. of Educ.*, 225 F. Supp. 2d 617, 631 (M.D.N.C. 2002) (quoting *Thomas v. N. Telecom, Inc.*, 157 F. Supp. 2d 627, 637 (M.D.N.C. 2000)). "When the plaintiff's complaint alleges acts of discrimination that are intentional in nature, and simply concludes that the acts were committed negligently [or recklessly], [the complaint] is insufficient to state a claim as negligent infliction of emotional distress." *Barbier*, 225 F. Supp. 2d at 617. Because the only allegations in the Complaint besides those regarding Pope are intentional acts, Plaintiff fails to satisfy the negligent conduct element and her claim fails as a matter of law.

To the extent that Plaintiff's negligent infliction claim is based on her allegations that Smithfield "acted with reckless indifference" and "engaged in reckless conduct," in injuring Plaintiff (Compl. ¶ 26), these assertions also fail as a matter of law. They either are barred by the North Carolina Workers' Compensation Act or simply fail to state a claim because they lack any factual detail. *Sampson v. Leonard*, No. 4:10-CV-121-D, 2011 WL 129634, at *4 (E.D.N.C. Jan. 12, 2011) (unpublished) (finding that plaintiff's claim of negligent infliction of emotional distress failed where plaintiff alleged only intentional or reckless acts, not negligent acts); *McAllister*, 88 N.C. App. at 580, 364 S.E.2d at 188 (explaining that injuries resulting from acts of willful and wanton negligence are barred by the Workers' Compensation Act).

    2.    <u>Plaintiff's Claim for Negligent Supervision and Retention Fails as a Matter of Law.</u>

Plaintiff's claim of negligent supervision and retention also is barred by the North Carolina Workers' Compensation Act. As noted above, "[i]t is well settled that when an employee's injury is compensable under the Act, exclusive jurisdiction lies in the North Carolina Industrial Commission, and a civil action based on negligence or even willful or wanton negligence cannot lie." *Rathbone v. Haywood County*, No. 1:08cv117, 2008 WL 2789770, at *3

(W.D.N.C. July 17, 2008) (unpublished). As with Plaintiff's negligent infliction claim, any emotional distress Plaintiff suffered as a result of Smithfield's negligent supervision and retention of Lowery is an injury within the meaning of the Workers' Compensation Act and is therefore barred by the Act's exclusivity provision. *Shaw*, ___ N.C. App. at ___, 737 S.E.2d at 178; *Rathbone*, No. 1:08cv117, 2008 WL 2789770, at *2 (granting defendant's 12(b)(6) motion regarding his claim of negligent supervision and retention and finding that this claim was barred by the Workers' Compensation Act, when the plaintiff's claim was based on his employer's failure to supervise employees who discriminated against him based on his age). The Court therefore must dismiss Plaintiff's negligent supervision and retention claim on that basis.

Even if Plaintiff's negligent supervision and retention claim was not barred by the Workers' Compensation Act, it fails as a matter of law because she pleads no plausible tortious act. To establish a claim of negligent supervision and retention, a plaintiff must show that an incompetent employee committed a tortious act resulting in injury to the plaintiff and that prior to the act, the employer knew or had reason to know of the employee's incompetency. *First Union Nat'l Bank*, 202 F.3d at 250. As part of this claim, the plaintiff must establish that the employee committed a tort. *Hartsell*, 123 F.3d at 774 ("[a]n essential element" of a claim of negligent retention or supervision is "that an employee of the employer 'committed a tortious act resulting in plaintiffs' injuries.'") (internal citations omitted). The tort must be a common law tort in North Carolina. Title VII claims of discrimination, harassment and/or retaliation cannot serve as the "tortious act" underlying a claim of negligent supervision and retention. *McLean v. Patten Cmtys., Inc.*, 332 F.3d 714, 719 (4th Cir. 2003); *Jackson v. FKI Logistex*, 608 F. Supp. 2d 705, 708 (E.D.N.C. 2009).

Plaintiff's claim fails because she does not allege any Smithfield employee committed a tortious act. For the stated reasons above, Plaintiff's other state tort claims are insufficient as a matter of law. As a result, the Complaint alleges no tortious act upon which a claim of negligent supervision and retention can be based. Therefore, like all her other claims, Plaintiff's claim for negligent supervision and retention fails to state a claim upon which relief can be granted and must be dismissed. *See Jackson*, 608 F.2d at 708.

### IV. <u>CONCLUSION</u>

For the reasons stated above, Defendant respectfully requests that the Court grant its Motion to Dismiss and dismiss each Count of Plaintiff's Complaint with prejudice.

Respectfully submitted this 7th day of August 2013.

[SIGNATURE TO FOLLOW]

**THE SMITHFIELD PACKING COMPANY, INCORPORATED**

    /s/ Melissa A. Romanzo
Melissa A. Romanzo (NC Bar No. 38422)
HUNTON & WILLIAMS LLP
101 South Tryon Street, Suite 3500
Charlotte, North Carolina 28280
Telephone: (704) 378-4700
Fax: (704) 378-4890
Email: mromanzo@hunton.com

Kurt G. Larkin (VA Bar No. 70730)
*(Special Appearance to be filed)*
Sarah E. Bruscia (VA Bar No. 76547)
*(Special Appearance to be filed)*
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8200
Fax: (804) 788-8218
Email: klarkin@hunton.com
Email: sbruscia@hunton.com

***Counsel for Defendant The Smithfield Packing Company, Incorporated***

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of August, 2013, a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Angela Newell Gray, Esq.
7 Corporate Center Court, Suite B
Greensboro, NC 27408
angela@graynewell.com

*Attorney for Plaintiff*

___/s/ Melissa A. Romanzo_____
Melissa A. Romanzo