IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Civil Action No. 7:13-cv-145-F

| | | |
|---|---|---|
| Lisa Cooper, | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| | ) | |
| vs. | ) | *Plaintiff's Memorandum in Opposition* |
| | ) | *to Defendant's Motion to Dismiss* |
| | ) | |
| The Smithfield Packing Company, Inc., | ) | |
| *Defendant*. | ) | |

STATEMENT OF FACTS

Plaintiff, Lisa Cooper, is an African American female citizen of the United States and the

State of North Carolina and resides in Robseon County, North Carolina. (Complaint ¶ 2). The

Plaintiff began her employment with the Defendant in December, 1995. Immediately prior to her

termination, the Plaintiff held the position of Supervisor. (Complaint ¶9).

The Plaintiff contends that beginning in 2007, she was repeatedly subjected to sexual

harassment by Superintendent Tommy Lowery which mostly consisted of sexually explicit

comments. The plaintiff further contends that over the years 2008, 2009 and 2010, the

harassment continued. However, in 2011 the harassment worsened and included, but was not

limited to, sexually explicit statements made to her, sexual advances made toward her,

inappropriate sexual contact and making continuous physical and emotional threats. (Complaint

¶ 10).

The Plaintiff further contends that in 2011, Lowery subjected her to disparate treatment

due to her gender, including but not limited to requiring her to work later than her coworkers,

1

forcing her to spend time working closely with him in the office and physically harassing her as she would enter and/or exit the office, requiring that she do extensive menial tasks, making significant, inappropriate inquiries regarding her personal life and inappropriately disclosing matters about his personal life to her. (Complaint ¶ 11).

The Plaintiff further contends that in 2011, Lowery relentlessly pursued her for an intimate relationship, and either explicitly or implicitly implied that her submission to his demands was a condition of continued employment with the defendant company. (Complaint ¶ 12).

The Plaintiff alleges that in 2011, Lowery berated the Plaintiff's spouse to the Plaintiff on a regular basis. Specifically, Plaintiff contends Lowery would make derogatory comments about Plaintiff's spouse because Plaintiff's spouse is Caucasian and Plaintiff is African-American. (Complaint ¶ 13).

The Plaintiff contends that in 2011, she requested a transfer to another department to get away from Lowery. However, she was told that there were no vacancies to facilitate the transfer. (Complaint ¶ 14).

The Plaintiff contends that at all times during her employment with the defendant company, the company did not have an effective sexual harassment policy. (Complaint ¶ 19). However, in 2011, the Plaintiff complained to Human Resources Manager, Jamie Pope, about Lowery's conduct. The plaintiff contends that she provided Pope with details of the sexual harassment by Lowery against her so that Human Resources could conduct an investigation. The plaintiff also contends that she provided Human Resources with names of witnesses who could support her allegations of sexual harassment. The plaintiff alleges that Human Resources failed to conduct an investigation and failed to contact the witnesses she provided. The plaintiff further

contends that her complaints were not taken seriously by the defendant company. (Complaint ¶ 15).

In July, 2011, the plaintiff contends that she called Employee Assistance Program (EAP) offered through the defendant company. (Complaint ¶ 16).

Plaintiff contends that after she complained to human resources, the harassment by Lowery increased. The Plaintiff contends that neither Pope nor the defendant company supported her after the allegations of harassment were made regarding Lowery, and retaliated against her by, among other things, making a concerted effort to get the Plaintiff to quit. The plaintiff contends that her working conditions had become so intolerable that on July 19, 2011, she was forced to resign to escape the harassment and address her mental health. (Complaint ¶ 17).

Plaintiff contends that between 2007 and 2011, she was routinely subjected to offensive sexual harassment, in terms of the work conditions, privileges, benefits and work environment. The Plaintiff contends that she is a member of a protected class and was harassed by her manager because of her gender. The Plaintiff further contends that such harassment was unwelcome and was sufficiently severe and pervasive to alter the conditions of employment and to create an abusive and hostile working environment; and the employer knew or should have known of the harassment and failed to take prompt effective remedial action. The Plaintiff further contends that Lowery engaged in sexually harassing behavior on almost a daily basis in the presence of other employees of the defendant company. (Complaint ¶ 18).

The Plaintiff alleges that other employees, Supervisors and Human Resource Managers were aware of the ongoing sexual harassment and other sexually inappropriate workplace behaviors; yet they did nothing to stop them. (Complaint ¶ 20).

Based upon information and belief, the plaintiff contends that Lowery engaged in sexually inappropriate and harassing behavior with other female employees of the defendant company. Further, the plaintiff contends that the defendant company is aware of the previous illegal and unethical conduct of Lowery, but failed to properly supervise him. Moreover, the Defendant Company continued to retain defendant Lowery in spite of his known previous illegal and unethical conduct. (Complaint ¶ 21).

The Plaintiff contends that the Defendant Company knew or should have known that its employees were unjustifiably treating female employees differently than non-female employees. Notwithstanding, the Defendant Company's failure to act accordingly effectively ratified and condoned the sexually harassing treatment of the Plaintiff. Specifically, the Plaintiff contends that Lowery's behavior was consistently disruptive and of a sexually harassing nature. (Complaint ¶ 22).

Plaintiff contends that as a result of Defendant Company's sexual harassment and retaliation, she has suffered and continues to suffer severe emotional distress, including but not limited to, headaches, chronic depression, insomnia, chronic anxiety, stress, "nervous stomach," and fear. The Plaintiff further contends that Lowery's behavior caused her to be fearful in her work environment and caused her to be demeaned and disregarded. The Plaintiff alleges that she has sought treatment by a therapist and/or medical doctor for the aforementioned conditions as a result of Lowery's retaliatory and sexually harassing behavior, and her subsequent separation of employment. The Plaintiff contends that her medical doctor and therapist diagnosed her as

suffering from severe emotional distress as a result of the aforementioned behavior and prescribed medication to treat her condition. (Complaint ¶ 23).

All supervisors and employees were, at all times herein, working within the course and scope of their employment and in furtherance of the employers business. The plaintiff contends that at all times herein, the defendant company had the power, authority and responsibility to control Lowery's and other employees' conduct within the workplace; however it failed to do so. Further, pursuant to the doctrine of respondeat superior, the Defendant Company is vicariously liable for acts herein alleged against those employees. Alternatively, the acts of the aforementioned employees may not have been within the scope of their employment. Plaintiff alleges that the employer remains liable for its negligent retention of those employees. (Complaint ¶ 24).

The Plaintiff contends that the Defendant Company, by and through its agents, specifically Lowery, negligently engaged in conduct and it was reasonably foreseeable that such conduct would cause her to suffer emotional distress. (Complaint ¶ 25).

The Plaintiff further contends that the Defendant Company, by and through its agents, specifically Lowery, acted with reckless indifference to her constitutional and statutory right to work in an environment free from sexual harassment. Further, the Defendant Company, by and through its agents, engaged in reckless conduct and it was reasonably foreseeable that such conduct would cause her to suffer severe emotional distress. (Complaint ¶ 26).

The Plaintiff contends that Defendant Company, by and through its agents, specifically Lowery, engaged in willful and wanton conduct which was atrocious and utterly intolerable. Further, that the Defendants' conduct was extreme and outrageous, exceeding all bounds of decency. The conduct was intended to cause the Plaintiff to suffer severe emotional distress and,

in fact, did cause the Plaintiff to suffer severe emotional distress. The Plaintiff further contends

that Lowery's sexually harassing conduct as alleged in her Complaint is the conduct which she

contends was willful, wanton, intolerable, extreme, outrageous, and exceeding all bounds of

decency. (Complaint ¶ 27).


## STANDARD OF REVIEW

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the purpose of the rule

is to permit trial courts to terminate lawsuits "that are fatally flawed in their legal premise and

destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity.

*De Sole v. United States*, 947 F.2d 1169, 1178 n. 13(4th Cir. 1991); *Advanced Cardivascular*

*Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993). The court must

presume that all well-pleaded allegations are true, resolve all doubts and inferences in the

pleader's favor, and view the pleadings in the light most favorable to the non-moving party.

*Edwards v. City of Goldsboro*, 178 F. 3d 231, 243-44 (4th Cir. 1999). In *Bennett v. Schmidt*, 153

F.3d 516, 518 (7th Cir. 1998), the Court rejected the notion that complaints must recite all

evidence needed to prevail at trial; instead, the rule makes the complaint just the "starting point"

and, rather than waiting until "Plaintiff gets it just right," the court should keep the process

moving, by requiring a more definite statement or inviting a motion for summary judgment. In a

racial discrimination employment case, "I was turned down for a job because of my race" is all

the complaint need say. "A motion to dismiss pursuant to Rule 12(b)(6) should not be granted

*unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which*

*could be proved in support of the claim.*" *Isenhour v. Hutto*, 350 N.C. 601, 604-05, 517 S.E.2d

121, 124 (1999) (internal quotation marks omitted).

The Defendant contends that the Plaintiff's Complaint is "long on bark and short on bite." We contend however that the Complaint is drafted in such a manner as to reflect the spirit, and fulfill the requirements of Rule 8 of the Federal Rules of Civil Procedure. Pursuant to Rule 8, a pleading is merely required to set forth "**a short and plain statement**" of the claim sufficiently particular to give the court and the parties' notice of the transactions or occurrences intended to be proved showing that the pleader is entitled to relief… .Rule 8(f) states that all pleadings shall be so construed as to do substantial justice. Dismissals under Rule 12(b)(6) are disfavored and, in view of the rules' "Notice Pleading" requirements, are not routinely granted. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Leleux v. United States*, 178 F.3d 750, 754 (5th Cir. 1999).

The Supreme Court clarified in *Swierkiewicz vs. Sorema,* 534 U.S. 506 (2002) "that an employment discrimination complaint…must contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief' ". In *Swierkiewicz*, the Court unanimously reversed the Second Circuit Court of Appeals opining that a plaintiff in any civil action was not required to plead the specific facts necessary to assert a prima facie case of employment discrimination. *Id*. @ 513.

## **ARGUMENT**

### I. <u>PLAINTIFF'S CLAIM FOR RETALIATION SHOULD NOT BE DISMISSED</u>

Pursuant to Title VII of the Civil Rights Act of 1964 (and as amended), an employer may not take any adverse employment action against an employee who engages in protected activity. 42 USC §2000e-3(a). To state a viable claim for retaliation under Title VII, a plaintiff must first establish that she opposed an unlawful employment practice or participated in an investigation,

proceeding or hearing. *Cruz v. Coach Stores, Inc.* 202 F.3d 560, 566 (2d Cir. 2000). An employee's opposition to an unlawful employment practice, or participation in an investigation, proceeding or hearing under Title VII, is referred to as "protected activity." An employee's formal or informal complaints to a supervisor regarding unlawful discrimination is a "protected activity" and actions taken against the employee after such complaints may constitute retaliation. *Wu vs. Thomas*, 863 F.2d 1543, 1548 (11th Cir. 1989). Here, the plaintiff alleges specifically that in 2011, Lowery relentlessly pursued her for an intimate relationship, and either explicitly or implicitly implied that her submission to his sexual demands was a condition of continued employment with the defendant company. (Complaint ¶ 12). Thereafter, the plaintiff requested a transfer to another department to get away from Lowery. However, she was told that there were no vacancies to facilitate the transfer. (Complaint ¶ 14). Also, in 2011, the Plaintiff contends that she complained to Human Resources Manager, Jamie Pope, about Lowery's conduct by providing Pope with details of the sexual harassment by Lowery against her so that Human Resources could conduct an investigation. The plaintiff also contends that she provided Human Resources with names of witnesses who could support her allegations of sexual harassment. (Complaint ¶ 15). Consequently, under Rule 8, the plaintiff has sufficiently alleged that she engaged in protected activity.

In order to establish the causation prong of a retaliation claim, the plaintiff must allege that the employer knew about the employee's protected activity. Here, the Plaintiff's allegations that she complained to Human Resources Manager, Jamie Pope, about Lowery's conduct clearly meets that requirement.

The Plaintiff contends that after she complained to human resources, the harassment by Lowery increased, and that neither Pope nor the defendant company supported her after the

allegations of harassment were made regarding Lowery. She specifically contends that she engaged in protected activity first, and thereafter, she was retaliated against as evidenced by the employer making a concerted effort to get the Plaintiff to quit.  The plaintiff contends that her working conditions had become so intolerable that on July 19, 2011, she was forced to resign to escape the harassment and address her mental health. (Complaint ¶17). Here, the plaintiff sufficiently alleges a causal link and indicates that the retaliatory acts occurred at least within six (6) months of her complaints.[1] Moreover, the defendant admits that the Plaintiff sufficiently plead a temporal proximity. (Memorandum p. 26, ¶2).

The Defendant contends that the plaintiff's allegations regarding the claim of retaliation are nothing more than a conclusory recitation of the elements of a retaliation claim; however that is clearly not the case. Not only did the plaintiff indicate that she engaged in protected activity, but also she described in detail the type of activity she engaged in, when she engaged in the activity, who she complained about and to whom the complaint was made.

The Defendant argues that the Plaintiff has not properly alleged that she suffered an adverse employment action. However, we disagree. In *Smith vs. First Union*, 202 F.3d 234 (4th Cir. 2000) the Fourth Circuit allowed the plaintiff's retaliation claim because Smith alleged that she suffered an "adverse employment action" when First Union refused to transfer her to a new position after she complained about her supervisor's harassment. The Fourth Circuit discussed the issue in *Smith*: "The circuits are split as to whether an act of retaliation must be an "ultimate employment decision" to qualify as an adverse employment action. The Fifth and Eighth Circuits have held that only adverse employment actions that qualify as ultimate employment decisions are actionable under Title VII. See *Burger v. Central Apartment Management, Inc.*, 168 F.3d

---

[1] Even though the Complaint does not specifically allege a date when the Plaintiff complained to Human Resources, it can clearly be inferred from the fact that the Plaintiff alleges she complained before her resignation of July 19,

875, 878-79 (5th Cir. 1999); *Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8thCir. 1997). Conversely, the First, Ninth, Tenth, and Eleventh Circuits have held that adverse actions that do not qualify as ultimate employment decisions can give rise to liability for retaliation." See *Wyatt v. City of Boston*, 35 F.3d 13, 15-16 (1st Cir. 1994); *Bouman v. Block*, 940 F.2d 1211, 1229 (9th Cir. 1991); *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 985-86 (10th Cir. 1996); *Wideman v. Wal-Mart Stores, Inc.,* 141 F.3d 1453, 1456 (11th Cir. 1998); see also *Passer v. American Chem. Soc'y*, 935 F.2d 322, 331 (D.C. Cir. 1991). At that time, the Fourth Circuit had not resolved the issue. However, in *James v. Booz-Allen & Hamilton, Inc.,* 368 F.3d 371 (4th Cir. 2004), the Fourth Circuit held, "an adverse employment action is a discriminatory act which 'adversely affect[s] 'the terms, conditions, or benefits' of the plaintiff's employment.' " V*on Gunten v. Maryland*, 243 F.3d 858, 865 (4th Cir. 2001) (quoting *Munday v. Waste Mgmt. of North America, Inc.,* 126 F.3d 239, 243 (4th Cir. 1997)). "Conduct short of 'ultimate employment decisions' can constitute adverse employment action." *Id.* at 865. *James*, 368 F.3d at 375-76 (footnote omitted).

In the present case, the plaintiff alleges specifically that in 2011, Lowery relentlessly pursued her for an intimate relationship, and either explicitly or implicitly implied that her submission to his demands was a condition of continued employment with the defendant company. (Complaint ¶ 12). Thereafter, the plaintiff requested a transfer to another department to get away from Lowery.  However, she was told that there were no vacancies to facilitate the transfer. (Complaint ¶ 14). Also, in 2011 the plaintiff alleges that after complaining to human resources about Lowery, the sexual harassment increased and her working conditions became so intolerable that on July 19, 2011, she was forced to resign to escape the harassment and address her mental health. (Complaint ¶17). Consequently, the plaintiff's allegations meet the notice

2011.

pleading requirement on the element of adverse employment action in light of the Fourth Circuit's holding in *James*, supra.

Although the Fourth Circuit has not definitely resolved its definition of retaliatory acts under Title VII, we disagree with the Defendant's argument that the facts in the Complaint fail to support working conditions which would be considered intolerable thereby rising to the level of constructive discharge. Again, we believe the factual allegations in the Complaint meet Rule 8 guidelines. The plaintiff alleges sexually inappropriate treatment over a period of at least three (3) years which was severe and pervasive, and persisted even after she complained to Human Resources in 2011. The plaintiff alleges that Lowery relentlessly pursued her for an intimate relationship, and either explicitly or implicitly implied that her submission to his demands was a condition of continued employment with the defendant company. She further alleged that Lowery engaged in sexually explicit statements, made sexual advances toward her, engaged in inappropriate sexual contact and made continuous physical and emotional threats to the Plaintiff. Lowery required the plaintiff to work later than her coworkers, forced her to spend time working closely with him in the office and physically harassed her as she would enter and/or exit the office, required that she do extensive menial tasks, made significant, inappropriate inquiries regarding her personal life and inappropriately disclosed matters about his personal life to her.

Plaintiff contends that between 2007 and 2011, she was routinely subjected to offensive sexual harassment, in terms of the work conditions, privileges, benefits and work environment. The Plaintiff further contends that Lowery engaged in sexually harassing behavior on almost a ***daily basis*** in the presence of other employees of the defendant company. (Complaint ¶ 18). Lowery's conduct allegedly caused the Plaintiff to seek assistance from the Employee Assistance Program at work; and that unwelcome harassment was sufficiently severe and pervasive to alter

the conditions of employment and to create an abusive and hostile working environment, which ultimately forced her to resign in July, 2011.

Plaintiff contends that she has suffered and continues to suffer severe emotional distress, including but not limited to, headaches, chronic depression, insomnia, chronic anxiety, stress, "nervous stomach," and fear as a result of Lowery's behavior. The Plaintiff alleges that she has sought treatment by a therapist and/or medical doctor for the aforementioned conditions as a result of Lowery's retaliatory and sexually harassing behavior, and her subsequent separation of employment. The Plaintiff contends that her medical doctor and therapist diagnosed her as suffering from severe emotional distress as a result of the aforementioned behavior and prescribed medication to treat her condition. (Complaint ¶ 23).

These very specific and thorough allegations are a far cry from the defendant's contention that the Plaintiff "simply throws a few choice buzzwords into her pleading." On the contrary, the Complaint, which should be read in its entirety and in complete context, references all of these actions which contributed to an intolerable work environment.

Title VII of the Civil Rights Act of 1964 makes it unlawful for an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). This provision "not only covers 'terms' and 'conditions' in the narrow contractual sense, but 'evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment.'" *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) (quoting *Meritor Savs. Bank*, FSB v. Vinson, 477 U.S. 57, 64 (1986)). Title VII is violated "[w]hen the workplace is permeated with discriminatory [sex-based] intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an

abusive working environment." *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21 (1993) (citations and internal quotation marks omitted).

Based on the foregoing, the plaintiff has alleged facts which are sufficient to withstand the defendant's motion to dismiss on the claim of Retaliation.

II.    PLAINTIFF'S CLAIMS FOR DISPARATE TREATMENT BASED ON GENDER DISCRIMINATION UNDER TITLE VII SHOULD NOT BE DISMISSED[2]

Pursuant to Title VII, it is an unlawful employment practice for an employer to fail or refuse to hire or to discharge or demote any individual, *or otherwise to discriminate* against any individual with respect to his compensation, *terms, conditions, or privileges of employment*, because of such individual's race, color, or national origin according to Title VII of the Civil Rights Act of 1964, as amended in 1991, § 703(a)(1), 42 U.S.C. § 2000e-2(a)(1) (1997).

In order to prevail on a claim of intentional discrimination under Title VII, the Complainant may produce evidence that the same events would not have transpired if the employee had been a different race [*or gender*], and everything else had been the same.  *Gehring v. Case Corp.*, 43 F.3d 340, 344 (7th Cir. 1994). A Complainant under Title VII may raise an inference of discriminatory animus by offering evidence comparing himself to similarly situated individuals who are not a member of that protected class, who are treated more favorably. *Morris v. Harris Trust & Savs. Bank*, 867 F.2d 1023, 1026 (7th Cir. 1989); *Lanear v. Safeway Grocery*, 843 F.2d 298, 301 (8th Cir. 1988). In the present case, the Plaintiff alleges that in 2011, Lowery subjected her to disparate treatment ***due to her gender***, including but not limited to requiring her to work later than her coworkers, forcing her to spend time working closely with him in the office and physically harassing her as she would enter and/or exit the office, requiring

that she do extensive menial tasks, making significant, inappropriate inquiries regarding her personal life and inappropriately disclosing matters about his personal life to her. (Complaint ¶ 11). Further, the Plaintiff contends that the Defendant Company knew or should have known that its employees were unjustifiably treating *female employees differently than non-female employees.* Notwithstanding, the Defendant Company's failure to act accordingly effectively ratified and condoned the sexually harassing treatment of the Plaintiff. (Complaint ¶ 22).

At the 12(b)(6) stage, the district court must test the sufficiency of the complaint *in its entirety. Giarratano vs. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). The complaint must give the defendant fair notice of the basis for the plaintiff's claims. *Swierkiewicz @* 514. The facts must be viewed in the light most favorable to the plaintiff. *Lambeth vs. Bd. of Comm'rs*, 40 F.3d 266, 268 (4th Cir. 2005).

In *Dolgaleva vs. Virginia Beach City Public Schools*, No. 08-1515 (4th Cir. Jan. 29, 2010), the defendant moved to dismiss the plaintiff's complaint pursuant to Rule 12(b)(6) arguing that the bare and conclusory allegations in the complaint were insufficient to state a claim for which relief could be granted. The Fourth Circuit reversed the district court's grant of the defendant's motion to dismiss opining that *Dolgaleva* brought a claim under Title VII and §1981. In her complaint, the plaintiff alleged that she applied for a teaching position, was the most qualified applicant based on her credentials, but was not hired. The court considered all of the allegations in the complaint as true, and therefore found that the district court erred in finding her pleading insufficient.

Based on the foregoing, the Plaintiff's Complaint sufficiently states facts to support a claim of gender discrimination based on disparate treatment pursuant to Title VII.

---

[2] The plaintiff does not attempt to assert a claim for wrongful termination based only on termination. Rather, the Plaintiff asserts a claim of Disparate Treatment based on gender discrimination under Title VII.

III.    PLAINTIFF'S CLAIMS FOR SEXUAL HARASSMENT BASED ON HOSTILE
        WORK ENVIRONMENT UNDER TITLE VII SHOULD NOT BE DISMISSED

In order to state a "hostile work environment" sexual harassment claim, an employee must allege that: (1) the subject conduct was unwelcome; (2) it was based on the sex of the plaintiff; (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) it was imputable on some factual basis to the employer *Spicer v. Virginia*, 66 F.3d 705, 710 (4th Cir. 1995) (citations omitted).

Here, the Plaintiff contends that between 2007 and 2011, she was routinely subjected to offensive sexual harassment, in terms of the work conditions, privileges, benefits and work environment.  The Plaintiff contends that she is a member of a protected class and was harassed by her manager because of her gender.  The Plaintiff further contends that such harassment was unwelcome and was sufficiently severe and pervasive to alter the conditions of employment and to create an abusive and hostile working environment; and the employer knew or should have known of the harassment and failed to take prompt effective remedial action. The Plaintiff further contends that Lowery engaged in sexually harassing behavior on almost a daily basis in the presence of other employees of the defendant company. (Complaint ¶18).

Paragraph 18 of the Complaint cannot be read in a vacuum. It must be read in the context of the entirety of the Complaint. Here, as previously argued, the plaintiff alleges numerous examples of Lowery's sexually harassing conduct. The plaintiff further alleges and describes specifically that in 2011, Lowery relentlessly pursued her for an intimate relationship, and either explicitly or implicitly implied that her submission to his demands was a condition of continued

employment with the defendant company. (Complaint ¶ 12). Thereafter, the plaintiff requested a transfer to another department to get away from Lowery. However, she was told that there were no vacancies to facilitate the transfer. (Complaint ¶ 14). Also, in 2011, the Plaintiff contends that she complained to Human Resources Manager, Jamie Pope, about Lowery's conduct by providing Pope with details of the sexual harassment by Lowery against her so that Human Resources could conduct an investigation. The plaintiff also contends that she provided Human Resources with names of witnesses who could support her allegations of sexual harassment. (Complaint ¶ 15). Thus, the employer had sufficient knowledge so as to impute liability.

Thus, under Rule 8, the plaintiff has sufficiently pled a claim for Harassment under Title VII.


IV. PLAINTIFF'S CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ("IIED") SHOULD NOT BE DISMISSED

In North Carolina, IIED requires a showing of extreme and outrageous conduct, "which is intended to cause and does cause[,]"severe emotional distress. *Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981). Extreme and outrageous conduct is conduct "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community[.]'" *Hogan v. Forsyth Country Club Co.*, 79 N.C. App. 483, 493, 340 S.E.2d 116, 123 (1986) (citation omitted). In *Hogan,* the Court found that evidence of non-consensual sexual touchings, constant suggestive remarks and on-going sexual harassment - such as screaming profane names, being threatened with bodily injury, and an advancement upon her with a knife, was sufficient to survive summary judgment and, if found by the jury to have actually existed, beyond the

"bounds usually tolerated by a decent society". 79 N.C. App. 483, 490-91, 340 S.E.2d 116, 122 (1986). "The tort may also exist where defendant's actions indicate a reckless indifference to the likelihood that they will cause severe emotional distress." *Dickens v. Puryear,* 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981).

In the present case, the plaintiff contends that beginning in 2007, she was repeatedly subjected to sexual harassment by Superintendent Tommy Lowery which mostly consisted of sexually explicit comments. The plaintiff further contends that over the years 2008, 2009 and 2010, the harassment continued. However, in 2011 the harassment worsened and included, but was not limited to, sexually explicit statements made to her, sexual advances made toward her, inappropriate sexual contact and making continuous physical and emotional threats to the Plaintiff. (Complaint ¶10). We therefore contend that the plaintiff's claims in the present case are analogous to those in *Hogan*.

In *Watson vs. Dixon*, 132 N.C. App. 329, 334, 511 S.E.2d 37, 41, *disc. review denied*, 351 N.C. 191, 541 S.E.2d 727 (1999), *aff'd*, 352 N.C. 343, 532 S.E.2d 175 (2000), the Defendants contended that the "extreme and outrageous" element of plaintiff's intentional infliction of emotional distress claim was not met. The Court viewed the evidence in the light most favorable to Watson, wherein the facts showed that Dixon began to harass Watson approximately one month from the date she started work in the Sterile Processing Department at Duke Medical Center. Dixon frightened and humiliated Watson with cruel practical jokes, which escalated to obscene comments and behavior of a sexual nature, which then escalated to unwanted touching of her person, until finally culminating in veiled threats to her personal safety. This behavior continued virtually unchecked for some seven or eight months. Further, several of the plaintiff's co-workers testified that Watson appeared emotionally upset while at

work. Eventually, Watson suffered a nervous breakdown. The Court, looking at all of the facts

and attenuating circumstances, including the type of conduct engaged in and the length of time

that the conduct continued, concluded that Dixon's behavior did indeed meet the requirement for

"extreme and outrageous behavior." *See Denning-Boyles v. WCES, Inc.*, 123 N.C. App. 409, 473

S.E.2d 38 (1996); *Brown v. Burlington Industries, Inc.,* 93 N.C. App. 431, 378 S.E.2d 232

(1989), *disc. review improvidently allowed*, 326 N.C. 356, 388 S.E.2d 769 (1990); *Hogan*, 79

N.C. App.483, 340 S.E.2d 116.

We contend that the facts in *Watson* are substantially similar to the allegations in the present

case. Hence, the pleading requirements under Rule 8 have been met with regard to the claim for

IIED.


V.     PLAINTIFF'S CLAIMS FOR NEGLIGENT SUPERVISION AND RETENTION
       AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS SHOULD NOT
       BE DISMISSED

The Defendant contends that the Plaintiff's negligence claims are barred by the North

Carolina Workers' Compensation Act; however, the Defendant's argument should be rejected. In

*Woodson v. Rowland*, 329 N.C. 330, 407 S.E.2d 222 (1991), the Supreme Court recognized one

exception to the exclusivity provision. Under the Workers' Compensation Act, an employee's

remedies are exclusive as against the employer where the injury is caused by an accident arising

out of and in the course of employment. Thus, the exclusivity provision of the Act precludes a

claim for ordinary negligence, even when the employer's conduct constitutes willful or wanton

negligence. However, an exception to this exclusivity exists for claims meeting the stringent

proof standards of *Woodson*, 329 N.C. 330, 407 S.E.2d 222. *Woodson* permits a plaintiff to

pursue both a workers' compensation suit and a civil suit against an employer in those narrowly

limited cases where injury or death was the result of intentional conduct by an employer which the employer knew was substantially certain to cause serious injury or death. "*Willful and wanton negligence alone is not enough to establish a Woodson claim*; a higher degree of negligence is required. The conduct must be so egregious as to be tantamount to an intentional tort." *Wake County Hosp. Sys. v. Safety Nat. Casualty Corp.*, 127 N.C. App. 33, 40-41, 487 S.E.2d 789, 793 (emphasis added) (citations, quotation marks, ellipses, and brackets omitted).

In the present case, the Plaintiff's claim of negligent infliction of emotional distress is based on the intentional behavior of Lowery. Furthermore, the Plaintiff sufficiently alleged that the Defendant Company, by and through its agents, specifically Lowery, acted with reckless indifference to her constitutional and statutory right to work in an environment free from sexual harassment. Further, the Defendant Company, by and through its agents, engaged in reckless conduct and it was reasonably foreseeable that such conduct would cause her to suffer severe emotional distress. (Complaint ¶ 26).

North Carolina recognizes a claim against an employer for negligent retention when the plaintiff proves that "the incompetent employee committed a tortious act resulting in injury to plaintiff and that prior to the act, the employer knew or had reason to know of the employee's incompetency." *Smith v. Privette,* 128 N.C.App. 490, 495 S.E.2d 395, 398 (1998) (citations omitted). To establish that the employer knew of the employee's "inherent unfitness," the plaintiff must prove "either actual notice to the [employer] of such unfitness or bad habits, or constructive notice, by showing that the [employer] could have known the facts had he used ordinary care in 'oversight and supervision'..." *Medlin v. Bass,* 327 N.C. 591, 398 S.E.2d 460, 462 (1990). "[T]he theory of liability is that the employer's negligence is a wrong to third persons, entirely independent of the employer's liability under the doctrine of respondeat

superior." *O'Connor v. Corbett Lumber Corp,* 84 N.C. App. 178,182-3,352 S.E.2d 267, 270-71 (1987).

In the Complaint, the Plaintiff contends that other employees, Supervisors and Human Resource Managers were aware of the ongoing sexual harassment and other sexually inappropriate workplace behaviors of Lowery; yet they did nothing to stop them. (Complaint ¶ 20).

Further, based upon information and belief, the plaintiff contends that Lowery engaged in sexually inappropriate and harassing behavior with other female employees of the defendant company; and that the defendant company was aware of the previous illegal and unethical conduct of Lowery, but failed to properly supervise him. Moreover, the Defendant Company continued to retain defendant Lowery in spite of his known previous illegal and unethical conduct. (Complaint ¶ 21).

Several North Carolina appellate decisions have specifically allowed negligent supervision and retention claims based on sexual harassment. *See, e.g. Smith v. Privette,* 128 N.C.App. 490, 495 S.E.2d 395 (1998) (reinstating plaintiff's claims for negligent retention and supervision against the defendant church for the plaintiff's sexual harassment by its senior pastor); *Poole v. Copeland, Inc.,* 125 N.C.App. 235, 481 S.E.2d 88 (1997) (affirming a jury finding of employer liability for negligent supervision based on sexual harassment by its employee). There is no requirement that the plaintiff actually bring an action for the tort underlying a negligent retention claim, simply that the tortious conduct existed. *McLean v. Patten Communities, Inc.,* 332 F.3d 714 (4th Cir.).

Consequently, the allegations here amply assert that the Defendant knew or should have known of Lowery's unfitness, bad habits and tortious actions. The Plaintiff has met her burden under Rule 8 with regard to her negligence claims.


VI.   **DEFENDANT'S MOTION TO DISMISS IS RENDERED MOOT BASED ON THE FILING OF THE PLAINITFF'S AMENDED COMPLAINT**

Pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure, a party may amend its pleading once as a matter of course within:

(A) 21 days after serving it, or

(B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

In the present case, the Defendant filed its Motion to Dismiss pursuant to Rule 12(b)(6) on August 7, 2013. The Plaintiff filed her Amended Complaint on August 28, 2013 which addresses and remedies all of the issues raised in Defendant's Motion to Dismiss.[3] Consequently, the Defendant's Motion is rendered moot.


## CONCLUSION

Because dismissal under Rule 12(b)(6) is extreme, it should only be granted where there can be no relief for the Plaintiff under the facts. Here, that is clearly not the case. Consequently, the Plaintiff prays the court for an Order DENYING the Defendant's Motion to Dismiss.

---

[3] By filing an Amended Complaint, the plaintiff does not admit that the initial Complaint was deficient in any manner. Rather, filing an Amended Complaint is simply done as a matter of right to clarify any ambiguities.

This the 28th day of August, 2013.

GRAY NEWELL, LLP

BY:   <u>/s/ Angela Gray</u>
      Angela Newell Gray
      7 Corporate Center Court, Suite B
      Greensboro, NC  27408
      Telephone:    (336) 724-0330
      Facsimile:    (336) 458-9359
      Email:        angela@graynewell.com
      *Attorney for Plaintiff*
      NC Bar # 21006

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Civil Action No. 7:13-cv-145-F

| | | |
|---|---|---|
| Lisa Cooper, | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| | ) | |
| vs. | ) | *Certificate of Service* |
| | ) | |
| | ) | |
| The Smithfield Packing Company, Inc., | ) | |
| *Defendant*. | ) | |

I, Angela Newell Gray, Attorney for the Plaintiff, do hereby certify that I served the foregoing Plaintiff's Response in Opposition to the Defendant's Motion to Dismiss upon counsel for the Defendant shown below by electronically filing the same with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following attorney of record;

Melissa A. Romanzo
Hunton & Williams LLP
101 South Tryon Street, Suite 3500
Charlotte, NC 28280
mromanzo@hunton.com

This the 28th day of August, 2013.

/s/ Angela Gray
Angela Newell Gray
Gray Newell, LLP
7 Corporate Center Court, Suite B
Greensboro, NC 27408
Tel:    (336) 724-0330
Fax:    (336) 458-9359
Email: angela@graynewell.com
NC State Bar #21006