UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Case No.: 7:13-cv-145-F

| | | |
|---|---|---|
| LISA COOPER, | ) | |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OF LAW IN |
| | ) | SUPPORT OF DEFENDANT'S MOTION |
| v. | ) | TO DISMISS PLAINTIFF'S THIRD AMENDED |
| | ) | COMPLAINT |
| | ) | |
| | ) | Fed. R. Civ. P. 12(b)(1) and (6) and Local Civil |
| | ) | Rules 7.1 and 7.2 |
| THE SMITHFIELD PACKING COMPANY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6) and Local Civil Rules 7.1 and 7.2, Defendant, Smithfield Farmland Corp.[1] ("Smithfield" or the "Company"), by counsel, submits this memorandum of law in support of its Motion to Dismiss Plaintiff Lisa Cooper's ("Plaintiff" or "Cooper") Third Amended Complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

Plaintiff's Third Amended Complaint, filed with this Court on September 9, 2014 [DE-28], represents her fourth attempt to press a claim against Smithfield of hostile work environment sexual harassment under Title VII. Plaintiff's allegations in support of her claim have, for lack of a better description, evolved over the course of this proceeding. They now bear scant resemblance to the allegations Plaintiff originally asserted in support of her administrative

---

[1] Plaintiff's pleading incorrectly identifies Defendant as "The Smithfield Packing Company, Inc." On April 28, 2014, Defendant, The Smithfield Packing Company, Incorporated, merged with Farmland Foods, Inc. The name of the merged corporation, which is now reflected in the initial paragraph, is "Smithfield Farmland Corp."

1

charge of discrimination predicate to her claim. In an apparent attempt to save a claim that this Court has already dismissed once for lack of factual support, Plaintiff lards her Third Amended Complaint with myriad allegations that not only were nowhere in her original Complaint, but which are absent from her administrative charge. Ultimately, this dooms her Third Amended Complaint.

Plaintiff's charge, which was referenced in but not attached to the Third Amended Complaint or any prior pleading, was filed with the EEOC on December 21, 2011. [DE-28, ¶ 4]. Plaintiff alleged the following in support of her claim of sexual harassment:

> During my employment, ***I was the victim of constant sexual harassment on the part of Tommy Lowery, Superintendent. Mr. Lowery would frequently tell me that he wanted to be with me and that he loved me. Mr. Lowery would at least on a weekly basis brush up against me sexually.*** Mr. Lowery had power over me in that he ran the office and would do as he pleased. I had been on the job since December 1995 and did not want to lose it. Finally, I could no longer tolerate that harassment.
>
> Because of the harassment, I attempted to transfer to another department. However, I was told that allegedly there were no vacancies.
>
> I reported the sexual harassment but no effective corrective action was taken. Allegedly Jamie Pope, Human Resources Representative, conducted an investigation into my allegations. However, if he conducted an investigation, he did not contact all of my witnesses.

(Ex. A) (emphasis added).[2] Although Plaintiff stated that her claims represented a "continuing action," Plaintiff indicated that the earliest date of discrimination was July 18, 2011, and the

---

[2] Plaintiff's charge (EEOC Charge No.: 433-2012-00286) is attached hereto as Exhibit A. The attachment of the Charge to the instant Motion to Dismiss does not convert this motion into one for summary judgment. Courts may consider an EEOC charge either as an undisputed document referenced in the Complaint and central to the plaintiff's claim, or as information which is a matter of public record, without converting a motion to dismiss into a summary judgment motion. *See, e.g., Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (in analyzing a Rule 12(b)(6) motion, a court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir. 2011) (same); *Jones v. McNutt Serv.*

latest was July 19, 2011. (Ex. A). More significantly, with regard to sexual harassment, Plaintiff claimed only that Lowery "would frequently tell me he wanted to be with me and that he loved me," and that Lowery would "at least on a weekly basis brush up against [Plaintiff] sexually." (Ex. A).

The Third Amended Complaint alleges a dramatically different series of events. Plaintiff now alleges that Lowery repeatedly demanded sexual intercourse and threatened to terminate her employment *or even kill Plaintiff* if she refused. Specifically, the Third Amended Complaint alleges:

- The Plaintiff contends that during this period of time Lowery asked her on a regular basis, at least once per week, to have sexual intercourse with him. ***Each time the plaintiff rejected Lowery's advances, Lowery stated that he would kill the plaintiff for refusing to have sexual intercourse with him.*** [DE-28, ¶12].

- The Plaintiff contends that in approximately January 2011, Lowery began relentlessly pursuing her for an intimate relationship, and e***ither explicitly or implicitly implied that her submission to his demands was a condition of continued employment with the defendant company.*** [DE-28, ¶17].

- The Plaintiff contends that Lowery told her in 2011 that ***if she did not have sexual intercourse with him, he would fire her and he would kill her.*** [DE-28, ¶18].

- The Plaintiff contends that after she complained to human resources in approximately April, 2011, the harassment by Lowery increased. Based upon information and belief, the Plaintiff contends that Lowery was aware that she had complained to Human Resources because ***he referenced her internal complaints when threatening her and making sexual comments to her. The Plaintiff further contends that Lowery threatened to kill her if she continued to report him to upper management.*** . . . [DE-28, ¶26].

---

*Group, Inc.*, No. 5:10-cv-84-D, 2010 U.S. Dist. LEXIS 75117 (E.D.N.C. 2010) (unpublished) (same); *Rogan v. Giant Eagle, Inc.*, 113 F. Supp. 2d 777, 782 (W.D. Pa. 2000), *aff'd* 276 F.3d 579 (3d Cir. 2001) ("It is clear to us that under the applicable legal standard we may consider the EEOC charge . . . either as undisputed documents referenced in the complaint or central to the plaintiff's claim, or as information which is a matter of public record, without converting this motion to one [for] summary judgment").

These highlighted allegations are the clear focal point of Plaintiff's current claim, but are *completely* absent from Plaintiff's administrative charge.

The contrast does not end there. Whereas Plaintiff's charge merely alleged that Lowery would frequently tell Plaintiff he "wanted to be with her" (Ex. A), the Third Amended Complaint alleges a barrage of sexually explicit comments of an extraordinarily graphic and threatening nature starting as far back as January 2007, none of which was detailed in Plaintiff's charge. For example, the Third Amended Complaint alleges:

- The Plaintiff contends that ***beginning in January 2007 and extending through December 31, 2007,*** she was subjected to sexual harassment on more than twenty (20) occasions by Superintendent Tommy Lowery which ***mostly consisted of sexually explicit comments.*** [DE-28, ¶9].

- The Plaintiff contends that the sexually explicit comments mostly included statements about ***how sexy she looked or how big her breasts and rear were, and how much Lowery wanted "to be with her".*** [DE-28, ¶10].

- The Plaintiff contends that over the years 2008, 2009 and 2010, the harassment continued on at least a monthly basis. However, beginning in January, 2011 the harassment worsened and included, but was not limited to, ***sexually explicit statements made to her, sexual advances made toward her, inappropriate sexual contact and making continuous physical and emotional threats to the Plaintiff.*** [DE-28, ¶11].

- The Plaintiff contends that during this period of time Lowery told her on a regular, almost daily basis that ***he would like to get her on her "fucking" back, in a sexual position.*** The plaintiff further contends that Lowery told her on a daily basis that ***he was watching her at all times, having sexual fantasies about engaging in sexual intercourse with her.*** The plaintiff further contends that Lowery ***asked her if he could come to her house for the purpose of engaging in sexual intercourse on a regular, almost daily basis.*** [DE-28, ¶13].

- The Plaintiff further contends that Lowery ***asked one of the plaintiff's male co-workers if he had engaged in sexual intercourse with her, and he also asked whether the male co-worker knew if the plaintiff had sexual intercourse with any men other than her husband.*** [DE-28, ¶14].

- The Plaintiff contends that beginning in January 2011, Lowery forced her to spend time working physically closely with him in the office and

4

- *physically harassing her as she would enter and/or exit the office, making significant, inappropriate inquiries regarding her personal life and inappropriately disclosing matters about his personal life to her*. [DE-28, ¶15].

- The Plaintiff contends that in 2011 Lowery would a*sk her to describe to him the manner in which she engaged in sexual intercourse with her husband. The Plaintiff further contends that Lowery would describe to her the manner in which he engaged in sexual intercourse with other women, and the way he would like to engage in sexual intercourse with her.* [DE-28, ¶16].

(Ex. A).

Plaintiff's omission of these allegations from her charge is not without legal significance. The scope of her right to pursue this action depends ***solely*** on the contents of her original charge, and "[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original [EEOC] complaint, and those developed by reasonable investigation of the original [EEOC] complaint may be maintained in a subsequent Title VII lawsuit." *Balas v. Huntington Ingalls Indus.*, 711 F.3d 401, 408 (4th Cir. 2013); *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005) (emphasis added). In short, Plaintiff's omission from her administrative charge of what amount to outcome determinative allegations raised for the first time in her Third Amended Complaint deprives this Court of jurisdiction over those portions of her current claim and warrants their dismissal under Rule 12(b)(1). *Id*.

What is left of Plaintiff's Third Amended Complaint fails to state a claim upon which relief can be granted under Rule 12(b)(6). The portions of Plaintiff's harassment claim she did adequately preserve during the EEOC phase of the case reflect conduct repeatedly found lacking in sufficient severity or pervasiveness to support a claim of harassment under Title VII. *See e.g., Murray v. City of Winston-Salem, N.C.*, 203 F. Supp. 2d 493, 498-99 (M.D.N.C. 2002) (finding no hostile work environment where supervisor yelled at plaintiff during meetings and had an

intimidating management style, gave preferential treatment to an alleged paramour, made comments about his past sexual encounters and rotated his pelvis, kissed paramour in front of plaintiff on two occasions, put his arm around plaintiff after she became upset in a meeting, made a comment about how plaintiff looked in jeans, touched plaintiff's thigh twice with his thumb during crowded meetings and made "ummm" noises and stared at plaintiff as she walked by him).

In short, the jurisdictional defects and pleading deficiencies present doom Plaintiff's Third Amended Complaint. Plaintiff's Third Amended Complaint should be dismissed with prejudice for the reasons that follow.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

The facts and procedural history relevant to the issues raised in this motion are presented in the Third Amended Complaint and Preliminary Statement, above. Smithfield disputes the majority of the factual allegations in the Third Amended Complaint, but acknowledges that they are presumed to be true and correct for purposes of this motion only. *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 188 (4th Cir. 2007).

## ARGUMENT

A. **Standard of Review**

   1. **Rule 12(b)(1) Standard**

A case should be dismissed under Fed. R. Civ. P. 12(b)(1) if a federal court lacks the authority to hear the dispute. The district courts of the United States are courts of limited subject matter jurisdiction. *Exxon Mobil Corp. v. Allapattah Servs., Inc*, 545 U.S. 546, 552 (2005). "They possess only the jurisdiction authorized them by the United States Constitution and by federal statute." *U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009) (citing

*Bowles v. Russell*, 551 U.S. 205 (2007)). As such, when a federal district court lacks subject matter jurisdiction over an action, it must be dismissed. *Id.* "The burden of proving subject matter jurisdiction on a motion to dismiss is on the plaintiff, the party asserting jurisdiction." *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

2. **Rule 12(b)(6) Standard**

A motion to dismiss pursuant to Fed. R. Civ. P 12(b)(6) for failure to state a claim upon which relief can be granted tests the sufficiency of a complaint. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). When reviewing a Rule 12(b)(6) motion, the district court assumes all facts alleged in the complaint to be true, and should grant the motion if the complaint does not allege "enough facts to state a claim to relief that is plausible on its face." *Id. See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard requires a plaintiff to demonstrate more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

B. **The Court Lacks Subject Matter Jurisdiction Over Those Portions of Plaintiff's Harassment Claims Not Previously Alleged in Her Administrative Charge of Discrimination.**

An employee seeking redress for discrimination under Title VII cannot file suit until he or she has exhausted the administrative process. *See* 42 U.S.C. § 2000e-5(b). Indeed, "[a] failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim ***deprives the federal courts of subject matter jurisdiction over the claim.***" *Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (emphasis added); *see also Davis v. N.C. Dep't of Corr.*, 48 F.3d 134, 138-40 (4th Cir. 1995) (removal of Title VII claim to federal court improper because

7

plaintiff's failure to exhaust deprived court of subject matter jurisdiction); *Chamblee v. Old Dominion Sec. Co.*, No. 3:13-cv-820, 2014 U.S. Dist. LEXIS 50726, at *17 (E.D. Va. Apr. 10, 2014) (unpublished)[3] (finding court lacked jurisdiction over disparate impact claim where plaintiff's EEOC charge alleged he was denied promotion opportunities because of his race and sex, allegations sounding in disparate treatment).

For these reasons, "the allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962-63 (4th Cir. 1996)). If "the claims raised under Title VII exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred." *Dennis v. County of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995).

To this end, the Fourth Circuit has noted that "[t]he factual allegations made in formal litigation must correspond to those set forth in the administrative charge." *Chacko,* 429 F.3d at 506 (finding that "a reasonable investigation of discrete instances of supervisor misconduct not involving name calling could not be expected to lead to a continuous pattern of nonsupervisory misconduct which did involve name calling."); *see also Bolt v. Norfolk S. Corp.*, 22 F. Supp. 2d 512, 517 (E.D. Va. 1997) (denying Plaintiff's *quid pro quo* claim where the EEOC charge failed to mention any pay or promotion issues); *Evans v. Williamsburg Technical Coll.*, No. 4:03-cv-3939, 2007 U.S. Dist. LEXIS 24259 (D.S.C. Mar. 29, 2007) (unpublished) (finding that plaintiff failed to exhaust her administrative remedies for a *quid pro quo* claim where her EEOC charge stated that she engaged in consensual sex with her superior but did not allege coercion).

---

[3] All unpublished decisions cited herein are attached as Exhibit B.

Importantly, the Fourth Circuit has held as recently as last year that in determining what claims a plaintiff properly alleged before the EEOC, a court "***may look only to the charge filed with that agency.***"[4] *Balas v. Huntington Ingalls Indus.*, 711 F.3d 401, 407-408 (4th Cir. 2013) (noting that the intake questionnaire and the letters submitted by the plaintiff to the EEOC cannot be read as part of a formal discrimination charge without contravening the purposes of Title VII); *Sloop v. Mem'l Mission Hosp., Inc.*, 198 F.3d 147, 149 (4th Cir. 1999) ("[I]t would be objectively illogical to view a private letter from a complaining party to the EEOC as constructively amending a formal charge, given that one of the purposes of requiring a party to file charges with the EEOC is to put the charged party on notice of the claims raised against it."); *Craig v. S.C. Dep't of Health & Envtl. Control*, No. 3:08-cv-2113, 2009 U.S. Dist. LEXIS 101884, at *8 (D.S.C. Oct. 6, 2009) (unpublished) ("[C]laims raised in the questionnaire but not the actual EEOC charge are not properly exhausted" and such claims are ripe for dismissal.); *Middleton v. Motley Rice, LLC*, No. 2:08-cv-3256, 2010 U.S. Dist. LEXIS 81242, at *22 (D.S.C. Aug. 9, 2010) (unpublished) ("A plaintiff cannot be allowed to transfer the allegations mentioned only in the questionnaire to the [EEOC] charge itself. Not only would this be circumventing the role of the Commission, but it would be prejudicial to the employer."); *see also Bost v. Fed. Express Corp.*, 372 F.3d 1233, 1240-41 (11th Cir. 2004); *Novitsky v. Am. Consulting Eng'rs, LLC*, 196 F.3d 699 (7th Cir. 1999).

---

[4] The court's jurisdictional inquiry concerning the scope of the allegations set forth in the charge "must be examined from the standpoint of an objective observer to determine whether, by a reasonable construction of its terms, the filer requests the agency to activate its machinery and remedial processes." *See Fed. Express Corp. v. Holowecki,* 552 U.S. 389, 402 (2008). Indeed, according to Supreme Court, any inquiry that determines the existence and scope of a charge pursuant to a charging party's subjective intent or state of mind "misses the point," and is inconsistent with the statutory administrative framework governing federal employment discrimination claims. *Id*.

While courts have recognized that EEOC charges often are not completed by lawyers and as such "must be construed with utmost liberality," they "are not at liberty to read into administrative charges allegations they do not contain." *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 848 F.2d 457, 460 (4th Cir. 1988) (quoting *Kaplan v. Int'l Alliance of Theatrical & Stage Emps.*, 525 F.2d 1354, 1359 (9th Cir. 1975)). "Instead, persons alleging discrimination have a different form of recourse if they determine that their initial charge does not read as they intended: they may . . . file an amended charge with the EEOC." *Balas,* 711 F.3d at 408.

    **1.**    **Many Critical Allegations Contained in the Third Amended Complaint Are Not Reasonably Related to, and Would Not Naturally Have Arisen From, Investigation of the Charge.**

Plaintiff acknowledges in the Third Amended Complaint she filed her charge on or about December 21, 2011. [DE-28, ¶4]. She does not allege, nor does it appear that she can allege, that she has filed any subsequent amendments to her charge for the purpose of expanding the scope of her allegations. A plain review of Plaintiff's charge reveals the limited jurisdictional scope of her harassment claim. The charge alleges only that "Mr. Lowery would frequently tell me that he wanted to be with me and that he loved me. Mr. Lowery would at least on a weekly basis brush up against me sexually." (Ex. A).

In contrast, the Third Amended Complaint portrays far more egregious conduct by Lowery that bears little, if any, resemblance to the limited allegations in the charge. For instance, the Third Amended Complaint portrays Lowery directing sexually explicit statements of the most graphic nature toward Plaintiff [DE-28, ¶¶ 9, 10, 13, 16], physical harassing Plaintiff [DE-28, ¶15], directing inquiries and comments to Plaintiff about the manner in which she engaged in sexual intercourse with her husband [DE-28, ¶15], and making weekly sexual advances and solicitations replete with "continuous physical and emotional threats to the

Plaintiff" [DE-28, ¶11]. More alarmingly, the Third Amended Complaint portrays incredibly sinister allegations depicting Lowery routinely soliciting Plaintiff for sexual relations premised upon the threat of termination upon her refusal [DE-28, ¶¶ 17, 18], and even threatening "on a regular basis, at least once per week" ***to kill Plaintiff*** for refusing his advances or reporting them to management [DE-28, ¶¶12, 18, 26]. These allegations, which clearly form the factual centerpiece of Plaintiff's current claim, unquestionably are absent from Plaintiff's charge. Their absence deprives this Court of jurisdiction to consider them as part of Plaintiff's harassment claim.

Plaintiff may assert that Smithfield is trying to have it both ways – seeking previously to dismiss Plaintiff's prior complaints as lacking in factual specificity, but now claiming the Third Amended Complaint alleges too much. But the central issue regarding Plaintiff's new allegations is not whether they are factually specific enough to perfect a claim of harassment, but whether this Court has jurisdiction to consider them in the first place. In this regard, the Eastern District of Virginia's recent decision in *Porch v. Am. K-9 Interdiction, LLC*, No. 2:12-cv-690, 2013 U.S. Dist. LEXIS 128411 (E.D. Va. Sept. 5, 2013) (unpublished) is instructive. In that case, the plaintiff filed a charge of discrimination alleging sexual harassment and detailing numerous instances of egregious conduct on the part of her supervisor in support. *Id.* at *1-9. Following receipt of her notice of right to sue, the plaintiff filed suit in federal court alleging various theories of sex-based discrimination and harassment she allegedly endured at the hands of the defendant employer, including related claims of hostile work environment and *quid pro quo* discrimination under Title VII. The defendant employer moved to dismiss plaintiff's claim of *quid pro quo* sexual discrimination under Rule 12(b)(1), asserting that the plaintiff had not exhausted her administrative remedies. *Id.* at *10.

11

The district court noted that "Title VII does not itself distinguish between claims of sexual discrimination based on *quid pro quo* discrimination and hostile work environment." *Id.* at *15. Nevertheless, the Court refused to allow the plaintiff to proceed with her claims based on the *quid pro quo* sexual advances since she did not allege the material facts in support of that portion of her claim in the charge. Specifically, the court found:

> In her EEOC charge, Plaintiff did check the box indicating that she had been subjected to discrimination based on sex. Under the particulars section, Plaintiff supported her claims with allegations that she had been harassed by [her supervisors], called derogatory names, groped and grabbed in her crotch area, and received sexually explicit text messages from [her supervisor]. But nowhere in her EEOC charge did Plaintiff allege or even imply that she submitted to [her supervisor's] sexual advances because he expressed that her refusal would negatively affect her employment or advancement opportunities. Additionally, Plaintiff omitted any mention of sexual intercourse between herself and [her supervisor]. ***Without such an allegation or implication, [the employer] could not have been put on notice of the quid pro quo claim raised in her complaint*** . . .
>
> . . . Here, it cannot reasonably be inferred that [her supervisor] coerced Plaintiff into having sexual intercourse simply because she was subjected to her co-workers' unwelcomed conduct or because she was terminated after reporting harassment. ***It is also unlikely the quid pro quo allegation would have followed from a reasonable EEOC investigation because Plaintiff did not disclose the alleged coerced intercourse until after she filed her Complaint and did not imply in the charge that she was threatened with an adverse employment action***.

*Id.* at *16-22.

The court's analysis in *Porch* suggests a similar result should obtain in this case. There, as here, the plaintiff initiated her administrative charge on a hostile work environment theory of sex discrimination. There, as here, the charge specifically alleged harassing conduct by a specific supervisor as grounds for her claim. There, as here, the plaintiff later brought Title VII claims premised upon conduct by the same supervisor not previously alleged in her charge. Her omission of those ***factual allegations*** in her charge was deemed fatal to the portion of her Title VII claims premised upon those allegations. That Plaintiff is proceeding under a single claim of

12

harassment, rather than a separate, formally pled claim of *quid pro quo* discrimination like the plaintiff in *Porch*, is irrelevant. Indeed, the graphic sexual comments, constant sexual solicitations, and weekly threats of reprisal and physical harm for refusing sexual advances alleged in the Third Amended Complaint represent conduct nearly identical to that found lacking in *Porch*. More importantly, at their essence, these allegations represent a manner and form of harassment that is ***so wholly distinct*** from the conduct alleged in Plaintiff's charge that they can neither be deemed "reasonably related" to the allegations contained in the charge nor can they reasonably be expected to follow from any administrative investigation of Plaintiff's charge allegations. Thus, as in *Porch*, their omission from her charge deprives the Court of jurisdiction over them now.

> 2. **Allowing Plaintiff to Support Her Claim of Harassment With the Factual Allegations Not Previously Included In Her Predicate Charge Would Contravene The Purpose of Title VII's Administrative Requirements and Prejudice Defendant in the Preparation of its Defense.**

Further, Plaintiff's omission in her predicate charge of the heightened allegations contained in her Third Amended Complaint directly contravenes the very purpose of the administrative exhaustion requirements applicable to claims under Title VII. The administrative exhaustion requirement is integral to the statutory and regulatory framework intended by Congress in the context of Title VII. Indeed, as the Fourth Circuit explained:

> Congress enacted Title VII's exhaustion requirement with several goals in mind. The filing of an administrative charge is not simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit. Rather, ***Congress intended the exhaustion requirement to serve the primary purposes of notice and conciliation***.
>
> First, an administrative charge notifies the employer of the alleged discrimination. ***This notice gives the employer an initial opportunity to voluntarily and independently investigate and resolve the alleged discriminatory actions***. It also prevents the employer from later complaining of prejudice, ***since it has known of the allegations from the very beginning.***

13

> Second, the exhaustion requirement initiates agency-monitored settlement, the primary way that claims of discrimination are resolved. Title VII, including the creation of the EEOC, ***reflects a congressional intent to use administrative conciliation as the primary means of handling claims***, thereby encouraging quicker, less formal, and less expensive resolution of disputes. The EEOC's role in Title VII is thus critical because it can promote voluntary settlement in a manner that a more adversarial process cannot.

*Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005).

To this end, the absence of these new claims in Plaintiff's charge deprived Smithfield of notice of the full scope of Plaintiff's allegations during the administrative process and circumscribed its opportunity to voluntarily and independently investigate and potentially resolve the alleged harassing actions. The significance of timely and advance notice of the full scope of the claims and allegations at issue cannot be ignored, and is clearly evident in the administrative mandates applicable to claims under Title VII. Those mandates require the filing of a charge within a certain time (usually 180 or 300 days) of the alleged unlawful act, require that a charge "shall be in writing under oath or affirmation" and deems that a charge is acceptable only if it is "sufficiently precise to identify the parties, and to describe generally the action or practices complained of," require the EEOC provide notice of the charges to the employer within ten days, authorize the charging party to obtain a notice of right to sue after 180 days from the date of filing ***even if the investigation is still pending and not fully exhausted***,[5] and require that the charging party timely file any resulting federal claims within 90 days of receipt of that notice. *See generally*, 42 U.S.C. § 2000e-5; 29 C.F.R. § 1601.12; 29 C.F.R. § 1601.28. The intent of these mandates is obvious. A charging party is required to provide full and adequate notice of

---

[5] This requirement underscores the importance of full and complete disclosure of the facts and allegations intended by the charging party to support the charge since issuance of the right to sue before the investigation is complete raises the distinct possibility that the full scope of the allegations at issue, if not expressly included in the charge, will not be revealed and developed during the course of the EEOC's investigation.

14

the conduct and claims alleged, and to timely and promptly pursue those claims. Failure to do so contravenes the congressional intent to use administrative conciliation as the primary means of handling claims, and prejudices the defendant in its opportunity to voluntarily and independently investigate and resolve the alleged discriminatory actions. *Chacko*, 429 F.3d at 509.

These resulting harms are not insignificant, particularly where, as here, the purported scope and nature of Plaintiff's allegations has not come to full light for nearly three years following the filing of her initial charge, and where Smithfield received first notice, upon Plaintiff's initial complaint in July 2013, that the full scope of the conduct brought before the Court dates back to January 2007. The passage of time diminishes witness' recollection and poses obstacles to identifying and locating documentation relevant to the allegations. As is often the case with an employer the size of Smithfield, the employee turnover that inevitably takes place during the passage of time creates an additional obstacle to locating and interviewing witnesses. These are the very harms that full and timely notice through the administrative process are intended to minimize, if not eliminate. Yet, as a result of the Plaintiff's omission of these serious allegations from her charge, Smithfield is faced with these obstacles, not in the context of investigation and conciliation, but in the context of discovery and litigation.

Plaintiff should not be permitted to pursue claims in her Third Amended Complaint premised upon facts not previously alleged during the administrative process. *Dorsey v. Pinnacle Automation Co.*, 278 F.3d 830, 838 (8th Cir. 2002) ("Allowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, ***as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge.***") (emphasis added) (internal quotation marks and citations omitted). For the reasons stated above, Plaintiff's failure

15

to raise the full scope of her allegations in her predicate charge precludes her from raising them here. The Court therefore is without subject matter jurisdiction over the portions of her claim premised upon those allegations and must dismiss them.

C.  **The Portion of Plaintiff's Claim Over Which the Court Has Subject Matter Jurisdiction Fails to State a Claim For Sexual Harassment Based on Hostile Work Environment.**

What is left of Plaintiff's Third Amended Complaint must be dismissed for failure to state a valid claim. To establish a claim of sexual harassment based on hostile work environment under Title VII, a plaintiff must allege: 1) she was harassed because of her sex; 2) the harassment was unwelcome; 3) the harassment was sufficiently severe or pervasive to create an abusive working environment; and 4) there is some basis for imposing liability on the employer. *Hartsell v. Duplex Prods. Inc.*, 123 F.3d 766, 772 (4th Cir. 1997).

Under Title VII, the standard for establishing that offending behavior constitutes sexual harassment is high. *Singleton v. Dep't of Corr. Educ.*, 115 F. App'x 119, 122 (4th Cir. 2004); *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008) ("[P]laintiffs must clear a high bar in order to satisfy the severe or pervasive test."). Conduct is severe or pervasive only where it "alter[s] the conditions of the victim's employment and creates an abusive working environment." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 242 (4th Cir. 2000). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment - an environment that a reasonable person would find hostile or abusive - is beyond Title VII's purview." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). To determine whether a work environment is hostile or abusive, a court looks to all of the circumstances surrounding the alleged conduct including: 1) the frequency of the discriminatory conduct; 2) its

severity; 3) whether it is physically threatening or humiliating, or a mere offensive utterance; and 4) whether it unreasonably interferences with an employee's work performance. *Id*. at 23.

Once stripped of the allegations over which this Court has no jurisdiction, Plaintiff's Third Amended Complaint does not allege facts sufficient to establish Lowery's conduct was severe or pervasive. As set forth above, the facts and allegations upon which Plaintiff can proceed in support of her claim are jurisdictionally limited to the scope of her charge of discrimination. Therein, Plaintiff alleged only that Lowery "would frequently tell me he wanted to be with me and that he loved me," and that Lowery would "at least on a weekly basis brush up against [Plaintiff] sexually." (Ex. A). Plaintiff's allegations of such conduct in her Third Amended Complaint, and even those allegations contained therein which this Court could deem "reasonably related" to the original charge or likely to be "developed by reasonable investigation" of the original charge for the purpose of assuming subject matter jurisdiction over them, do not reflect conduct sufficiently severe and pervasive to satisfy her initial burden.

Decisions supporting this notion are numerous, and are evidenced by the following examples:

>**Shaver v. Dixie Trucking Co., Inc**., 181 F.3d 90, 1999 U.S. App. LEXIS 9862 (4th Cir. May 21, 1999) (unpublished) (supervisor placing his hand on plaintiff's knee during a job interview, rubbing plaintiff's back and shoulders and putting his arm around plaintiff several times did not amount to severe or pervasive conduct);
>
>**Hopkins v. Baltimore Gas & Elec. Co**., 77 F.3d 745, 747-48, 753-54 (4th Cir. 1996) (harassment was not severe or pervasive even though plaintiff alleged his supervisor made sexual comments, regularly told him he looked nice, bumped into him on numerous occasions, gave him a congratulatory kiss at his wedding and stared at him in the bathroom);
>
>**Adusumilli v. City of Chicago**, 164 F.3d 353, 361-62 (7th Cir. 1998) (no hostile work environment where plaintiff was teased about being a prostitute, subjected to sexual innuendo and touched by coworkers on four different occasions on either the arm, fingers, or buttocks);

*Saxton v. AT&T*, 10 F.3d 526, 528, 534 (7th Cir. 1993) (two incidents where supervisor rubbed his hand along an employee's upper thigh and kissed her did not meet the severe and pervasive standard);

*Weiss v. Coca-Cola Bottling Co. of Chicago*, 990 F.2d 333, 337 (7th Cir. 1993) (dismissing plaintiff's sexual harassment claim on summary judgment where the plaintiff alleged her supervisor repeatedly asked her about her personal life, told plaintiff how beautiful she was, asked plaintiff on dates, called her a dumb blonde, put his hand on her shoulder at least six times, placed "I love you" signs in her work area and tried to kiss her on three different occasions);

*Murray v. City of Winston-Salem, N.C.*, 203 F. Supp. 2d 493, 498-99 (M.D.N.C. 2002) (finding no hostile work environment where supervisor yelled at plaintiff during meetings and had an intimidating management style, gave preferential treatment to an alleged paramour, made comments about his past sexual encounters and rotated his pelvis, kissed paramour in front of plaintiff on two occasions, put his arm around plaintiff after she became upset in a meeting, made a comment about how plaintiff looked in jeans, touched plaintiff's thigh twice with his thumb during crowded meetings and made "ummm" noises and stared at plaintiff as she walked by him).

In sum, not all gender-based "harassment" is actionable. *Hartsell*, 123 F.3d at 772 ("Title VII does not attempt to 'purge the workplace of vulgarity'"). "'Simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment'" sufficient to support a claim of hostile work environment. *Faragher v. City of Boca Raton*, 524 U.S. 775, 789 (1998) (internal citations omitted). Although Plaintiff's allegations concerning Lowery which are appropriately before the Court might be deemed inappropriate for the work environment, and even offensive to some, they fall short of that required to state a claim upon which relief can be granted, and should be dismissed as a result. Given the jurisdictional limitations discussed above, Smithfield can conceive of no set of facts reasonably related to the remaining allegations which would be sufficiently severe and/or pervasive to warrant further amendment by the Plaintiff.

## CONCLUSION

For the reasons stated above, Defendant respectfully requests that the Court grant its Motion to Dismiss and dismiss Plaintiff's Complaint with prejudice.

Respectfully submitted this 26th day of September, 2014.

        **SMITHFIELD FARMLAND CORP.**

        */s/ Melissa A. Romanzo*
        Melissa A. Romanzo (NC Bar No. 38422)
        HUNTON & WILLIAMS LLP
        101 South Tryon Street, Suite 3500
        Charlotte, North Carolina 28280
        Telephone: (704) 378-4700
        Fax: (704) 378-4890
        Email: mromanzo@hunton.com

        Kurt G. Larkin (VA Bar No. 70730)
        HUNTON & WILLIAMS LLP
        Riverfront Plaza, East Tower
        951 East Byrd Street
        Richmond, Virginia 23219-4074
        Telephone: (804) 788-8200
        Fax: (804) 788-8218
        Email: klarkin@hunton.com

        *Counsel for Defendant Smithfield Farmland Corp.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of September, 2014, a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Angela Newell Gray, Esq.
7 Corporate Center Court, Suite B
Greensboro, NC 27408
angela@graynewell.com
*Attorney for Plaintiff*

                                          */s/ Melissa A. Romanzo*
                                          Melissa A. Romanzo