UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Case No.: 7:13-cv-145-F

| | | |
|---|---|---|
| LISA COOPER, | ) | |
| | ) | MEMORANDUM OF LAW IN |
| Plaintiff, | ) | SUPPORT OF EMERGENCY MOTION |
| | ) | TO COMPEL INDEPENDENT |
| v. | ) | MEDICAL EXAMINATION, COMPEL |
| | ) | DISCOVERY RESPONSES, AND |
| THE SMITHFIELD PACKING | ) | EXTEND DEFENDANT'S EXPERT |
| COMPANY, INC., | ) | REPORT AND DISCOVERY DEADLINE |
| | ) | |
| | ) | Fed. R. Civ. P. 35, 37 and |
| Defendant. | ) | Local Civil Rules 6.1, 7.1 and 26.1 |

## PRELIMINARY STATEMENT

From the outset of this litigation, Plaintiff has placed her mental state in controversy. She alleges that she suffered, was diagnosed and was treated for severe emotional distress including "headaches, chronic depression, insomnia, chronic anxiety, stress, 'nervous stomach,' and fear" as a result of sexual harassment she attributes to Smithfield. [DE-34, ¶ 32] Plaintiff also seeks compensatory damages for "pecuniary losses, emotional pain, and mental anguish." [DE-34, p. 8]

This Court has recognized that Smithfield has "a right to explore the nature, cause, and extent of Plaintiff's alleged emotional distress in order to defend against the claim." *See Smith v. Board of Governors*, No. 7:08-CV-30-D, 2008 U.S. Dist. LEXIS 91271, 2008 WL 4877131, at *1 (E.D.N.C. Nov. 10, 2008). But Plaintiff has frustrated Smithfield's ability to do so by intentionally withholding critically relevant information concerning her mental health history. In written discovery responses submitted months before her May 17, 2016 deposition, Plaintiff expressly denied ever receiving mental health treatment for any reason besides the alleged harassment she suffered at Smithfield. But during her deposition, Plaintiff abruptly reversed course and admitted she has been receiving ongoing treatment from multiple mental healthcare providers for depression caused by sexual harassment and a violent sexual assault by a prior employer. Incredibly, she admitted to purposefully withholding this information from

her discovery responses *because she did not think Smithfield needed it and/or because in her personal opinion it was not relevant*.[1]

Following her deposition, Smithfield promptly demanded that Plaintiff supplement her discovery responses by identifying the mental healthcare providers she alluded to in her deposition.[2] Plaintiff provided her supplemental responses on June 2, 2016. But, despite acknowledging at least six separate times during her deposition that she received mental healthcare treatment that began before her employment with Smithfield, Plaintiff again withheld the identity of those providers and once again denied seeking mental health treatment from anyone, for any reason, besides the harassment she is alleging against Smithfield.

Had Smithfield known Plaintiff has been receiving mental health treatment as a result of an alleged sexual assault by a former employer, it would have immediately requested an IME. But Plaintiff withheld this information from Smithfield for months, denying it the benefit of discovery that would have allowed the Company to timely decide whether an IME is necessary (the Company chose not to request an IME based on the bald assertions in her pleading, and reasonably waited for accurate discovery responses that never came). And despite her deposition admissions, Plaintiff continues withhold relevant information, submitting supplemental responses that are plainly at odds with her sworn testimony. Her blatant and continuing disregard for her discovery obligations necessitates the Court's intervention.

For the reasons set forth in greater detail below, good cause exists for the Court to compel Plaintiff to submit to an IME pursuant to Rule 35. Smithfield has identified two experts – Dr. Manish Fozdar, a neuropsychiatrist, and Dr. Thomas Bundick, a psychologist – who are statutorily qualified and available to perform the IME at Dr. Fozdar's office located at Triangle Forensic Neuropsychiatry, PLLC, 4700 Falls of Neuse Road, Suite 250, in Raleigh, North Carolina 27609, and respectfully requests that the

---

[1] Plaintiff also acknowledged that she withheld documents and other tangible items relating to her medical treatment and to her claim for economic damages, including her most recent tax returns.

[2] Smithfield also demanded Plaintiff supplement her response to its prior request for medical records in her possession relating to any of the medical providers identified in her interrogatory responses and at deposition. As of the time of this Motion, Plaintiff has not provided full and complete supplemental responses to those requests.

Court order plaintiff to submit to an IME to be conducted by them in order to assess the nature, cause, and extent of Plaintiff's alleged emotional and/or psychological injuries, if any.

Additionally, in order to fully and adequately assess Plaintiff's mental state, it is necessary that Dr. Fozdar and Dr. Bundick have access to Plaintiff's full mental health history. Plaintiff has proven herself to be both an unreliable and unwilling source of such information. Smithfield therefore requests that the Court issue an order compelling Plaintiff to produce, at a minimum, the full and complete identity of all mental healthcare providers from whom she has sought treatment for mental or psychological distress, as well as all medical records of any kind in her possession relating to treatment by those providers.

Further, Dr. Fozdar and Dr. Bundick are not available to conduct the IME until either July 8, 2016, or July 14, 2016, and will likely need additional time after the IME in order to prepare their reports. Accordingly, Smithfield requests that the Court extend Smithfield's expert report deadline until July 25, 2016, to allow adequate time for Smithfield to subpoena medical records from Plaintiff's currently undisclosed treatment providers and for its experts to review those records, conduct the IME, and prepare reports. The Court should also extend the discovery cutoff date until August 5, 2016, but only to allow Plaintiff to depose Smithfield's experts.

Finally, as set forth in the Motion, Plaintiff's extreme delinquency in disclosing this necessary information compels Smithfield to request that the Court decide this motion on an emergency basis in order to limit any further delay in the discovery schedule.

### STATEMENT OF RELEVANT FACTS AND PROCEDURAL HISTORY

On August 23, 2015, Plaintiff filed her Fourth Amended Complaint, the live pleading in this case, alleging that she was subjected to sexual harassment during her employment with Smithfield in violation of Title VII. [DE-34]. Plaintiff contends she suffered "severe emotional distress, including but not limited to, headaches, chronic depression, insomnia, chronic anxiety, stress, 'nervous stomach,' and fear." [DE-34, ¶ 32]. Plaintiff further contends that she has been diagnosed with "severe emotional distress as a result of the aforementioned behavior and prescribed medication to treat her condition." *Id*. Plaintiff has

requested compensatory damages for "pecuniary losses, emotional pain, and mental anguish," among other purported damages. [DE-34, p. 8].

On October 15, 2015, the day after the parties' Rule 26(f) conference, Smithfield served interrogatories on Plaintiff ("Interrogatories") requesting, in pertinent part, that she identify with specificity every health care provider from whom she sought treatment as a result of the purported emotional distress she suffered during her employment with Smithfield, as well as any other health care provider from whom she sought treatment at any time for any type of mental or emotional illness or problem. (Exh. 1, ¶¶ 11, 12).

Plaintiff responded that she sought mental health treatment from only one medical provider, Community Innovations, Inc., in Lumberton, North Carolina, and only in connection with the emotional injuries she allegedly suffered during her employment at Smithfield. (Exh. 2, ¶¶ 11, 12). In fact, following correspondence from Smithfield's counsel which took issue with her initial response (Exh. 3), Plaintiff purported to confirm that "she has not been treated for mental health issues other than as it relates to the harassment she was subjected to [during her employment]," and identified "Dr. Womack at Community Innovation" as the only mental health treatment provider with whom she treated for the alleged injuries resulting from it . (Exh. 4, ¶ 12).

Smithfield also served document requests on Plaintiff ("Requests"), which included numerous requests relating to Plaintiff's mental treatment history. (Exh. 5, ¶¶ 18, 20-22). Plaintiff produced only a single document in response to those requests: a letter dated February 20, 2012, from a Case Manager at Community Innovations, Inc., indicating that Plaintiff was being stepped down to a lower level of care as of that date "[d]ue to improvement with [her] symptoms." (Exh. 6, ¶¶ 18, 20-22) (Exh. 7).

Smithfield then deposed Plaintiff on May 17, 2016. (Exh. 8). During her deposition, Plaintiff testified that, between August 1992 and July 1993, she was subjected to multiple incidents of sexual harassment by a prior employer, including alleged workplace incidents of violent sexual assault by two of her supervisors. (Exh. 8, pp. 132-138, 142-147, 151-158). For the first time, she then disclosed that she has seen <u>at least four psychiatrists</u> as a result of those incidents, and that she continues to treat with one or

more of them for depression associated with those incidents. (Exh. 8, pp. 160-166). Plaintiff admitted that she did not disclose these treatment providers in her prior responses to Smithfield's interrogatories, casually acknowledging that she omitted them "because it didn't have anything to do with what is going on here." (Exh. 8, pp. 167-168). Plaintiff further admitted that she did not disclose the alleged sexual harassment and assault by her prior employer to her treatment providers at Community Innovations, the provider she admits to seeing as a result of the harassment she alleges against Smithfield. (Exh. 8, p. 274).[3]

Smithfield's counsel wrote to Plaintiff's counsel on May 23, 2016 expressing frustration at Plaintiff's apparently intentional failure to provide in her discovery responses the information she alluded to in her deposition and requesting that Plaintiff: (1) identify each and every provider from whom she has sought treatment for mental or psychological distress, to the extent not specifically identified in her deposition testimony; (2) produce medical records in her possession relating to any of the medical providers identified in her interrogatory responses and at deposition; and (3) execute and return authorizations for release of medical records for each healthcare provider from whom she sought or obtained treatment, advice, consultation, evaluation, testing, or other services at any time for any type of a mental or emotional illness or problem. (Exh. 9, pp. 3-6, 8). In the same letter, Smithfield's counsel indicated the Company intended to seek the IME requested in this Motion, and inquired whether Plaintiff would voluntarily submit to the examination. (Exh. 9, p. 8). Plaintiff's counsel agreed to disclose and produce the requested information and records on or before Wednesday, June 1, 2016, but indicated that Plaintiff would not voluntarily submit to the IME.

---

[3] Finally, Plaintiff admitted for the first time that Dr. Womack – the treatment provider incorrectly identified in Plaintiff's supplemental responses to Smithfield's interrogatories as being associated with Community Innovations (Exh. 4, ¶ 12) – was actually her family physician and that she had also sought treatment from her for emotional injuries. (Exh. 8, pp. 266-272). Plaintiff also acknowledged that she possessed a number of documents and other tangible items, including prescription bottle labels and appointment confirmation cards relating to her mental health treatment, which she chose not to produce in response to Smithfield's interrogatories and requests. (Exh. 8, pp. 268-273, 283-286). When asked why she did not disclose this information in response to Smithfield's discovery requests, she sarcastically remarked: "Did you ask for appointment cards?" (Exh. 8, p. 284).

On June 2, 2016, Plaintiff served her second supplemental responses. (Exh. 10). While she produced some new information, Plaintiff not only again failed to identify any of the treatment providers referenced during her deposition relating to her prior workplace sexual harassment and assault, but once again denied ever receiving mental health treatment for any reason besides her claims in this case – a contention blatantly at odds with her deposition admissions. (Exh. 10, p. 4).[4]

## ARGUMENT

### A. Good Cause Exists to Support an Order Compelling Plaintiff to Submit to an IME.

Rule 35 of the Federal Rules of Civil Procedure authorizes the Court to order a party whose mental condition is in controversy to submit to a mental examination by a suitably licensed or certified examiner upon a showing of good cause. *See* Fed.R.Civ.P. 35(a). Courts have generally found the mental condition of a party to be in controversy where a plaintiff has claimed unusually severe emotional distress, or has alleged a specific type of disorder or other psychiatric injury, among other relevant factors. *Walton v. N.C. Dep't of Agric. & Consumer Servs.*, No. 5:09-CV-302-FL, 2011 U.S. Dist. LEXIS 25102, 7-8 (E.D.N.C. Mar. 11, 2011) (citing *Smith v. Board of Governors*, No. 7:08-CV-30-D, 2008 U.S. Dist. LEXIS 91271, 2008 WL 4877131, at *1 (E.D.N.C. Nov. 10, 2008). In assessing the existence of good cause, courts have noted that a defendant facing allegations of emotional injuries from sexual harassment has a right to explore the nature, cause, and extent of the alleged emotional injuries in order to defend against such a claim. *Smith*, 2008 U.S. Dist. LEXIS 91271, 2008 WL 4877131, at *2.

#### 1. Plaintiff's Mental Condition is In Controversy.

As made clear in the Fourth Amended Complaint, Plaintiff has alleged that she suffered, was diagnosed, and was treated for severe emotional distress characterized by "headaches, chronic depression, insomnia, chronic anxiety, stress, 'nervous stomach,' and fear" as a result of sexual harassment that purportedly occurred during her employment with Smithfield. [DE-34, ¶ 32]. Plaintiff is seeking compensatory damages for "pecuniary losses, emotional pain, and mental anguish" due to the purported

---

[4] Plaintiff also failed to produce her 2015 tax returns, which were specifically requested by Smithfield following her deposition, in which she admitted to having filed them. (Exh. 8, p. 251; Exh. 9, p. 6).

6

harassment. [DE-34, p. 8]. Plaintiff has unquestionably placed her mental state in controversy by these allegations as well as the many admissions she made for the first time during her deposition about mental health treatment she sought as a result of prior sexual assaults she claims she suffered while working for a different employer. Thus, there is no question Plaintiff's mental condition is in controversy in this litigation.

      **2.**      **Dr. Fozdar and Dr. Bundick are Statutorily Qualified to Perform to IME**.

Smithfield has identified Dr. Manish Fozdar, a neuropsychiatrist, and Dr. Thomas Bundick, a psychologist, to perform the IME, and intends to designate them as retained experts in this case. A copy of their respective Curriculum Vitae is attached. (Exh. 11). They unquestionably are statutorily qualified to perform the IME.

      **3.**      **The Requested IME is Supported by Good Cause.**

Plaintiff's complaint allegations alone provide sufficient justification for the IME since Smithfield "should have the opportunity to explore the nature, cause, and extent of the alleged emotional injuries in order to defend against such a claim." *See Walton v. N.C. Dep't of Agric. & Consumer Servs*., No. 5:09-CV-302-FL, 2011 U.S. Dist. LEXIS 25102, 7-8 (E.D.N.C. Mar. 11, 2011). An IME is necessary, however, due to Plaintiff's deposition testimony, which revealed numerous potential uncertainties relating to her alleged emotional injuries. Plaintiff's prior diagnosis of depression, which she claims resulted from multiple incidents of violent sexual assault by her former employer (Exh. 8, pp. 132-138, 142-147, 151-158), is of particular relevance. Moreover, Plaintiff admitted that she did not disclose these prior incidents to the treatment providers who diagnosed her with severe emotional distress following her employment with Smithfield. (Exh. 8, p. 274). Their resulting diagnoses are potentially unreliable as a result. And as stated above, Plaintiff withheld virtually <u>all</u> of this information from Defendant until the date of her deposition, and has yet to provide with specificity the identity of any of these treatment providers. An IME is necessary to evaluate both Plaintiff's claimed emotional distress against the backdrop of her prior experiences of harassment and assault, and the reliability and accuracy of the diagnosis underlying her claims for damages in this case. The requested IME is the only reliable

7

method of assessing the cause, nature, and extent of Plaintiff's alleged mental and emotional injuries, if any exist. Good cause therefore exists to compel Plaintiff to submit to an IME.

B. **Good Cause Exists to Compel the Plaintiff to Identify with Specificity Her Mental Healthcare Providers and Produce the Relevant Responsive Records in Her Possession.**

Fed. R. Civ. P. 37 provides that "[a] party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if a party fails to answer an interrogatory or fails to produce or make available for inspection requested documents. For purposes of a motion to compel, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). Finally, Rule 37(a)(5)(A) provides that, absent certain specified circumstances, the moving party be awarded expenses "[i]f the motion [to compel] is granted—or if the disclosure or requested discovery is provided after the motion was filed. . ." Fed. R. Civ. P. 37(a)(5)(A).

Since the outset of discovery, Smithfield has repeatedly sought specific disclosures and documents relating to Plaintiff's mental health history. Plaintiff's deposition testimony, however, makes clear that she has yet to identify with specificity all of the mental healthcare providers with whom she has treated. Indeed, Plaintiff confirmed on at least six separate occasions during her deposition that she has received ongoing mental healthcare treatment as a result of a sexual harassment and assault she allegedly suffered at a prior place of employment. (Exh. 8, pp. 159-168). Plaintiff flatly admitted, "I see a lot of therapists." (Exh. 8, p. 163). Plaintiff even acknowledged that her prior responses to Smithfield's Interrogatories, in which she denied ever receiving mental health treatment for any reason besides her claim against Smithfield, were not complete, and that she didn't disclose her prior treatment "because it didn't have anything to do with what is going on here." (Exh. 8, pp. 159-168). Incredibly, her latest supplemental interrogatory answers contradict her deposition admission that her prior denials on this subject were not truthful.

Smithfield has specifically requested the identity of these healthcare providers, as well as documents relevant to Plaintiff's treatment, on three separate occasions – most recently on May 23, 2016, in advance of this Motion. (Exhs. 1, 3, 5, 9). When contrasted with her deposition testimony, a plain

reading of Plaintiff's responses to those requests makes clear that she has yet to make a full, complete, and accurate disclosure of the identity of her mental healthcare providers. And, given her obvious disregard of her discovery obligations, Smithfield cannot say with certainty that Plaintiff has produced all of the documents and tangible items in her possession relevant to her mental healthcare treatment.

For the reasons stated above, an IME is necessary in order to assess the cause, nature, and extent of Plaintiff's alleged mental and emotional injuries, if any exist. Prudence dictates that a thorough and accurate IME cannot be performed without due consideration of Plaintiff's mental health history. Good cause therefore exists to compel Plaintiff to make full and complete disclosure of this relevant information to ensure that Smithfield may avail itself of its recognized "right to explore the nature, cause, and extent of Plaintiff's alleged emotional distress in order to defend against the claim." *See Smith v. Board of Governors, No.* 7:08-CV-30-D, 2008 U.S. Dist. LEXIS 91271, 2008 WL 4877131, at *1 (E.D.N.C. Nov. 10, 2008).

C.  **Good Cause Exists to Justify the Requested Extension of the Deadline for Smithfield's Retained Expert Report and the Discovery Deadline.**

Finally, Plaintiff's intentional failure to disclose critically relevant information relating to her mental health history has left Smithfield unable to comply with the June 17, 2016 deadline for production of its retained expert reports. Even assuming that Plaintiff produces the relevant information and documents in response to this Motion or any resulting order from the Court, Smithfield must subpoena Plaintiff's medical records, and thus has no assurances that it will receive the documents prior to the deadline. Moreover, Smithfield's identified experts are not available to conduct the IME until July 2016, and will need a reasonable amount of time following the examination to prepare a written report. Good cause therefore exists to extend both the expert report deadline and the discovery deadline in order to provide reasonable and adequate time to permit the IME to proceed in due course.

**CONCLUSION**

Based on the foregoing, Smithfield respectfully requests that the Court: (i) compel Plaintiff to submit to an IME at the office of Dr. Manish Fozdar, located at Triangle Forensic Neuropsychiatry,

PLLC, 4700 Falls of Neuse Road, Suite 250, in Raleigh, North Carolina 27609, at 9:00 AM, on July 8, 2016, or July 14, 2016, or on another date mutually agreeable to the parties; (ii) compel the full and complete production of information, documents, and tangible items relevant to the mental and emotional injuries Plaintiff alleges in this case; (iii) extend Smithfield's expert report deadline to July 25, 2016, to allow adequate time for Smithfield to subpoena medical records from Plaintiff's currently undisclosed treatment providers and for its experts to review those records, conduct the IME, and prepare reports; (iv) extend the discovery cutoff date to August 5, 2016, for the limited purpose of allowing Plaintiff to depose any experts disclosed by Smithfield on or before July 25, 2016, and (v) award Smithfield its reasonable expenses incurred in making this Motion, including attorney's fees.

As stated in the Motion, Smithfield requests that this motion be given emergency treatment and respectfully suggests that the Court require any responsive briefing from Plaintiff be completed within a timeframe that would allow the Court to issue a ruling on the Motion before the Company's current expert deadline of June 17, 2016.

Respectfully submitted this 3rd day of June 2016.

**SMITHFIELD FARMLAND CORP.**

*/s/ Kurt G. Larkin*
Melissa A. Romanzo (NC Bar No. 38422)
HUNTON & WILLIAMS LLP
101 South Tryon Street, Suite 3500
Charlotte, North Carolina 28280
Telephone: (704) 378-4700
Fax: (704) 378-4890
Email: mromanzo@hunton.com

Kurt G. Larkin (VA Bar No. 70730)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8200
Fax: (804) 788-8218
Email: klarkin@hunton.com

Brian C. Ussery (VA Bar No. 88243)
HUNTON & WILLIAMS LLP

Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8200
Fax: (804) 788-8218
Email: bussery@hunton.com

***Counsel for Defendant Smithfield Farmland Corp.***

## CERTIFICATE OF CONFERENCE

Undersigned counsel has conferred with counsel for Plaintiff. Plaintiff opposes all of the relief requested in this Motion.

*/s/ Kurt G. Larkin*_____
Kurt G. Larkin

**CERTIFICATE OF SERVICE**

I hereby certify that on this 3rd day of June, 2016, a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

>Angela Newell Gray, Esq.
>7 Corporate Center Court, Suite B
>Greensboro, NC 27408
>angela@graynewell.com
>*Attorney for Plaintiff*

>> */s/ Kurt G. Larkin*_____
>> Kurt G. Larkin