**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NORTH CAROLINA**
**SOUTHERN DIVISION**
**Case No.: 7:13-cv-145-F**

| | |
|---|---|
| **LISA COOPER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **THE SMITHFIELD PACKING** | ) |
| **COMPANY, INC.** | ) |
| | ) |
| **Defendant.** | ) |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION FOR SUMMARY JUDGMENT**

**Fed. R. Civ. P. 56 & Local Civil Rule 56.1**

# TABLE OF CONTENTS

PAGE

I.  PRELIMINARY STATEMENT .......................................................................1

II. STATEMENT OF MATERIAL FACTS ...........................................................2

III. APPLICABLE LEGAL STANDARDS ............................................................2

IV. ARGUMENT ....................................................................................................3

    A.  Conduct Not Based on Cooper's Gender Should Not Be Considered.........................4

    B.  Cooper Failed to Establish That She Was Subjected to "Severe and Pervasive" Harassment.....................................................................................................6

    C.  Cooper Failed to Establish a Reasonable Basis for Imputing Liability to the Company. .............................................................................................12

        1.  Lowery is Not a Supervisor for the Purposes of Title VII. ................................12

        2.  Cooper Cannot Establish That Smithfield Is Liable for Co-worker Harassment Under a Negligence Standard. ......................................14

            a.  There Is No Record Evidence Smithfield Knew or Should Have Known of Lowery's Alleged Harassment Until July 18, 2011, the Day Before Cooper Resigned. ................................................15

            b.  Upon Learning of Cooper's Allegations, Smithfield Took Prompt and Adequate Remedial Action. .........................................16

        3.  Even Assuming Arguendo That Lowery Is a Title VII Supervisor, Cooper Failed to Establish That Smithfield Is Vicariously Liable for His Alleged Misconduct. ...............................................18

            a.  Smithfield Is Entitled to Raise the Defense Since Cooper Suffered No Tangible Employment Action.......................................18

            b.  Smithfield Exercised Reasonable Care to Prevent and Promptly Correct Harassing Behavior.....................................19

            c.  Cooper Unreasonably Failed to Take Advantage of the Preventative or Corrective Opportunities Provided by Smithfield. ..........22

V.  CONCLUSION.................................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**[*]

*Adusumilli v. City of Chicago,*
    164 F.3d 353 (7th Cir.1998) ...............................................................................10

*Anderson v. Liberty Lobby,*
    477 U.S. 242 (1986)..............................................................................................3

*\*Banks v. San-J In'l,*
    No. Civ.A. 3:00CV184, 2001 WL 34056053 (E.D. Va. Jan. 18, 2001) .........6, 9, 10

*Barrett v. Applied Radiant Energy Corp.,*
    240 F.3d 262 (4th Cir. 2001) .....................................................................22, 23

*\*Barua v. Credit Lyonnais-U.S. Branches,*
    1998 U.S. Dist. LEXIS 20338 (S.D.N.Y. Dec. 30, 1998) ...................................22

*Burlington Industries, Inc. v. Ellerth,*
    524 U.S. 742 (1998)............................................................................................18

*Causey v. Balog,*
    162 F.3d 795 (4th Cir. 1998) ...............................................................................4

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)..............................................................................................3

*Cepada v. Bd. of Educ. of Bait. Cty.,*
    974 F. Supp. 2d 772 (D. Md. 2013) ......................................................................4

*Crawford v. Carroll,*
    529 F.3d 961 (11th Cir. 2008) .............................................................................6

*\*Cronin v. S.C. Dep't of Corr.,*
    2013 U.S. Dist. LEXIS 134768 (D.S.C. Sept. 20, 2013)......................................5

*\*Curry v. Md. Corr. Institution-Jessup,*
    2007 U.S. Dist. LEXIS 69112 (D. Md. Sept. 17, 2007) .......................................5

*\*Dayes v. Pace Univ.,*
    2000 U.S. Dist. LEXIS 3698 (S.D.N.Y. Mar. 24, 2000) ....................................22

*\*Dearth v. Collins,*
    2005 U.S. Dist. LEXIS 47604 (S.D. Ga. Mar. 17, 2005) ...................................10

---

[*] Provided in attached Supplemental Authority.

*E.E.O.C. v. Sunbelt Rentals, Inc.*,
    521 F.3d 306 (4th Cir. 2008) ............................................................14

*E.E.O.C. v. Xerxes Corp.*,
    639 F.3d 658 (4th Cir. 2011) ............................................................14

*\*EEOC v. Bud Foods, LLC*,
    2006 U.S. Dist. LEXIS 54972 (W.D.N.C. Aug. 7, 2006)......................8

*Faragher v. City of Boca Raton*,
    524 U.S. 775 (1998).............................................................3, 18, 25

*Frazer v. Angelina Coll.*,
    67 Fed. Appx. 251 (5th Cir. 2003)....................................................22

*\*Graham v. Sears*,
    2010 U.S. Dist. LEXIS 26384 (D.S.C. Feb. 1, 2010) ..........................5

*Gupta v. Fla. Bd. of Regents*,
    212 F.3d 571 (11th Cir. 2000), abrogated on other grounds..................6

*Harris v. Forklift Sys., Inc.*,
    510 U.S. 17 (1993).................................................................4, 6, 10

*Hartsell v. Duplex Prods., Inc.*,
    123 F.3d 766 (4th Cir. 1997) ...........................................................3, 4

*Helm v. Kansas*,
    656 F.3d 1277 (10th Cir. 2011) ........................................................22

*Hopkins v. Baltimore Gas & Elec. Co.*,
    77 F.3d 745 (4th Cir. 1996) ...............................................................8

*\*King v. N.C. Dep't of Pub. Safety, Div. of Adult. Corr.*,
    2014 U.S. Dist. LEXIS 2005 (E.D.N.C. Jan. 8, 2014)....................14, 18

*\*Lacy v. AMTRAK*,
    2000 U.S. App. LEXIS 2933 (4th Cir. 2000) ......................................4

*\*Lesicko v. ConocoPhillips Pipe Line Co.*,
    2009 U.S. Dist. LEXIS 8364 (S.D. Ill. Feb. 5, 2009) ..........................5

*Lissau v. Southern Food Serv., Inc.*,
    159 F.3d 177 (4th Cir. 1998) ...........................................................19

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986).........................................................................3

*McKinnish v. Donahoe*,
40 F. Supp. 3d 689 (W.D.N.C. 2014) ................................................................13

*Mendoza v. Borden, Inc.*,
195 F.3d 1238 (11th Cir. 1999) ...........................................................................9

*Meritor Sav. Bank, FSB v. Vinson*,
477 U.S. 57 (1986) ................................................................................................3

*Mikels v. City of Durham*,
183 F.3d 323 (4th Cir. 1999) .............................................................................14

*Morse v. Giant Food, Inc.*,
2005 U.S. Dist. LEXIS 567 (D. Md. Jan. 14, 2005) ...........................................5

*Murray v. City of Winston-Salem*,
203 F. Supp. 2d 493 (M.D.N.C. 2002) ......................................................4, 5, 6, 9

*Ocheltree v. Scollon Productions, Inc.*,
335 F.3d 325 (4th Cir. 2003) ........................................................................4, 14

*Pa. State Police v. Suders*,
542 U.S. 129 (U.S. 2004) ...................................................................................19

*Patterson v. County of Fairfax*,
2000 U.S. App. LEXIS 11009 (4th Cir. 2000) ....................................................6

*Pinkerton v. Colo. DOT*,
563 F.3d 1052 (10th Cir. 2009) .........................................................................22

*Quinn v. Green Tree Credit Corp.*,
159 F.3d 759 (2nd Cir.1998) ..............................................................................10

*Reese v. Meritor Auto., Inc.*,
5 Fed. Appx. 239 (4th Cir. 2001) ..................................................................19, 23

*Shaver v. Dixie Trucking Co., Inc.*,
1999 U.S. App. LEXIS 9862 (4th Cir. May 21, 1999) ........................................8

*Shaw v. AutoZone, Inc.*,
180 F.3d 806 (7th Cir. 1999) .............................................................................22

*Shepherd v. Comptroller of Public Accounts of Texas*,
168 F.3d 871 (5th Cir. 1999) ...............................................................................9

*Thompson v. Naphcare, Inc.*,
117 Fed.Appx. 317 (5th Cir. 2004) ....................................................................22

*Vance v. Ball State Univ.*,
  133 S. Ct. 2434 (2013) ...................................................................................12, 13, 14

*Walton v. Johnson & Johnson Servs.*,
  347 F.3d 1272 (11th Cir. Fla. 2003) .......................................................................22

*Weiss v. Coca-Cola Bottling Co. of Chicago*,
  990 F.2d 333 (7th Cir.1993) ...................................................................................10

**Statutes**

42 U.S.C. § 2000e-2(a)(1) ...............................................................................................3

**Other Authorities**

Fed. R. Civ. P. 56 ........................................................................................................1, 3

Fed. R. Civ. P. 56 (e) .......................................................................................................3

Federal Rules of Civil Procedure Rule 56(c) ..............................................................2, 3

Local Civil Rule 56.1(a)(1) ..............................................................................................2

Local Rules of Civil Procedure Rule 56.1 .......................................................................1

Rule 12(b)(6) .....................................................................................................................1

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
## MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56 and Rule 56.1 of the Local Rules of Civil Procedure for the Eastern District of North Carolina, Defendant, Smithfield Farmland Corp.[1] ("Smithfield" or "the Company"), respectfully submits this memorandum of law in support of its motion for summary judgment:

## I.      PRELIMINARY STATEMENT

This case has no business going to trial.  From the outset of this litigation, Plaintiff Lisa Cooper ("Cooper") has attempted to get by on fly-by-night pleading and bare bones discovery. First, she threw a kitchen-sink pleading at Smithfield, alleging a variety of claims that were either legally or factually insufficient to merit discovery.   Next, she ignored the Court's instructions to re-plead her only surviving claim without reference to the bounty of allegations relating to her dismissed claims, causing the Court to strike them from her pleading.  She then tried to evade dismissal of her sexual harassment claim by loading it up with allegations she never brought before the EEOC and which were beyond the Court's jurisdiction.  It was only on her fourth try that Plaintiff articulated a sexual harassment claim within the Court's jurisdiction and that passed muster under Rule 12(b)(6).

Things have gone no better for Cooper in discovery.  She has categorically failed to develop an evidentiary record that would allow her to materially dispute the undisputed facts warranting summary judgment in Smithfield's favor.   Cooper elected not to serve Smithfield with written discovery requests.   She identified no corroborating witnesses besides one she intentionally omitted from her initial disclosures and responses to Smithfield's discovery

---

[1] Plaintiff's Fourth Amended Complaint incorrectly identifies Defendant as "The Smithfield Packing Company, Inc."  On April 28, 2014, Defendant, The Smithfield Packing Company, Incorporated, merged with Farmland Foods, Inc.  The name of the merged corporation, which is now reflected in the initial paragraph, is "Smithfield Farmland Corp."

requests because she "didn't feel the need to put it down there." (Cooper Depo., p. 220, line 15, Appx. G). And she provided rambling and frequently incoherent deposition testimony in which she begrudgingly admitted to being aware of Smithfield's anti-harassment policies and confirmed she never told anyone in Company management that she believed she was being harassed until the day before she voluntarily resigned. Her reason for not reporting earlier? Her alleged harasser threatened her life, an allegation this Court has already ruled it has no jurisdiction to consider. *See* Order on Motion to Dismiss (No. 33). Despite knowing this, Cooper could come up with no other excuse.

In short, Cooper has totally neglected to develop an evidentiary record to support the allegations in her pleading. And what little record there is shows that Cooper was not subjected to severe and pervasive harassment, that her alleged harasser is not a supervisor within the meaning of Title VII and that even if he was, Smithfield unquestionably had effective policies against sexual harassment of which Cooper utterly failed to avail herself during her employment. The evidence adduced plainly suggests this case should not see the inside of a courtroom. For all of the reasons set forth below, the Court should grant Smithfield's Motion for Summary Judgment and dismiss this action, once and for all.

## II.  STATEMENT OF MATERIAL FACTS

As required by Local Civil Rule 56.1(a)(1), Smithfield has filed a separate, numbered statement of the undisputed material facts in support its motion for summary judgment, and incorporates it fully by reference in this memorandum.

## III.  APPLICABLE LEGAL STANDARDS

Rule 56(c) of the Federal Rules of Civil Procedure permits the entry of summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the

moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The party seeking summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. Once the moving party has met its burden, the opposing party must demonstrate that such a fact issue does indeed exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). But the opposing party may not rest upon mere allegations or denials, and a "mere scintilla of evidence" is insufficient to overcome summary judgment. *Liberty Lobby* at 249-50. Moreover, when the movant supports its motion with affidavits, the opposing party may not rest upon the mere allegations or denials of their pleading. Rather, the opposing party must set forth specific facts, supported by affidavits or as otherwise appropriate under Rule 56, to show that a genuine issue exists for trial. Fed. R. Civ. P. 56 (e). Summary judgment is appropriate against a party who fails to make a showing sufficient to establish any one of the essential elements of the party's claim on which he will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322-23.

## IV.  ARGUMENT

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). Since the working environment is one of the "terms, conditions, or privileges" of employment, Title VII provides a cause of action in favor of individuals who are forced to work in a hostile environment. *Hartsell v. Duplex Prods., Inc.*, 123 F.3d 766, 772 (4th Cir. 1997) (citing *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64-67 (1986)). But Title VII does not create a "general civility code" in the workplace. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998). (quotation omitted). Rather, a viable cause of action exists only ""[w]hen the workplace is permeated with discriminatory [sex-based]

intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Ocheltree v. Scollon Productions, Inc*., 335 F.3d 325, 331 (4th Cir. 2003) (quoting *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21 (1993)).

To establish a *prima facie* case of sexual harassment based on a hostile work environment theory, Cooper must prove that: (1) she was harassed because of her sex; (2) the harassment was unwelcome; (3) the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) some reasonable basis exists for imputing liability to the Company. *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998). Cooper has failed to establish a triable case on several of these fundamental elements.

## A. Conduct Not Based on Cooper's Gender Should Not Be Considered.

As a threshold matter, many of Cooper's allegations are legally irrelevant and do not support her claim. Any gender-based hostile work environment claim requires proof that the allegedly actionable misconduct was in fact based on the plaintiff's gender. "An insulting or demeaning remark does not create a federal cause of action for sexual harassment merely because the 'victim' of the remark happens to belong to a class protected by Title VII." *Lacy v. AMTRAK*, 2000 U.S. App. LEXIS 2933 (4th Cir. 2000) (quoting *Hartsell v. Duplex Prods., Inc*., 123 F.3d 766, 772 (4th Cir. 1997)). Rather, a plaintiff must prove that "but for the fact of her sex, she would not have been the object of harassment." *Hartsell*, 123 F.3d at 772; *see also Murray v. City of Winston-Salem*, 203 F. Supp. 2d 493, 499 (M.D.N.C. 2002). Plaintiff's evidence "must consist of more than speculation, circumstantial evidence, and 'conclusory' or 'general' statements - the plaintiff's evidence must prove a direct or inferential connection between the plaintiff's allegations and her [gender] supported by specific evidence." *Cepada v. Bd. of Educ. of Balt. Cty*., 974 F. Supp. 2d 772, 784 (D. Md. 2013) (quotation omitted). Conduct

that is directed at both male and female employees is not "based on gender," and should not be considered in the Court's analysis of whether Plaintiff's claim can survive summary judgment. *See e.g., Murray*, 203 F. Supp. 2d at 499.

Numerous allegations advanced by Cooper simply do not involve gender-based conduct and therefore have no bearing on her claim. For instance:

- Cooper maintains that Lowery would "verbally cuss me out," refer to her and other employees (both male and female) as "bitches" and "stupid fucks," and would chastise employees because they "got all those white people [Smithfield management] up here looking at his ass." (Cooper Depo., pp. 222-226, Appx. G). According to Plaintiff, Lowery "makes it harder for us to work, physically do the job." (Cooper Depo., pp. 208, 226-27, Appx. G). But, Lowery's purported conduct was not directed at Cooper, or even to other female employees. Rather, Cooper acknowledged that Lowery's comments were directed at all of the supervisors, both male and female alike. (Id.). His comments therefore cannot support her claim. *See e.g., Cronin v. S.C. Dep't of Corr.*, 2013 U.S. Dist. LEXIS 134768 (D.S.C. Sept. 20, 2013) (finding that evidence did not support a finding that the alleged harassment was motivated by plaintiff's gender since conduct described was directed towards both male and female employees and generally detrimental to the professional environment for all SIU employees, regardless of gender).

- Cooper alleges that Lowery would stare at her while she was on the Case Ready production floor. (Cooper Depo., pp. 221-222, Appx. G). Cooper presented no evidence to establish that Lowery's alleged staring was based on her gender. Regardless, his conduct in this regard simply is not actionable. *See e.g., Morse v. Giant Food, Inc.*, 2005 U.S. Dist. LEXIS 567, 24-25 (D. Md. Jan. 14, 2005) (finding that alleged harassing conduct that included stares and "dirty looks" from supervisor "simply do not rise to the 'very high' level required for establishing . . . a hostile work environment"); *Curry v. Md. Corr. Institution-Jessup*, 2007 U.S. Dist. LEXIS 69112, 26-27 (D. Md. Sept. 17, 2007) (same).

- Cooper claims that Lowery determined when she could take vacation, and tried to take vacation on the same day as her. (Cooper Depo., pp. 230-231, Appx. G). Cooper offered no evidence (or even context) to suggest that any such conduct was based on her sex or was otherwise contrary to the ordinary course of business. *See e.g., Graham v. Sears*, 2010 U.S. Dist. LEXIS 26384, 35-36 (D.S.C. Feb. 1, 2010) (noting that there was no evidence to indicate that supervisor's failure to approve leave was because of his sex); *Lesicko v. ConocoPhillips Pipe Line Co.*, 2009 U.S. Dist. LEXIS 8364 (S.D. Ill. Feb. 5, 2009) (finding that denial of vacation requests was neither based on her sex nor sufficiently severe and pervasive).

- Cooper alleged that, at the end of their shift, Lowery would leave the facility and go with her to the supervisors' parking lot and ask her "let me go with you." (Cooper

Depo., p. 235, Appx. G). Cooper claimed that she feared for her safety as a result of the encounters, but could not present any testimonial context that would tend to show that Lowery's conduct was in any way sexual in nature or otherwise based on her gender. (Id.).

The discovery record contains no evidence suggesting that any of the conduct described above would not have occurred "but for" Cooper's gender. In the absence of such evidence, the Court cannot consider these allegations in its analysis of whether Cooper's claim survives summary judgment. *See e.g., Patterson v. County of Fairfax*, 2000 U.S. App. LEXIS 11009 (4th Cir. 2000) (considering only incidents based on plaintiff's protected status (race or sex) in examining the validity of plaintiff's harassment claims); *see also Murray v. City of Winston-Salem*, 203 F. Supp. 2d 493, 499 (M.D.N.C. 2002) (same).

**B.** **Cooper Failed to Establish That She Was Subjected to "Severe and Pervasive" Harassment.**

Cooper's allegations that can reasonably be said to be based on her gender nevertheless fail to rise to the level of "severe and pervasive" mistreatment required to survive summary judgment. This fundamental element "tests the mettle" of most hostile work environment claims; Title VII only proscribes behavior that is so objectionably offensive as to alter the conditions of the victim's employment. *See Banks v. San-J In'l*, No. Civ.A. 3:00CV184, 2001 WL 34056053, at *3 (E.D. Va. Jan. 18, 2001) (quoting *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 583 (11th Cir. 2000), abrogated on other grounds as recognized by *Crawford v. Carroll*, 529 F.3d 961, 974 (11th Cir. 2008)). In order for her claim to be actionable, Cooper must show that the workplace was "*permeated* with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (emphasis added). Even when viewed in a light most favorable to Cooper, the record does not come close to this threshold.

In their entirety, Cooper's remaining record allegations include the following:

- Cooper alleges that, in 2007, Lowery told her that "he wanted to sleep with [Cooper], because he said he slept with numerous amount of peoples in the room." (Cooper Depo., p. 209, lines 4-8, Appx. G). Cooper could not recall the specific date on which Lowery made this comment and could not identify any individual who heard the comment. The fact that the comment was made a full four years before Cooper's initial complaint to the Company is telling of the (lack of) impact it had on her working conditions.

- Cooper alleges that, in 2007, and continuing through her remaining employment, Lowery would stand behind her while she was on the production line and brush up against her with his "front part" while giving her work-related instructions. (Cooper Depo. pp. 209-220, Appx. G). Significantly, Cooper admitted that she did not realize or pay any attention to what Lowery was allegedly doing until a co-worker, Alfreida Davis[2], told her that it didn't seem right. (Cooper Depo., pp. 214-16, Appx. G). She also failed to specify how many times this happened.

- Cooper alleged that, in 2009 and 2010, Lowery told her that he wanted to sleep with her and wanted to be with her. According to Cooper, Lowery had a problem with the fact that she was married to a white man, and told her that "he can do things to me that my husband can't do." (Cooper Depo., pp. 228-229, 232, lines 6-24, Appx. G). Curiously, Cooper and Lowery did not even work the same shift for the majority of 2009 and 2010, when these comments were allegedly made. (Cust. Aff., Exhs. 5,6, Appx. N).

- Cooper alleged that Lowery threatened to kill her. (Cooper Depo., p. 197, lines 4-5, Appx. G). When pressed about the allegation, however, Cooper admitted that Lowery did not actually say he was going to kill her. Rather, Lowery said "I have friends in high places," while holding his hands up in the air, which she interpreted as a threat to her life. (Cooper Depo., p. 198, lines 6-10, Appx. G).[3]

- Cooper claimed that, a short time before she resigned, Lowery asked her to do inventory on a Sunday. Cooper stated that, while she was seated and doing paperwork, Lowery walked up behind her and grabbed her coat. According to

---

[2] Cooper did not identify Davis in either her initial disclosures or her discovery responses as a witness with knowledge about the facts of the case. When questioned about this at her deposition, Cooper cavalierly responded she omitted Davis from her discovery submissions because she didn't feel the need to identify Davis. (Cooper Depo., p. 218-220, Appx. G). She also failed to list Davis as a potential witness when she finally complained to Smithfield's Human Resources Manager on July 18, 2011. (Pope Aff., ¶¶ 10, 14, Exh. 5, Appx. M). In any event, Cooper acknowledged that approximately 12 other employees would have been working near her at any given time when the purported incidents occurred. (Cooper Depo. p. 212, lines 10-12, Appx. G). Yet, she failed to identify a single employee who she claims witnessed the events in question.

[3] These allegations cannot be considered by the Court: it struck them from Plaintiff's Third Amended Complaint as being outside of its subject matter jurisdiction since Plaintiff failed to include them in her EEOC charge. *See* Order on Motion to Dismiss (Docket No. 33).

- Cooper, she stood up and immediately pushed him off. When she did, Cooper fell and suffered a cut on her rear. (Cooper Depo., pp. 199–203, Appx. G).

- Cooper alleged that, on or about July 15, 2011, Lowery came into the office where Cooper, Sykoria Campbell, Elijah Locklear, Monica Williams, and Brandon Moore were present. According to Cooper, Lowery began talking to her "like chastising a child." Lowery then, in front of the other employees, told her he loved her, asked her to go to the store for him, asked if she would ride to Wal-Mart with him, asked her to give him a kiss, and then said "you know I love you, don't you?" (Cooper Depo., pp. 182-185, Appx. G). According to Cooper, this was the incident that prompted her to complain about Lowery to Smithfield management. (Cooper Depo., p. 181, lines 5-13, Appx. G).

For his part, Lowery denies all of Cooper's allegations against him. (Lowery Depo., pp. 59-61, 72-77, 79, 92, 95, Appx. J). But even if all of Cooper's allegations were taken as true and viewed in the aggregate, they simply do not amount to severe and pervasive sexual harassment. The Fourth Circuit and its district courts have adopted a particularly high burden to satisfy this element and the evidence in this case does not even come close to the evidence in other cases in this Circuit that were dismissed for failure to establish severe and pervasive harassment. For example:

- ***EEOC v. Bud Foods, LLC***, 2006 U.S. Dist. LEXIS 54972 (W.D.N.C. Aug. 7, 2006) (evidence that manager said to plaintiff "come here, let's talk about sex;" made unspecified comment about her rear end; told her "the last time I had a girl your size, she wore the hair off of my dick"; looked at plaintiff's rear end and said "mmm, mmm, mmm"; told plaintiff "I can't fuck you real good because my dick is like this size [indicating with fingers], but I can eat your pussy," and suggested to plaintiff "I've got the power and the money to do what I want to do to who I want to do it to," not sufficiently severe and pervasive under Title VII).

- ***Shaver v. Dixie Trucking Co., Inc***., 1999 U.S. App. LEXIS 9862 (4th Cir. May 21, 1999) (supervisor placing his hand on plaintiff's knee during a job interview, rubbing plaintiff's back and shoulders and putting his arm around plaintiff several times did not amount to severe or pervasive conduct).

- ***Hopkins v. Baltimore Gas & Elec. Co***., 77 F.3d 745, 747-48, 753-54 (4th Cir. 1996) (supervisor's alleged harassment of employee not sufficiently severe or pervasive to create objectively hostile work environment; supervisor attempted to kiss plaintiff in the receiving line at plaintiff's wedding; positioned a magnifying glass over plaintiff's crotch and asked, "Where is it?"; pretended to lock the door to the bathroom and said "Ah, alone at last" to plaintiff; regularly commented on plaintiff's appearance by

saying, "you look nice today" or "you have a really pretty shirt on;" and stating during a group conversation that in order to survive with burning fuel on the surface of the water he would "find a dead man and cut off his penis and breathe through that").

- ***Murray v. City of Winston-Salem, North Carolina***, 203 F. Supp. 2d 493, 498-99 (M.D.N.C. 2002) (no hostile work environment where supervisor yelled at plaintiff during meetings and had an intimidating management style, gave preferential treatment to an alleged paramour, made comments about his past sexual encounters and rotated his pelvis, kissed paramour in front of plaintiff on two occasions, put his arm around plaintiff after she became upset in a meeting, made a comment about how plaintiff looked in jeans, touched plaintiff's thigh twice with his thumb during crowded meetings and made "ummm" noises and stared at plaintiff as she walked by him).

- ***Banks v. San-J Int'l***, No. Civ.A. 3:00CV184, 2001 WL 34056053, at *3 (E.D. Va. Jan. 18, 2001) (comments by purported harasser that plaintiff smelled good and that he liked her perfume; that he would like to smell her without her perfume; that "White women don't have good thinking, they wrinkle under their eyes quickly, you have pretty skin;" that "I only come to see you; you make me happy;" and that "[y]ou are so beautiful; I want you to be my wife for one week," plus an incident where he took a pen from plaintiff's breast pocket and pressed it against her breast as he slowly withdrew it from her pocket while moving his head and smiling, not sufficiently severe and pervasive).

Many other federal appellate courts have rejected sexual-harassment claims based on conduct that is as serious (or more serious) than the conduct at issue in this case. Examples of such cases are legion. *See e.g., Shepherd v. Comptroller of Public Accounts of Texas*, 168 F.3d 871, 872-75 (5th Cir. 1999) (comment to plaintiff that "your elbows are the same color as your nipples," another comment that plaintiff had big thighs, touching plaintiff's arm, and attempts to look down the plaintiff's dress, insufficient to support hostile-environment claim); *Mendoza v. Borden, Inc.*, 195 F.3d 1238 (11th Cir. 1999) (finding alleged harassment "falls well short of the level of either severe or pervasive conduct sufficient to alter [the plaintiff's] terms or conditions of employment" where plaintiff presented evidence of supervisor telling plaintiff, "I'm getting fired up;" rubbed his hip against plaintiff's hip while touching her shoulder and smiling; twice made a sniffing sound while looking at plaintiff's groin area and once sniffed without looking at

her groin; and constantly followed and stared at plaintiff in a "very obvious fashion"); *Quinn v. Green Tree Credit Corp*., 159 F.3d 759, 768 (2nd Cir.1998) (statement that plaintiff had the "sleekest ass" in office plus single incident of "deliberately" touching plaintiff's "breasts with some papers that he was holding in his hand" insufficient to alter the terms or conditions of the plaintiff's employment); *Adusumilli v. City of Chicago*, 164 F.3d 353, 357 (7th Cir.1998) (no hostile work environment where co-employees teased plaintiff, made sexual jokes aimed at her, asked her what "putting one rubber band on top and another on the bottom means," commented about her low neck tops, repeatedly stared at her breasts, and touched her arm, fingers or buttocks on four different occasions); *Weiss v. Coca-Cola Bottling Co. of Chicago*, 990 F.2d 333, 337 (7th Cir.1993) (no actionable harassment claim where supervisor repeatedly asked plaintiff about her personal life, told her how beautiful she was, asked her on dates, called her a dumb blonde, put his hand on her shoulder at least six times, placed "I love you" signs in her work area, and tried to kiss her once at a bar and twice at work).

Even taking all of Cooper's allegations to be true, the record evidence falls well short in comparison to the scores of cases cited above, all of which were dismissed for failure to show each of the complaining plaintiffs were subjected to workplace misconduct that was severe and pervasive. Cooper's sexual harassment allegations (or lack thereof) should meet a similar fate.

The character and scope of the alleged misconduct is not the only aspect of whether a plaintiff has alleged sufficiently severe and pervasive harassment. Cooper must also present evidence establishing that the alleged harassment <u>actually interfered with or altered her conditions of employment</u>. *See e.g., Harris v. Forklift Sys.*, 510 U.S. 17, 25 (U.S. 1993) ("[T]he test is not whether work has been impaired, but whether working conditions have been discriminatorily altered"); *Banks v. San-J Int'l*, No. Civ.A. 3:00CV184, 2001 WL 34056053, at

*3 (E.D. Va. Jan. 18, 2001) (dismissing sexual harassment claim, in part, since plaintiff presented no evidence to explain how the purported harasser's statements or actions affected her ability to work); *Dearth v. Collins*, 2005 U.S. Dist. LEXIS 47604 (S.D. Ga. Mar. 17, 2005) (dismissing hostile work environment claim where "[p]laintiff's allegations may demonstrate a hostile and abusive environment, but plaintiff presents no evidence that [the harasser's] conduct interfered with or altered her job duties"). The record in this case is utterly devoid of this type of evidence.

Assuming Cooper's allegations as true, Lowery began harassing her in 2007, over four years before her resignation in July of 2011. Thus, she continued her employment for nearly four years after the harassment supposedly began. But Cooper offered no evidence whatsoever suggesting she suffered any performance shortcomings as a result of Lowery's conduct. There is no testimony or evidence that Cooper incurred an inordinate number of absences, or frequently sought to leave work early in order to avoid interaction with Lowery. There is no testimony or evidence that Cooper became an ineffective supervisor, or that her authority was undermined in any way, as a result of Lowery's purported mistreatment or her co-workers' perception of it. Cooper likewise fails to allege she suffered any discipline, loss of pay, loss of benefits, or loss of authority or status. And, while Cooper claimed that her employment ended via constructive discharge, that claim was summarily dismissed by this Court at the pleading stage, so she can no longer rely on allegations of constructive discharge to support her hostile work environment claim.

In short, the evidentiary record does not establish that Cooper was subjected to conduct that was sufficiently severe or pervasive, as a matter of law, to alter the terms or conditions of

her employment.  Since Cooper cannot establish a *prima facie* case of sexual harassment, Smithfield is entitled to summary judgment.

**C.**     **Cooper Failed to Establish a Reasonable Basis for Imputing Liability to the Company.**

Even if Cooper could prove that she was subjected to sufficiently severe and pervasive, gender-based harassment that altered the terms of her employment – as discussed above, she fails on all counts – Cooper's claim should be dismissed for the additional reason that she failed to satisfy her *prima facie* burden of establishing a basis for imputing liability to Smithfield.  An employer's liability for harassment under Title VII depends on the employment status of the harasser.  "If the harasser is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions." *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439 (2013).  Different rules apply if the harasser is the victim's supervisor. As the Supreme Court explained:

> [if] the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable. But if no tangible employment action is taken, the employer may escape liability by establishing an affirmative defense, that (1) the employer exercised reasonable care to prevent and correct any harassing behavior, and (2) that the plaintiff unreasonable failed to take advantage of the preventative or corrective opportunities that the employer provided.

*Id*.  Ultimately, it does not matter which standard is applied in this case, because Cooper has failed to present sufficient record evidence to impose liability on Smithfield under either approach.

**1.**     **Lowery is Not a Supervisor for the Purposes of Title VII.**

Cooper alleged in her pleading that Lowery was her supervisor for the purposes of imposing liability under Title VII.  Aside from her complaint allegations, however, Cooper has utterly failed to advance <u>any</u> record facts to support this allegation.

To prove Lowery was a supervisor, Cooper must show that Smithfield authorized Lowery "to take tangible employment actions against [her], i.e., to effect a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Vance*, 133 S. Ct. at 2443. Significantly, an employer's colloquial use of the term "supervisor" is not controlling for purposes of Title VII. *Id*. at 2444-46 (observing that "the term 'supervisor' has varying meanings both in colloquial usage and in the law" and for that reason a court cannot rely on the term's general usage for determining who is a supervisor under Title VII); *McKinnish v. Donahoe*, 40 F. Supp. 3d 689, 695 (W.D.N.C. 2014) (observing that while a co-employee may have been the plaintiff's "'supervisor' in the colloquial sense of the word, [he] did not possess the authority that would make him a supervisor for purposes of Title VII").

As well, the ability to influence superiors, or to direct another employee's daily tasks, is not enough to create supervisory status. *Vance*, 133 S. Ct. at 2448. *See also McKinnish*, 40 F. Supp. 3d at 696-697 (noting that plaintiff's argument that vicarious liability should attach based on the ability to control an employee's hours or assignments "would unnecessarily reintroduce the subjectivity *Vance* intended to eliminate and ensnare untold numbers of low-level employees who, despite being given some discretion, merely schedule and direct other employees' daily activities"). For these reasons, the question of supervisor status, even when contested, "can very often be resolved as a matter of law before trial," *Vance*, 133 S. Ct. at 2450.

There is <u>zero</u> evidence in the record to establish that Lowery possessed the authority required to be deemed a Title VII supervisor. It is undisputed that Lowery could not terminate an employee, or even issue discipline by himself – that authority rested solely with Smithfield's human resources personnel. (Russ Depo., pp. 25-26, Appx. K) (Lowery Depo., pp. 45, 50, 52,

87, Appx. J). Cooper offered nothing during discovery to establish that Lowery played any role in matters relating to promotion, reassignment with significantly different responsibilities, or any decision causing a significant change in benefits. And even assuming that Lowery was authorized to make recommendations or evaluations on these matters concerning subordinates, Cooper adduced no evidence that he made evaluations or recommendations for any specific tangible employment action affecting her employment, let alone that any decision-maker at Smithfield accorded his recommendations any substantial weight. *See e.g., King v. N.C. Dep't of Pub. Safety, Div. of Adult. Corr.*, 2014 U.S. Dist. LEXIS 2005, 39-40 (E.D.N.C. Jan. 8, 2014). Simply put, the record does not remotely establish that Cooper's alleged harasser (Lowery) was a supervisor within the meaning of Title VII.

## 2. Cooper Cannot Establish That Smithfield Is Liable for Co-worker Harassment Under a Negligence Standard.

Given the total lack of record evidence establishing that Lowery is a Title VII supervisor, Cooper can only impute his alleged misconduct to Smithfield by proving the Company "was negligent in controlling working conditions." *Vance,* 133 S. Ct. at 2439. An employer is negligent if it knew or should have known about the harassment and failed to take effective action to stop it. *Ocheltree v. Scollon Prods., Inc*., 335 F.3d 325, 334 (4th Cir. 2003); *see also Mikels v. City of Durham,* 183 F.3d 323, 332 (4th Cir. 1999) ("[E]mployers are liable only for their own negligence in failing, after actual or constructive knowledge, to take prompt and adequate action to stop [the harassment]"). "Once the employer has notice, then it must respond with remedial action reasonably calculated to end the harassment." *E.E.O.C. v. Xerxes Corp*., 639 F.3d 658, 669 (4th Cir. 2011) (quoting *E.E.O.C. v. Sunbelt Rentals, Inc*., 521 F.3d 306, 319 (4th Cir. 2008)). Cooper cannot meet this burden.

**There Is No Record Evidence Smithfield Knew or Should Have Known of Lowery's Alleged Harassment Until July 18, 2011, the Day Before Cooper Resigned.**

Cooper concedes, and the undisputed record evidence establishes, that her first (and only) complaint to Smithfield management regarding Lowery's alleged harassment occurred on July 18, 2011, just one day before she voluntarily resigned her employment. (Pl. Inter. Resp., 7, Appx. B); (Pl. Suppl. Inter. Resp., 7, Appx. D); (Pope Aff., ¶¶ 7, 16, Appx. M); (Cooper Depo., pp. 186-187, Appx. G). No record evidence even suggests Smithfield had actual knowledge of Lowery's alleged harassment prior to that date. Thus, any allegation by Cooper that Smithfield was aware of Lowery's alleged harassment before her July 18, 2011 report is totally implausible. Assuming Cooper's allegations to be true, the record makes clear that **she did not report her concerns to the Company for over four years**. Her extraordinary delay is patently unreasonable and plainly inconsistent with her obligation under Title VII to promptly inform her employer when a problem exists. On this basis, Cooper plainly fails to meet her burden of establishing Smithfield was negligent. Indeed, the opposite is true. If Lowery did, in fact, engage in the conduct alleged (which the Company denies), Cooper's four-year delay in reporting her concerns to the Company is the definition of negligence.

Cooper is equally unable to prove Smithfield *should have* known about Lowery's alleged harassment of Cooper prior to July 18, 2011. In this regard, the record evidence suggests Cooper was more than just negligent. It suggests she <u>actively concealed</u> Lowery's harassment from the Company while it was allegedly going on. On two separate occasions – June 15, 2010, and June 23, 2011 (just weeks before her July 18, 2011 complaint) – Cooper executed Smithfield's Annual Business Conduct Certification forms on which she expressly certified that she: "[did] not know about or suspect any unreported misconduct, illegal activities, fraud, misuse of Smithfield's assets or violations of any other Smithfield policy, including but not limited to its policies

15

regarding . . . sexual harassment and hostile work environment." (Cooper Depo., Exhs. 11, 12, Appx. H)(emphasis added). Any contention by Cooper that Smithfield was constructively aware of Lowery's alleged harassment is profoundly disingenuous in light of her own misrepresentation.

Moreover, Cooper could not identify (let alone produce) a single witness during discovery who could corroborate any of her claims besides Alfreda Davis, whom she intentionally failed to identify in her discovery responses. But Cooper did not claim that Davis ever told anyone besides Cooper what she thought about Lowery. In fact, she suggested the opposite was true: "[Davis] didn't want to have nothing to do with it." (Cooper Depo., pp. 218, ln. 8-9, Appx. G). The lack of corroborating witnesses and evidence is telling. If virtually none of Cooper's co-employees were aware of Lowery's alleged sexual harassment, then certainly there is no reasonable basis upon which to conclude, based on this discovery record, that Smithfield management should have known of it. Cooper has plainly failed to establish that Smithfield knew, or should have known, about Lowery's alleged harassment before she reported it on July 18, 2011.

### b. Upon Learning of Cooper's Allegations, Smithfield Took Prompt and Adequate Remedial Action.

Moreover, the incontrovertible record evidence establishes that once Cooper finally reported Lowery in July of 2011, Smithfield took underlined(immediate) remedial action reasonably calculated to end the alleged harassment. Upon learning of her concerns on July 18, 2011, Smithfield management immediately referred Cooper to Tar Heel's Director of Human Resources, Jaime Pope, who promptly initiated an investigation. (Pope Aff., ¶ 8-12, Appx. M); (Cooper Depo., pp. 186-187, Appx. G). Pope interviewed Cooper and requested that she prepare a written statement of her allegations. (Pope Aff., ¶ 8, Appx. M); (Cooper Depo., pp. 181-182;

Exh. 15, Appx. G). That same day, Pope interviewed each of the witnesses identified by Cooper as having knowledge of the alleged harassment, and requested that they too provide written statements. (Pope Aff., ¶ 11, Appx. M). None of the witnesses corroborated Cooper's allegations. (Id.). That same day, Pope interviewed Lowery, who categorically denied the accusations against him. (Pope Aff., ¶ 12, Appx. M); (Lowery Depo., pp. 59-61, 72-77, 79, 92, 95, Appx. J). And, although Pope was unable to corroborate any of Cooper's allegations, he took remedial action by reviewing the Company's Harassment Policies with Lowery to ensure that he understood the Company's expectations for compliance. (Pope Aff., ¶ 12; Exh. 4, Appx. M).

By any measure, these facts prove that Smithfield's response to Cooper's concerns was both swift and wholly consistent with its obligations under Title VII. The adequacy of Smithfield's response is further bolstered, however, by the indisputable fact that Cooper did not experience any further (alleged) harassment following her complaint. Indeed, she couldn't since Pope took immediate steps to ensure Cooper had no further workplace interaction with Lowery pending the completion of his investigation. Upon learning of Cooper's concerns on the morning of July 18, 2011, Pope provided Cooper with paid administrative leave for the remainder of the day. (Pope Aff. ¶ 10, Appx. M) (Cooper Depo., p. 193, lines 6-10, Appx. G). The following day, Pope told Cooper he could transfer Lowery to the first shift pending the completion of his investigation in further effort to shield Cooper from any workplace interactions with Lowery. (Pope Aff. ¶ 14, Appx. M) (Cooper Depo., pp. 194-197, Appx. G). The fact that Cooper refused Pope's offer, and instead chose to resign, does not render the Company's remedial efforts ineffective. To the contrary, the fact that Cooper had no further workplace interactions with Lowery, and therefore suffered no further (alleged) harassment, proves as a

matter of law that the Company's response <u>was</u> effective. *See e.g., King v. N.C. Dep't of Pub. Safety, Div. of Adult. Corr.*, 2014 U.S. Dist. LEXIS 2005, 44-45, n. 12 (E.D.N.C. Jan. 8, 2014) (finding no evidence of negligence where employer assigned alleged harasser to a different shift from plaintiff, who experienced no further sexual harassment thereafter).

**3.** **Even Assuming Arguendo That Lowery Is a Title VII Supervisor, Cooper Failed to Establish That Smithfield Is Vicariously Liable for His Alleged Misconduct.**

The record evidence yields the same conclusion even if Lowery is deemed to be a statutory supervisor. The affirmative defense of *Faragher* and *Ellerth* permits an employer to avoid strict liability for a supervisor's sexual harassment of an employee if no adverse tangible employment action was taken. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 807-08 (1998); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 764-65 (1998). If entitled to raise the affirmative defense, the employer must establish two elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise. *Id.* Smithfield easily satisfies this burden based on the undisputed record evidence.

**a.** **Smithfield Is Entitled to Raise the Defense Since Cooper Suffered No Tangible Employment Action.**

Cooper failed to adduce any evidence that she suffered any form of tangible employment action that would serve to preclude Smithfield from raising the affirmative defense. To this end, the Supreme Court has made clear that only a tangible employment action that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits" will serve to bar the defense. *Ellerth*, 524 U.S. at 761. Cooper suffered no discipline,

no loss of pay, no loss of benefits, and no loss of authority or status.  Moreover, Cooper's constructive discharge claim was dismissed by the Court at the pleading stage, so she cannot rely on her resignation as the "tangible employment action" taken against her.  And, to the extent she attempts to do so, the Supreme Court has acknowledged that a constructive discharge is only a tangible employment action precluding an employer from relying on the *Ellerth/Faragher* affirmative defense when it is precipitated by an "official act." *Pa. State Police v. Suders*, 542 U.S. 129 (U.S. 2004).  No such action has been alleged. Accordingly, Cooper has not presented any action that rises to the level of "tangible employment action" that would impute strict liability to Smithfield.

> **b.** **Smithfield Exercised Reasonable Care to Prevent and Promptly Correct Harassing Behavior.**

Ample evidence demonstrates that Smithfield exercised reasonable care to prevent and promptly correct harassing behavior.  In the Fourth Circuit, dissemination of "an effective anti-harassment policy provides compelling proof" that an employer has exercised reasonable care to prevent and correct sexual harassment. *See e.g., Lissau v. Southern Food Serv., Inc.*, 159 F.3d 177, 182 (4th Cir. 1998); *Reese v. Meritor Auto., Inc.*, 5 Fed. Appx. 239, 243 (4th Cir. 2001). The remedial harassment policies implemented by Smithfield are unquestionably effective and plainly satisfy the first prong of the affirmative defense.

Smithfield has expressly proscribed unlawful sexual harassment in both its Anti-Harassment Policy and in its Code of Business Conduct ("COBC").  (Cooper Depo., Exhs. 10, 13).  These documents make clear their purpose to provide Smithfield employees with a work environment free of threatening, intimidating or harassing conduct, including sexual harassment.  (Id.).  They also provide clear examples of prohibited misconduct, including detailed descriptions of the type of conduct that constitutes sexual harassment.  These documents are

distributed to all employees and posted in various places throughout the Tar Heel facility, and the Company provides its managers and hourly employees with training and education to ensure that its expectations with respect to sexual and other prohibited forms of harassment are well-known. (Pope Aff., ¶ 5, Appx. M). They also contain clear instructions on how, and to whom, employees may raise concerns relating to harassment, and note that concerns can be raised to various levels of management, the Company's Human Resources department, or its legal department without fear of retribution or retaliation. (Cooper Depo., Exhs. 10, 13, Appx. H). Additionally, in the event an employee feels uncomfortable voicing concerns personally, or to a specific individual, Smithfield provides a toll-free hotline for employees to make anonymous reports of harassment. (Cooper Depo., Exh. 10, Appx. H).

The record contains undisputed evidence that Cooper was aware of the Company's policies against harassment. Cooper begrudgingly admitted that she received copies of both the Anti-Harassment Policy and the COBC, that she received training on the COBC, and that she was aware that the Anti-Harassment Policy contained instructions on how to report misconduct. (Cooper Depo., pp. 112-116, Appx. G). Significantly, Cooper twice acknowledged in writing that she read and understood the COBC. (Cooper Depo., Exhs. 11, 12, Appx. H). She also acknowledged on the intake form she provided to the EEOC upon filing the charge of discrimination underlying this case that the Company had "a policy regarding harassment" and that the policy was "well publicized." (Cooper Depo., Exh. 14, p. 7, Appx. H). Finally, Cooper produced a copy of the COBC in response to Smithfield's requests for production during discovery. (Cooper Depo., p. 110, Appx. G).

The record also establishes that the Company's policies were effective. The Company has, in the past, taken prompt, remedial action in response to complaints of harassment, including

the termination of employees deemed to have violated the Company's anti-harassment policies. (Pope Aff., ¶5, Appx. M). Perhaps the most obvious proof of the effectiveness of the Company's policies lies in Cooper's own experiences with them. In this respect, the record contains evidence of no fewer than three occasions when Cooper has availed herself of the Company's reporting processes in order to obtain relief from harassment and other treatment she perceived to be unfair.

Specifically, Plaintiff admitted that, while she was employed in the Company's shipping department (long before the events relevant to this action occurred), she complained to then-Plant Manager Larry Johnson ("Johnson") that her then-supervisor, Dan Perdue ("Perdue"), called her into his office on a number of occasions, closed the shades, and attempted to touch her inappropriately. (Cooper Depo., pp. 89 – 94, Appx. G). Johnson fired Perdue following an investigation of the incident. (Cooper Depo., p. 94, lines 1-3, Appx. G). On another occasion, Cooper used the Company's reporting procedures to complain to Johnson that <u>she</u> had been unjustly terminated. (Cooper Depo., p. 95, lines 5-12, Appx. G). Johnson reinstated Cooper and allowed her to transfer to a new department in order to "start fresh." (Cooper Depo., p. 95, lines 9-12, Appx. G). Finally, as discussed infra at pp. 17-18, the record evidence demonstrates that the Company responded promptly and effectively to Cooper's July 18, 2011 complaint of alleged harassment by Lowery on July 18, 2011. (Pope Aff., ¶¶ 7-15, Appx. M).

These facts unquestionably prove that Smithfield exercised reasonable care to prevent and promptly correct harassing behavior for the purpose of satisfying its burden with respect to the first prong of the affirmative defense.

###	c.	**Cooper Unreasonably Failed to Take Advantage of the Preventative or Corrective Opportunities Provided by Smithfield.**

The undisputed facts also satisfy the second prong of Smithfield's affirmative defense, as it is beyond clear that Cooper unreasonably failed to take advantage of the corrective opportunities afforded her by the Company. "[T]he law against sexual harassment is not self-enforcing and an employer cannot be expected to correct harassment unless the employee makes a concerted effort to inform the employer that a problem exists." *Barrett v. Applied Radiant Energy Corp.*, 240 F.3d 262, 268 (4th Cir. 2001) (quoting *Shaw v. AutoZone, Inc.*, 180 F.3d 806, 813 (7th Cir. 1999)). For this reason, it is well-settled that an employer may satisfy the second element of the *Faragher/Ellerth* defense by showing that the victimized employee unreasonably delayed in reporting incidents of sexual harassment. *See e.g., Helm v. Kansas*, 656 F.3d 1277, 1291 (10th Cir. 2011) (citing *Pinkerton v. Colo. DOT*, 563 F.3d 1052, 1063 (10th Cir. 2009)); *Dayes v. Pace Univ.*, 2000 U.S. Dist. LEXIS 3698 (S.D.N.Y. Mar. 24, 2000) (12-month delay in reporting harassment unreasonable); *Barua v. Credit Lyonnais-U.S. Branches*, 1998 U.S. Dist. LEXIS 20338 (S.D.N.Y. Dec. 30, 1998) (18-month delay to report harassment unreasonable); *Walton v. Johnson & Johnson Servs.*, 347 F.3d 1272, 1291 (11th Cir. Fla. 2003) (finding two and one half months delay in invoking employer's anti-harassment policy unreasonable); *Frazer v. Angelina Coll.*, 67 Fed. Appx. 251 (5th Cir. 2003) (finding employee "unreasonably failed to utilize [employer's] sexual harassment complaint procedure" by avoiding reporting harassment for "roughly a year."); *Thompson v. Naphcare, Inc.*, 117 Fed.Appx. 317, 324 (5th Cir. 2004) ("By waiting almost two months to register her complaints and then resigning almost immediately after [employer's] prompt investigation and remedial actions, [employee] cannot be said to have acted reasonably.").

Throughout these proceedings, Cooper has maintained that Lowery subjected her to harassing conduct beginning in January 2007. (4th Am. Compl., ¶ 9, No. 34) (Cooper Depo., pp. 209-210, Appx. G). As discussed in detail above, however, the undisputed record evidence shows that Cooper neglected to report Lowery's alleged harassment for over four years and even actively concealed any harassment by certifying in 2010 and 2011 that she had no knowledge of any violations of the Company's COBC. Cooper's unjustifiable delay[4] in reporting Lowery's purported conduct, <u>by itself</u>, establishes Smithfield's affirmative defense and requires dismissal of this action.

But additional proof that Cooper unreasonably failed to take advantage of Smithfield's corrective efforts abounds. It is evident in her resignation, which she initiated just one day after her complaint to Pope and while his investigation of her claims was ongoing. Cooper's resignation is nothing short of inexplicable in light of the circumstances leading up to it. By her own admission, Cooper was aware of Smithfield's harassment policies. Indeed, she admitted in her deposition she used them effectively in the past. (Cooper Depo., pp. 89-96, Appx. G).

Moreover, Cooper had at least two separate opportunities to raise her concerns to Smithfield in response to its Annual Business Conduct Certification efforts, (Cooper Depo., Exhs. 11, 12, Appx. G), not to mention the opportunity she had to walk into the Human Resources office and report Lowery every single day she entered the plant. Rather than voice her concerns, however, Cooper concealed them by certifying that she did "not know about or suspect any unreported misconduct, illegal activities, fraud, misuse of Smithfield's assets or

---

[4] At her deposition, Cooper attempted to justify her tardiness by claiming she feared retaliation from Lowery. (Cooper Depo., pp. 161-162, Appx. G). Numerous decisions from within and outside this circuit make clear, however, that Cooper's fear does not excuse her delay. *See e.g., Reese v. Meritor Auto., Inc.*, 5 Fed. Appx. 239, 245 (4th Cir. N.C. 2001) (finding that "inevitable unpleasantness" cannot excuse an employee from taking advantage of [the] employer's complaint procedure); *Barrett v. Applied Radiant Energy Corporation*, 240 F.3d 262 (4th Cir.2001) ("Allowing subjective fears to vitiate an employee's reporting requirement would completely undermine Title VII's basic policy of encouraging forethought by employers and saving action by objecting employees").

violations of any other Smithfield policy, including but not limited to its policies regarding . . . sexual harassment and hostile work environment." (Cooper Depo., Exhs. 11, 12, Appx. G). Her behavior is the antithesis of that required of a Title VII plaintiff seeking to avoid summary dismissal of her claims.

It is only after all of these opportunities came and went, and after supposedly enduring harassment by Lowery for over <u>four</u> years, that Cooper finally complained to Smithfield, on July 18, 2011. (Pl. Inter. Resp., 7, Appx. B); (Pl. Suppl. Inter. Resp., 7, Appx. D); (Pope Aff., ¶¶ 7, 16. Appx. M); (Cooper Depo., pp. 186-187, Appx. G). And when Cooper did finally complain, Smithfield instantly responded. Cooper was immediately directed to Jamie Pope, the highest ranking Human Resources employee at the Tar Heel facility. Pope immediately interviewed her and requested that she prepare a written statement of her concerns. (Pope Aff., ¶ 8, Appx. M); (Cooper Depo., pp. 181-182, Appx. G; Exh. 15, Appx. H). Pope provided Cooper with paid administrative leave which unquestionably served to insulate Cooper from any further (alleged) harassing conduct during the pendency of the investigation. (Cooper Depo., p. 193, lines 6-10, Appx. G) (Pope Aff., ¶ 10, Appx. M).

The following day, Cooper returned to the Tar Heel facility to deliver her written statement to Pope. During the same meeting, she voiced her intention to resign. (Pope Aff., ¶ 14, Appx. M). Pope informed Cooper that he was still investigating her concerns and that he was unaware at that time of the outcome. (Cooper Depo., pp. 194-195, Appx. G) (Pope Aff., ¶ 14, Appx. M). Pope asked Cooper to give him the opportunity to complete the investigation before she resigned. (Cooper Depo., pp. 194-195, Appx. G) (Pope Aff., ¶ 14, Appx. M). Pope told Cooper in no uncertain terms that he would terminate Lowery if he could verify Cooper's concerns. (Pope Aff., ¶ 14, Appx. M). He told her that, even if he couldn't verify her claims, he

would move either or both of them to another department or another facility so she would not need to work with him anymore. (Pope Aff., ¶ 14, Appx. M). He even told Cooper he could transfer Lowery from second shift to first shift pending the completion of the investigation so that Lowery would no longer be supervising her and they would not be in the plant during the same time. (Cooper Depo., pp. 194-197, Appx. G) (Pope Aff., ¶ 14, Appx. M). Cooper rejected each of Pope's suggestions and instead summarily resigned effective the next day. (Id.). Thus, even after reporting Lowery, Cooper failed – indeed, refused – to avail herself of Pope's immediate offer of corrective measures.

Ultimately, the central focus of the *Faragher/Ellerth* defense is accountability. The defense ensures that employers who are accountable for their obligations under Title VII are permitted, subject to a heightened burden, to avoid liability that might otherwise be imputed as a result of the conduct of their agents. Conversely, the defense ensures that employees who are not accountable for their own actions, which might have served to mitigate or even avoid the harms resulting from the offending conduct, are not rewarded. As the Supreme Court stated:

> It would therefore implement clear statutory policy and complement the Government's Title VII enforcement efforts to recognize the employer's affirmative obligation to prevent violations and give credit here to employers who make reasonable efforts to discharge their duty. Indeed, a theory of vicarious liability for misuse of supervisory power would be at odds with the statutory policy if it failed to provide employers with some such incentive . . . If the plaintiff unreasonably failed to avail herself of the employer's preventive or remedial apparatus, she should not recover damages that could have been avoided if she had done so. If the victim could have avoided harm, no liability should be found against the employer who had taken reasonable care, and if damages could reasonably have been mitigated no award against a liable employer should reward a plaintiff for what her own efforts could have avoided.

*Faragher v. City of Boca Raton*, 524 U.S. 775, 806-807 (1998). Cooper's actions in this case are precisely the behavior envisioned by the Supreme Court when it fashioned the affirmative defense set forth in *Faragher/Ellerth*. She should not be permitted to proceed to trial on record

facts that prove that she acted so unreasonably and with such disregard of the Company's remedial and corrective measures.

## V.    CONCLUSION

Cooper has categorically failed to establish that she was subjected to actionable sexual harassment or that there is a basis for imputing such conduct to Smithfield, and the Court can dispose of this case on the undisputed record. For the foregoing reasons, Smithfield respectfully requests that the Court grant its Motion for Summary Judgment and enter an order dismissing Cooper's claims with prejudice and awarding the Company any additional relief the Court deems just and proper.

Respectfully submitted this 6th day of September 2016.

**SMITHFIELD FARMLAND CORP.**

*/s/ Kurt G. Larkin*

Melissa A. Romanzo (NC Bar No. 38422)
HUNTON & WILLIAMS LLP
101 South Tryon Street, Suite 3500
Charlotte, North Carolina 28280
Telephone: (704) 378-4700
Fax: (704) 378-4890
Email: mromanzo@hunton.com

Kurt G. Larkin (VA Bar No. 70730)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8200
Fax: (804) 788-8218
Email: klarkin@hunton.com

Brian C. Ussery (VA Bar No. 88243)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8200
Fax: (804) 788-8218
Email: bussery@hunton.com

*Counsel for Defendant Smithfield Farmland Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of September, 2016, a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Angela Newell Gray, Esq.
7 Corporate Center Court, Suite B
Greensboro, NC 27408
angela@graynewell.com
*Attorney for Plaintiff*

*/s/ Kurt G. Larkin*
Kurt G. Larkin

27120.019023 EMF_US 62019949v8