IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Civil Action No. 7:13-cv-145-F

| | | |
|---|---|---|
| Lisa Cooper, | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
| | ) | |
|     vs. | ) | *Plaintiff's Memorandum in Opposition* |
| | ) | *to Defendant's Motion for Summary* |
| | ) | *Judgment* |
| The Smithfield Packing Company, Inc., | ) | |
|     *Defendant*. | ) | |

COMES NOW the Plaintiff, by and through the undersigned counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1 for the Eastern District of North Carolina, respectfully submitting her Memorandum of Law in Opposition to the Defendant's Motion for Summary Judgment.

This the 27th day of September, 2016.

GRAY NEWELL THOMAS, LLP

BY:    /s/ Angela Gray
       Angela Newell Gray
       7 Corporate Center Court, Suite B
       Greensboro, NC  27408
       Telephone:   (336) 724-0330
       Facsimile:    (336) 458-9359
       Email:        angela@graynewell.com
       *Attorney for Plaintiff*
       NC Bar # 21006

# TABLE OF CONTENTS

I. TABLE OF AUTHORITIES  3

II. SUMMARY OF CASE  4

III. STATEMENT OF MATERIAL FACTS  4

IV. STANDARD OF REVIEW  4

V. ARGUMENT  5

    A. PRIMA FACIE CASE OF SEXUAL HARASSMENT UNDER TITLE VII

        1. Unwelcome Conduct  5

        2. Based on Gender  6

        3. Severe and Pervasive Conduct  7

        4. Imputing Liability to Employer  9

VI. CONCLUSION  14

# TABLE OF AUTHORITIES

**CASES**

*American Casualty Co. v. Nordic Leasing, Inc.,* 42 F.3d 725, 728 (2d Cir.1994)     4

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986)     4

*Brown v. Trustees of Boston Univ.*, 891 F.2d 337, 349 (1st Cir.1989)     6

*Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742 (1998)     9

*Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir.1996)     4

*Faragher v. Boca Raton,* 524 U.S. 775 (1998)     10

*Harris and Forklift Sys., Inc.,* 510 U.S. 17 (1993)     7

*Jackson v. Quanex Corp.*, 191 F.3d 647, 664-65 (6th Cir. 1999)     11

*Meritor Sav. Bank v. Vinson,* 477 U.S. 57 (1986)     5

*Newport News Holdings Corp. v. Virtual City Vision,* 650 F.3d 423, 434 (4th Cir. 2011)     4

*Ocheltree vs. Scollon Productions, Inc.,* 335 F.3d 325 (4th Cir. 2003)     7

*Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998)     7

*Pennsylvania State Police v. Suders,* 542 U.S. 129 (2004)     9

*Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 655 (11th Cir. 1993)     6

*Smith v. First Union Nat'l Bank,* 202 F.3d 234 (4th Cir.2000)     5

*Vance v. Ball State Univ.,*—— U.S. ——, 133 S.Ct. 2434, 2439, 186 L.Ed.2d 565 (2013)     9

**STATUTES**

42 U.S.C. § 2000e-2(a)(1)     5

**OTHER AUTHORITY**

Fed. Rule Civ. Proc. 8(c)     11

Fed. Rule Civ. Proc. 56     4

## SUMMARY OF THE CASE

The Plaintiff initially filed this lawsuit on July 11, 2013 alleging causes of action for Retaliation and Hostile Work Environment Sexual Harassment in violation of Title VII of the Civil Rights Act of 1964, and as amended in 1991, Negligent and Intentional Infliction of Emotional Distress, and Negligent Supervision and Retention. After granting in part the Defendant's Motion to Dismiss this lawsuit under Rule 12(b)(6), the Court ordered dismissal of all Plaintiff's claims except for the claim for Hostile Work Environment Sexual Harassment. The Plaintiff's Fourth Amended Complaint was filed on August 23, 2015, and discovery began in this matter in mid-September, 2015. The Defendant's Motion for Summary Judgment is presently before the court.

## STATEMENT OF THE FACTS

See separate document filed contemporaneously herewith.

## STANDARD OF REVIEW

In reviewing the record at the summary judgment stage, the district court must assess the evidence in "a light most favorable to the nonmoving party" and resolve all ambiguities and "draw all reasonable inferences" in its favor. *American Casualty Co. v. Nordic Leasing, Inc.,* 42 F.3d 725, 728 (2d Cir.1994). Fed. Rule Civ. Pro. 56. Credibility determination, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Anderson vs. Liberty Lobby, Inc*., 477 U.S. 242 (1986).

A genuine question of material fact exists where, after reviewing the record as a whole, a court finds that a reasonable jury could return a verdict for the non-moving party. *Newport News Holdings Corp. v. Virtual City Vision,* 650 F.3d 423, 434 (4th Cir. 2011); *Evans v. Technologies Applications & Serv. Co*., 80 F.3d 954, 959 (4th Cir.1996).

ARGUMENT

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED

Title VII prohibits "an employer" from "discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . .sex." 42 U.S.C. § 2000e-2(a)(1). In order to establish a *prima facie* case of hostile work environment sexual harassment, Plaintiff must show: (1) that she was subjected to unwelcome conduct; (2) the unwelcome conduct was based on sex; (3) it was sufficiently pervasive or severe to alter the conditions of employment and to create a hostile work environment; and (4) some basis exists for imputing liability to the employer. *Smith v. First Union Nat'l Bank,* 202 F.3d 234 (4th Cir.2000).

1. UNWELCOME CONDUCT

"The gravamen of any sexual harassment claim is that the alleged sexual advances were 'unwelcome.'" *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 68, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). In the present case, the plaintiff repeatedly complained to her supervisor, Tommy Lowery, each time he made a sexually explicit comment to her, as well as when he made sexual advances toward her. The record is clear that the plaintiff never wanted, nor encouraged Lowery to engage in such sexually inappropriate conduct. The plaintiff's disdain for Lowery's conduct is corroborated by Monica Williams and Brandon Moore, co-workers who were also supervised by Lowery and who witnessed several acts of sexually inappropriate and harassing conduct by Lowery against the plaintiff. Moreover, the plaintiff's internal complaints to human resources and company officials are supportive evidence that Lowery's conduct was unwelcome.

Based on these facts, the plaintiff has met her burden with regard to this element of sexual harassment.

2.  BASED ON GENDER

"`[D]erogatory remarks indicative of a discriminatory attitude are generally admissible to prove discriminatory treatment.'" *Ross v. Buckeye Cellulose Corp.*, 980 F.2d 648, 655 (11th Cir. 1993) (quoting *Brown v. Trustees of Boston Univ.*, 891 F.2d 337, 349 (1st Cir.1989)).

Contrary to the defendant's assertion, the plaintiff here alleges more than mere insults and demeaning remarks. In fact, the plaintiff has alleged that she was subjected to a sexually hostile work environment by her supervisor "because of" her gender, which included propositioning, touching and requests for sexual favors. The plaintiff's evidence is not based on mere speculation or conclusory statements; rather it is based on first-hand knowledge corroborated by witness accounts.

While Lowery may have been verbally abusive to both male and female employees, it is clear that statements of a sexual nature were only made toward the plaintiff and other female employees. For example, Brandon Moore testified that Lowery asked him about his sexual relationships with the plaintiff. Moore also testifies that Lowery's negative comments about women were made to and about women, and were comments that Lowery did not make toward the male employees. (Appendix A- Cooper Declaration; Appendix B- Moore Declaration; Appendix C- Williams July 18, 2011 written statement).

Lowery concedes that he used the word "bitch" when referring to women in the workplace, and that women heard him use the language in the workplace as well. (Lowery depo. p. 73, line 10- p. 74, line 4).

Based on these facts, the plaintiff has met her burden with regard to this element of sexual harassment.

3.  SEVERE AND PERVASIVE

For an atmosphere of harassment or hostility to be actionable, the offending behavior must be sufficiently severe or pervasive to alter the victim's employment conditions and create an abusive working environment. *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57 (1986). The "severe or pervasive" element of a hostile work environment claim "has both subjective and objective components." *Ocheltree vs. Scollon Productions, Inc.,* 335 F.3d 325 (4th Cir. 2003). First, the plaintiff must show that she "subjectively perceive[d] the environment to be abusive." *Harris and Forklift Sys., Inc.,* 510 U.S. 17 (1993). Next, the plaintiff must show that "a reasonable person in the plaintiff's position" would have found the environment objectively hostile or abusive. *Oncale v. Sundowner Offshore Services, Inc*., 523 U.S. 75 (1998). While the objective test of whether the plaintiff actually found the environment abusive may be readily satisfied in employment discrimination suits, the Supreme Court has acknowledged that the boundaries of what constitutes an objectively discriminatorily hostile work environment is not "a mathematically precise test." *Harris,* 510 U.S. at 22, 114 S.Ct. 367.

The "objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering all the circumstances." *Oncale,* 523 U.S. at 81, 118 S.Ct. 998 (internal quotations and citations omitted). The objective test requires examination of the totality of the circumstances, including "the frequency of the discriminatory [or retaliatory] conduct; its severity; whether it is physically threatening or humiliating, or a mere

offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris,* 510 U.S. at 23, 114 S.Ct. 367.

In the present case, the plaintiff's evidence shows that she was subjected to sexually explicit comments and sexual advances on a regular basis for a period of over three (3) years. Her evidence includes corroboration from at least two (2) witnesses who heard the plaintiff complain that she was offended by Lowery's comments. Furthermore, the plaintiff complained to Lowery himself, pursuant to the employer's anti-harassment policy, about his offensive conduct. She likewise complained to Lowery's supervisors and human resources about Lowery's offensive conduct, again pursuant to the employer's anti-harassment policy.

The plaintiff's evidence further shows that in an effort to escape the conditions that she was being subjected to by Lowery she requested to be transferred to another department or another city. However, Lowery refused to allow her to transfer. When Lowery refused her transfer, the plaintiff then complained to Lynn Dove in Human Resources; however her complaints were dismissed and disregarded. (Appendix A- Cooper Declaration; Lowery depo. p. 77, line 10- p. 78, line 7).

The plaintiff's evidence also shows that she was subjected to a physically threatening environment which ultimately interfered with her ability to work, causing her to feel forced to resign from her position. In fact, the plaintiff was fearful for her very life. Lowery had threatened to kill the plaintiff if her complaints about him caused him to lose his job. This fact is corroborated by the written statement of Monica Williams, who informed defendant company officials in human resources that she heard Lowery make such a statement to the plaintiff after he learned that she had complained about his sexual harassment toward her.

A hostile work environment-constructive discharge claim entails that working conditions are so intolerable that a reasonable person would have felt compelled to resign. *Pennsylvania State Police v. Suders,* 542 U.S. 129 (2004). In the present case, the plaintiff's letter of resignation shows that she felt forced to resign as a result of the intolerable work conditions that she faced because of Lowery's harassment and threat to kill her. (Appendix D- Cooper's July, 2011 Statement). Furthermore, both Williams' written statement and Moore's testimony corroborate the plaintiff's claims of intolerable work conditions. (Appendix B-Moore Declaration; Appendix C- Williams July 18, 2011 written statement).

Pope told the plaintiff he had concluded his investigation of her complaints against Lowery after only one day of investigating, and after failing to talk to all witnesses she had offered to support her claims. Thereafter, the plaintiff felt she could no longer work in such a hostile, unsafe and threatening environment. She was then forced to resign. (Cooper Declaration).

Based on these facts, the plaintiff has met her burden of proof with regard to this element of sexual harassment.

4.  LIABILITY

An employer's liability under Title VII for workplace harassment depends on the status of the harasser. *Vance v. Ball State Univ.,*—— U.S. ——, 133 S.Ct. 2434, 2439, 186 L.Ed.2d 565 (2013). "An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 1998); *Faragher v. Boca Raton,* 524 U.S. 775, (1998).

In the present case, the evidence is clear that Lowery was the plaintiff's supervisor. Not only does the plaintiff allege that Lowery was her supervisor, but also Lowery, as Superintendent, confirms and admits that he was in fact the plaintiff's supervisor. Lowery had the authority to give the plaintiff job assignments, make decisions regarding job transfer, make decisions about her work schedule, evaluate her job performance and provide significant instruction on her job responsibilities. (Appendix A-Cooper Declaration; Lowery depo. p. 61, line 19- p. 62, line 23[1];Lowery depo. p. 61, line 25-62, line 23; Lowery depo. p. 76, line 1-7). Therefore the defendant's argument that Lowery was not the plaintiff's supervisor is totally unsupported by the facts of the case. An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. *Id*.

The Plaintiff suffered a tangible employment action when she was forced to resign due to Lowery's creation of a sexually hostile work environment, as well as his threat to kill her if her complaints caused him to lose his job. In *Ellerth,* the Supreme Court explained that "[a] tangible employment action *constitutes a significant change in employment status,* such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Ellerth,* 524 U.S. at 761, 118 S.Ct. 2257 (emphasis added) (citing cases). The Supreme Court also explained that [a] tangible employment action in most cases *inflicts direct economic harm.*" *Id.*at 762, 118 S.Ct. 2257 (emphasis added). Thus, the test of whether a constructive discharge is a "tangible employment action" is not whether it can be caused by a co-worker as well as a supervisor, but whether, when caused by a supervisor, it "constitutes a significant change in employment status," *Id.* at 761, 118 S.Ct. 2257, or "inflicts direct economic harm." *Id.* at 762, 118 S.Ct. 2257.

---

[1] Defendant's Appendix J.

Here, it is clear that the plaintiff had no choice but to resign, and her resignation caused direct economic harm.

Assuming *arguendo* there was no tangible employment action taken against the plaintiff, the employer may raise an affirmative defense to liability. *Faragher,* 524 U.S. at 807–08, 118 S.Ct. 2275, *Burlington Indus., Inc.,* 524 U.S. at 765, 118 S.Ct. 2257. A defending employer may raise an affirmative defense to liability or damages, subject to *proof by a preponderance of the evidence*. Fed. Rule Civ. Proc. 8(c). The *Faragher/ Ellerth* defense is raised by showing: "(a) that the employer exercised reasonable care to prevent and correct promptly any harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer to avoid harm otherwise." *Faragher,* 524 U.S. at 807, 118 S.Ct. 2275.

In the present case, the plaintiff has set forth sufficient evidence to show that she took advantage of corrective opportunities provided by the employer to avoid harm. She testified that initially she informed Lowery that his behavior was inappropriate and unwelcome. The defendant's sexual harassment policy clearly states that the first step in the process is to complain to the immediate supervisor about the inappropriate conduct. When Lowery continued his sexually inappropriate conduct, the plaintiff again followed the company policy by directing her complaints to the personnel office. At the time of Ms. Cooper's complaints in April, 2011, she initially complained to Lynn Dove who was a Human Resources personnel officer. In addition to complaining to Dove, the plaintiff also requested to be transferred away from Lowery's department. When these measures failed, the plaintiff then contacted Lowery's immediate supervisor Ray Krause, as well as the next higher level of supervision, Donovan Ovens. This was all done in accordance with the defendant's sexual harassment policy. Finally

and once again in compliance with the defendant's sexual harassment policy, the plaintiff complained to Jamie Pope, who was the Director of Human Resources. (Cooper Declaration).

Pope, after learning of the plaintiff's claims against the Lowery, spoke with only one witness even though the plaintiff had given the names of several witnesses. In fact, the plaintiff had actually taken Brandon Moore with her to Pope's office as a supporting witness; however Pope refused to interview Moore. Instead Pope made the determination that Moore did not have evidence or information that would assist him in his investigation. Moore was told to go home, even though he witnessed Lowery's sexual harassment towards the plaintiff. (Cooper Declaration; Moore Declaration; Pope Affidavit).

The defendant argues that Pope started his investigation of the plaintiff's claims of sexual harassment immediately after he learned of them; however, a prompt response to complaints of harassment made pursuant to a policy banning harassment does not necessarily establish the first prong of the affirmative defense. See, e.g., *Jackson v. Quanex Corp.*, 191 F.3d 647, 664-65 (6th Cir. 1999). Moreover, the facts show that Pope's investigation lacked in substance. Williams clearly corroborated the plaintiff's assertions that Lowery had not only sexually harassed her, but had also threatened to kill her. In Williams' handwritten note dated July 18, 2011, Williams stated that she heard "Tommy say before he lose his job over any 'bxxxx', that he will kill them". This is clearly supportive of the plaintiff's contention that Lowery stated that he would kill her before he lost his job over her complaining about him subjecting her to sexual harassment. Furthermore, Williams wrote in her July 18, 2011 statement that she heard Tommy ask the plaintiff if he could come and see her while she was on vacation and she told him no. She further said that there were rumors in the workplace that Tommy was going to try to sleep with the plaintiff and if she didn't, he would get her fired. Therefore, the defendant's argument that

12

none of the plaintiff's witnesses corroborated her allegations is patently false. (Appendix C-Williams July 18, 2011 written statement).

It is noteworthy that Lowery had an extensive criminal history that consisted of serving ten (10) years of prison time for drug trafficking cocaine, and a conviction for assault with a deadly weapon. The employees at Smithfield were aware of his history and according to the plaintiff, Lowery enjoyed his intimidating reputation. (Lowery depo. p. 20, line 25-21, line 9; Lowery depo. p. 17, line 17-20; p. 18, line 6-15; Lowery depo. p. 93; line 15-24; Cooper Declaration).

The defendant did not take adequate remedial measures after learning of such horrific conduct by Lowery towards the plaintiff. First, by failing to thoroughly investigate the claims the plaintiff made against Lowery, and second, by failing to remove Lowery from the workplace immediately. Pursuant to the defendant company's anti-threat policy, any employee who threatens another employee would be disciplined, including possible termination. (Cooper Declaration; Appendix D).

Here, Pope's resolution to the plaintiff's claims was simply to transfer Lowery to first shift pending the completion of his investigation. Clearly Pope had no intention of removing Lowery from the premises of the defendant company even though Pope was aware that Lowery had made a threat to kill someone in the workplace and had threatened to terminate the plaintiff if she didn't have sex with him. (Cooper Declaration).

Finally, the defendant company's failure to follow its policy regarding threats of violence in the workplace is not surprising when viewed in the context of its failure to follow other workplace policies. For example, Russ testified that employees involved in personal relationships are not allowed to work on the same shift. (Russ depo. p. 17, line 2-9; p. 20, line

20-21, line 1; Russ depo. p. 22, line 1-5). However, not only was Lowery allowed to work on the same shift with women with whom he was engaged in sexual relationships, but was also allowed to supervise those women. (Lowery depo. p. 25, line 19-23; p. 26, line 4-5; p. 38, line 6-9). Under these circumstances, the plaintiff's resignation was clearly reasonable and compelling.

Based on the foregoing, the plaintiff has met her burden as to this element of sexual harassment.

## CONCLUSION

The facts, when viewed in the light most favorable to the plaintiff preclude summary dismissal of her hostile work environment sexual harassment claim. Thus, the Plaintiff prays the court for an Order DENYING the Defendant's Motion for Summary Judgment.

This the 27th day of September, 2016.

GRAY NEWELL THOMAS, LLP

BY: /s/ Angela Gray
     Angela Newell Gray
     7 Corporate Center Court, Suite B
     Greensboro, NC  27408
     Telephone:	(336) 724-0330
     Facsimile:	(336) 458-9359
     Email:	angela@graynewell.com
     *Attorney for Plaintiff*
     NC Bar # 21006

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Civil Action No. 7:13-cv-145-F

| | | |
|---|---|---|
| Lisa Cooper, | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
|     vs. | ) | <u>*Certificate of Service*</u> |
| | ) | |
| | ) | |
| The Smithfield Packing Company, Inc., | ) | |
|     *Defendant*. | ) | |

    I, Angela Newell Gray, Attorney for the Plaintiff, do hereby certify that I served the foregoing Plaintiff's Response in Opposition to the Defendant's Motion for Summary Judgment upon counsel for the Defendant shown below by electronically filing the same with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following attorney of record;

Melissa A. Romanzo<br>
Hunton & Williams LLP<br>
101 South Tryon Street, Suite 3500<br>
Charlotte, NC 28280<br>
mromanzo@hunton.com

Kurt G. Larkin<br>
Hunton & Williams LLP<br>
Riverfront Plaza, East Tower<br>
951 East Byrd Street<br>
Richmond, VA 23219-4074<br>
klarkin@hunton.com

This the 27th day of September, 2016.

    <u>/s/ Angela Gray</u>
    Angela Newell Gray
    Gray Newell Thomas, LLP
    7 Corporate Center Court, Suite B
    Greensboro, NC 27408
    Tel:    (336) 724-0330
    Fax:    (336) 458-9359
    Email: angela@graynewell.com
    NC State Bar #21006