IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Civil Action No. 7:13-cv-145-F

| | | |
|---|---|---|
| Lisa Cooper, | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
|     vs. | ) | *Plaintiff's Opposing Statement of Facts* |
| | ) | *and Additional Material Facts Creating* |
| | ) | *Genuine Dispute* |
| | ) | |
| The Smithfield Packing Company, Inc., | ) | |
|     *Defendant*. | ) | |

COMES NOW the Plaintiff, by and through the undersigned counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1 of the Eastern District of North Carolina, respectfully submitting her Opposing Statement of Facts and Additional Material Facts that Create a Genuine Dispute.

This the 27th day of September, 2016.

GRAY NEWELL THOMAS, LLP

BY:   <u>/s/ Angela Gray</u>
      Angela Newell Gray
      7 Corporate Center Court, Suite B
      Greensboro, NC  27408
      Telephone:   (336) 724-0330
      Facsimile:   (336) 458-9359
      Email:   angela@graynewell.com
      *Attorney for Plaintiff*
      NC Bar # 21006

## OPPOSING STATEMENT

1. This fact is undisputed.

2. This fact is undisputed.

3. This fact is undisputed.

4. This fact is undisputed.

5. This fact is disputed to the extent that it seeks the Plaintiff's affirmation of the Defendant's intentions. Further, this fact is not a material fact related to the present case and simply states Smithfield's general efforts regarding its employees' awareness of the anti-harassment policy, the COBC, and the Employee Hotline.

6. This fact is disputed to the extent that it is not a material fact specific to the efforts Smithfield made to enforce the anti-harassment policy in the present action. Further, this fact simply states Smithfield's general efforts regarding its employees' awareness of the anti-harassment policy, the COBC, and the Employee Hotline.

7. This fact is disputed to the extent that it is not a material fact specific to the efforts Smithfield made to investigate allegations of sexual harassment in the present action. Further, this fact simply states Smithfield's general efforts to investigate sexual harassment allegations in the workplace.

8. This fact is undisputed.

9. This fact is undisputed; however it is not material to the allegations in the present action.

10. This fact is undisputed.

11. This fact is undisputed.

12.     This fact is undisputed, with one exception. The plaintiff and Lowery did have an opportunity to interact at work during the period of time between April 20, 2009 through August 2, 2010.

13.     This fact is undisputed.

14.     It is undisputed that the plaintiff executed the fiscal 2011 annual business conduct manual certification form. All other facts are disputed.

15.     It is undisputed that the plaintiff executed the fiscal 2012 annual business conduct manual certification form. All other facts are disputed.

16.     It is undisputed that the plaintiff and Brandon Cooper complained to Kyle Narron and Ray Krause on July 18, 2011 about the sexual harassment of Lowery. It is disputed that this was the first notice the plaintiff provided to any member of management regarding her allegations against Lowery.

17.     It is undisputed that the plaintiff informed Pope that she believed Lowery was sexually harassing her, had made sexual advances toward her, had threatened to kill her, and had made sexually and racially inappropriate comments to her. It is disputed that Brandon Moore told Pope that he did not have firsthand knowledge of Cooper's sexual harassment allegations. It is undisputed that Pope excused Moore from the meeting, and refused to listen to his comments and statements regarding his witnessing of the sexual harassment by Lowery against the plaintiff.

18.     It is disputed that the plaintiff ever intimated or insinuated that she and Lowery had a consensual romantic relationship ever. It is undisputed that Cooper told Pope that Lowery asked her to have sex with him and continued to harass her when she declined his sexual advances. It is disputed that the only employee names provided to Pope as witnesses to Lowery's harassment only included Monica Williams, Elijah Locklear and Sequoia Campbell. It is disputed that the

3

plaintiff did not name Brandon Moore as a witness. It is disputed that Pope told the plaintiff to take the night off with pay while he began his investigation.

19. It is disputed that Pope immediately began his investigation. It is further disputed that the witnesses named by the plaintiff could not corroborate her specific complaints about Lowery's alleged sexual harassment.

20. It is disputed that Pope thoroughly interviewed Lowery.

21. The plaintiff can neither dispute nor affirm this statement.

22. This fact is undisputed.

23. This fact is disputed.

24. This fact is undisputed.

25. It is undisputed that Pope closed the investigation of the plaintiff's claims; however, it is disputed that the information was insufficient to verify the plaintiff's claims against Lowery.

26. This fact, including its subparts, is disputed to the extent that it sets out the "full scope" of the plaintiff's allegations of harassment. Further, this is not a statement of the material facts in the case. Rather, it is an argument in support of the defendant's motion for summary judgment.

## STATEMENT OF ADDITIONAL FACTS CREATING GENUINE DISPUTE

1. The Plaintiff began employment with the Defendant in December, 1995. Immediately prior to her separation from employment, she held the position of Supervisor and was supervised by the Superintendent, Tommy Lowery. (Appendix A-Cooper Declaration; Lowery depo. p. 61, line 19- p. 62, line 23[1]).

2. Lowery was responsible for giving the Plaintiff job assignments and they worked together every evening on second shift. (Lowery depo. p. 61, line 25-62, line 23). Lowery also

---
[1] Defendant's Appendix J.

performed the Plaintiff's job performance evaluations, and concedes that he never gave her a bad performance evaluation even though there were some skills she needed help with. (Lowery depo. p. 76, line 1-7).

3. Lowery had begun his employment with Smithfield, when it was called Carolina Foods, while he was an inmate with the North Carolina Department of Corrections through its work release program in 1997. (Lowery depo. p. 20, line 25-21, line 9). Lowery had been sentenced to ten (10) years in prison in approximately 1994 after pleading guilty to drug trafficking cocaine in Robeson County. (Lowery depo. p. 17, line 17-20; p. 18, line 6-15). He was also convicted of assault with a deadly weapon. (Lowery depo. p. 93; line 15-24).

4. Beginning in January 2007 and extending through December 31, 2007, the Plaintiff was subjected to sexual harassment on more than twenty (20) occasions by Lowery which mostly consisted of sexually explicit comments about how sexy she looked or how big her breasts and rear were, and how much Lowery wanted "to be with her". The Plaintiff tried to ignore Lowery's comments as much as possible. (Cooper Declaration).

5. Over the years 2008, 2009 and 2010, the harassment continued on at least a monthly basis. However, beginning in January, 2011 the harassment worsened and included sexually explicit statements, sexual advances, inappropriate sexual contact and making continuous physical and emotional threats toward the Plaintiff. Lowery asked the Plaintiff on a regular basis, at least once per week, to have sexual intercourse with him, and told her on a regular, almost daily basis that he would like to get her on her "fucking" back, in a sexual position. He told the Plaintiff about his sexual fantasies about engaging in sexual intercourse with her, and asked if he could come to her house for the purpose of having sexual intercourse on a regular, almost daily basis. The Plaintiff again tried to ignore Lowery; however he became more agitated with her

5

rejections. The Plaintiff became fearful of Lowery when he told her he would kill her, especially since she knew he had a criminal record and a reputation of dealing with dangerous people. (Cooper Declaration).

6. During his employment at Smithfield, Lowery developed a reputation with the female employees. (Cooper Declaration). In fact, Lowery supervised women with whom he had sexual relationships. Leslie Wade, an employee Lowery supervised, is the mother of his fifteen (15) year old child. (Lowery depo. p. 25, line 19-23; p. 26, line 4-5; p. 38, line 6-9). When Wade became pregnant, Lowery was the Superintendent in the Case Ready Department and supervised Wade. (Lowery depo. p. 37, line 5-17). During the time Wade worked under Lowery, he had the authority to recommend her termination. (Lowery depo. p. 50, line 11-20). Lowery admits that Wade was terminated for fighting another employee. (Lowery depo. p. 42, line 24- p. 44, line 1-18). The Plaintiff contends that Wade was terminated for fighting another female employee with whom Lowery was engaged in a sexual relationship. (Cooper Declaration). Lowery concedes that at the time his child with Wade was born, he was living with Amanda Smith, who was also an employee of Smithfield over whom he had supervisory authority. (Lowery depo. p. 27, line 20- p. 28, line 1, 113, line 5-115, line 23; 118, line 3-5).

7. At the time Lowery was supervising Wade, Human Resources was aware that she was the mother of his child. (Lowery depo. p. 51, line 2-5). Also, Tammy Russ, who supervised Lowery from approximately 2000-2010, was aware that Lowery supervised a woman with whom he had a child, Leslie Wade. (Russ depo. p. 17, line 2-9; p. 20, line 20-21, line 1)[2].

8. Russ testified that the Defendant Company policy was that the individuals were to inform HR about their relationship so that one of the parties could be relocated. (Russ depo. p. 22, line 1-5).

---

[2] Defendant's Appendix K.

9.  In addition to harassing the Plaintiff, Lowery questioned her male co-worker, Brandon Moore, about his sexual involvement with her. (Appendix B- Moore Declaration). Moore worked as a Utility Worker at Smithfield from approximately December 4, 2006 through June, 2016. At the time he questioned Moore about the Plaintiff, Lowery was Moore's supervisor. (Lowery depo. p. 63, line 22-24). Lowery accused Moore of "killing Lisa Cooper out"; meaning that he was having sex with her. Lowery made those accusations on more than one occasion between 2009 and 2011. (Moore Declaration).

10. In January 2011, Lowery forced the Plaintiff to spend time working physically closely with him in the office and physically harassing her. (Cooper Declaration). Moore had been in the presence of Lowery and the Plaintiff on a number of occasions between 2009 and 2011 when he heard Lowery make inappropriate comments of a sexual nature to her. For example, Lowery would ask the Plaintiff when she was going to let him take her home with him. He would follow her around asking something like, "you're going home with me aren't you?" He did this at least two (2) to three (3) times per week for almost two (2) years until the Plaintiff finally couldn't take it anymore. The Plaintiff was visibly bothered by Tommy's behavior. In fact, every time Moore saw or heard Lowery make these comments to the Plaintiff, she would tell him to stop talking to her that way. She was rejected him and let him know that she did not like what he was saying to her. She did nothing that Moore saw to encourage Lowery to treat her that way. (Moore Declaration). Lowery concedes that Moore was able to observe interactions between her and the Plaintiff. (Lowery depo. p. 64, line 12-16).

11. In 2011, Lowery asked the Plaintiff to describe to him the manner in which she engaged in sexual intercourse with my husband. He would then describe to her the manner in which he engaged in sexual intercourse with other women, and the way he would like to engage in sexual

7

intercourse with her. He also referred to the Plaintiff as a bitch, whore and slut while at work during the years 2010 through 2011 especially when she rejected his sexual advances. He spoke to her using a belittling tone of voice and disrespected her in the presence of co-workers by saying that she was stupid or was a stupid bitch. (Cooper Declaration; Moore Declaration).

12. Moore corroborates this testimony stating that Lowery acted hateful toward females in general, but did not treat men like that. For example, Lowery would yell at the women until they cried, and say disrespectful things to them like calling them stupid and dumb. He also used a nasty tone of voice when talking to the women versus when he talked to the men. (Moore Declaration). Lowery admits that he has used the word bitch at work referring to female workers in the presence of female workers. (Lowery depo. p. 73, line 10- p. 74, line 4).

13. In 2011 on almost a weekly basis, Lowery would brush against the Plaintiff's buttocks, breasts, arms and legs, and used his hands, arms, legs and genitalia area to brush against her body for his sexual gratification. (Cooper Declaration). Lowery admits that he may have bumped into the Plaintiff at work. (Lowery depo. p. 76, line 18-25). Although Moore did not see physical touching, he testified that Lowery would frequently tell him and other employees to leave the office when the Plaintiff came into his office area because he wanted to be in the office alone with her. Moore also heard Lowery make comments to the Plaintiff that she looked sexy on many occasions between 2009 and 2011. (Moore Declaration).

14. The Plaintiff complained directly to Mr. Lowery about his sexually harassing behavior and told him to stop treating her that way each time throughout the years up to and including July 18, 2011, but he would not stop. (Cooper Declaration).

8

15. Moore says that he noticed a change in the Plaintiff. She started complaining about work and not wanting to come into the office. Specifically, she complained a lot about Lowery. She tried to ignore Lowery, but he would not leave her alone. (Moore Declaration).

16. In approximately March 2011, the Plaintiff requested a transfer to another department or another city to get away from Lowery. However, Lowery refused her request. (Cooper Declaration). Lowery admits Cooper asked him for a transfer in 2011, but he refused. (Lowery depo. p. 77, line 10- p. 78, line 7).

17. In approximately April 2011, Moore was with the Plaintiff when she verbally complained about Lowery and reported to Lynn Dove, Human Resources, that she needed to get away from him because of the sexual harassment. Nothing was done.

18. After complaining to Human Resources in approximately April, 2011, the harassment by Lowery increased. Lowery was aware that the Plaintiff had complained to Human Resources because he referenced her internal complaints when he threaten to kill her. (Moore Declaration).

19. Ms. Monica Williams provided a written statement during the course of Pope's investigation into the Plaintiff's claim of sexual harassment against Lowery. Williams' written statement corroborated the Plaintiff's claims when she stated that she heard Lowery state that before "he lose his job over any "bxxx" that he will kill them". (Appendix C- Williams' July 18, 2011 written statement)[3].

20. Monica Williams' written statement corroborated the Plaintiff's claims that Lowery asked the plaintiff if he could come see her while she was on vacation, and the Plaintiff told him "no". (Appendix C- Williams' July 18, 2011 written statement).

---

[3] Williams now attempts to retract her original statement that she heard Lowery threaten to kill Cooper allegedly because she only wrote the statement in exchange for money promised to her by Cooper. Notwithstanding, Williams credibility is not to be considered by the court in a motion for summary judgment. Defendant's Appendix D.

9

21.     Monica Williams' written statement confirmed that there were rumors going around at work that if Lowery wanted to sleep with an employee and that employee refused, he would have that employee fired. (Appendix C- Williams' July 18, 2011 written statement).

22.     The Plaintiff verbally complained to other co-workers and Lowery's supervisors, Ray Krause and Donovan Owens, about his sexual harassment. Moore was with the Plaintiff when she complained to Krause and Owens. (Cooper Declaration; Moore Declaration).

23.     The Plaintiff complained again to the Human Resources Manager, Jamie Pope, about Mr. Lowery's conduct. She provided Pope with details of the sexual harassment by Lowery so that Human Resources could conduct an investigation. She provided Human Resources with names of witnesses, including Diane Williams, Monica Williams and Brandon Moore, who could support her claim of sexual harassment. (Cooper Declaration).

24.     On the day before the Plaintiff resigned in July, 2011, Moore was again with her when she went to complain to Jamie Pope about Lowery. Moore was with her for support and to provide information about what he had seen and heard. However, both Krause and Owens brushed him off and did not want to hear what he had to say. They said they would contact Moore to get a statement later and told him to go home. After that, no one ever asked Moore for a statement or asked him what he had seen or heard between the Plaintiff and Lowery. (Moore Declaration).

25.     Owens was Lowery's second level supervisor in 2011, (Lowery depo. p. 64, line 20- p. 65, line 1) and Krause was Lowery's immediate supervisor. (Lowery depo. p. 66, line 6-14; p. 68, line 12-14). Lowery concedes that if an employee had a problem with him in 2011, Owens and Krause were the proper individuals to report the complaint to. (Lowery depo. p. 71, line 25- 72, line 8).

26. Diane Williams never spoke to anyone from HR, including Jamie Pope, about the Plaintiff's sexual harassment complaint against Lowery even though her name had been provided to Pope as a witness. (Williams depo. p. 36, line 11-13)[4].

27. In July, 2011, the Plaintiff called the Employee Assistance Program (EAP) offered through Smithfield in an effort to seek emotional support and treatment for the distress she was suffering as a result of Mr. Lowery's conduct. However, because of the sexual harassment the Plaintiff was subjected to by Lowery, her working conditions became so intolerable that on July 19, 2011, she felt forced to resign to escape the harassment and address her mental health. (Cooper Declaration).

28. Lowery was aware that the plaintiff resigned because of the sexual harassment to which he had subjected her. (Lowery depo. p. 79, line 7-14).

29. The plaintiff's further evidence is as follows:

- After rejecting Lowery, the plaintiff became afraid of Mr. Lowery. He told her that he would kill her for complaining about him. She knew he had a criminal record and reputation for being a drug dealer with connections to frightening people. She also knew he had a history of violence.

- Mr. Lowery, along with other co-workers, was aware of the previous sexual harassment allegations the plaintiff had made against Mr. Perdue. They were aware that Mr. Perdue had been terminated because of her complaints. That is why she believes Lowery made the statement about killing her if he got fired after he heard she complained about him to Human Resources.

- The plaintiff tried to ignore Lowery's comments as much as possible, but he persisted and made it difficult.

---

[4] Defendant's Appendix L.

- Jamie Pope told the plaintiff the day after she complained about Lowery that he really could not do anything about it. He further stated that he was ending his investigation even though he had not bothered to call all of her witnesses.

- When the plaintiff realized the defendant was not going to do anything to Lowery, she felt forced to resign. Not only because she was afraid of him causing physical harm to her, but also because she knew he would just continue to harass her.

- The plaintiff never had, nor wanted to have, a consensual romantic relationship with Tommy Lowery.

- Lowery was involved in sexual relationships with several of the women he supervised, including Leslie Wade and Amanda Smith (now Amanda Lowery).

- At the time Lowery supervised Wade, he was having sex with her and was also living with, and having sex with Amanda Smith.

- Because of Lowery's sexual relationships with these women, there was a lot of tension in the department and rumors about his ability to terminate women who refused to have sex with him.

- The plaintiff was aware, because of her involvement as a supervisor, that Wade was involved in a fight with another co-worker, Lemon Esther, over issues related to Lowery having sex with both women.

- It was not unusual for supervisors to have relationships with people they supervised. Management was aware that this type of behavior occurred in the workplace, but did nothing about it.

- Lowery was a very intimidating person. Because of Lowery's prison record and history of criminal involvement, it was believed that he had the resources to hurt or cause

problems on the job for people. Lowery knew that was his reputation and he enjoyed having people think these things about him.

---

This the 27th day of September, 2016.

GRAY NEWELL THOMAS, LLP

BY:  /s/ Angela Gray  
Angela Newell Gray  
7 Corporate Center Court, Suite B  
Greensboro, NC  27408  
Telephone: (336) 724-0330  
Facsimile: (336) 458-9359  
Email: angela@graynewell.com  
*Attorney for Plaintiff*  
NC Bar # 21006