IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Case No.: 7:13-cv-145-F

| | | |
|---|---|---|
| LISA COOPER, | ) | |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OF LAW IN REPLY |
| | ) | TO PLAINTIFF'S MEMORANDUM IN |
| v. | ) | OPPOSITION TO DEFENDANT'S MOTION FOR |
| | ) | SUMMARY JUDGMENT |
| | ) | |
| | ) | Fed. R. Civ. P. 56 and Local Civil |
| | ) | Rules 7.1. 7.2 and 56.1 |
| THE SMITHFIELD PACKING | ) | |
| COMPANY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rules 7.1 and 7.2, Defendant Smithfield Farmland Corp. ("Smithfield" or the "Company"), by counsel, submits this memorandum of law in reply to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgement ("Plaintiff's Response"). (Doc. 52).

Plaintiff's Response is unsurprising given her failure to develop an evidentiary record during discovery. Armed with insufficient record evidence to survive summary judgment, Plaintiff engages in an eleventh-hour attempt to create one. The centerpiece of her Response is a post-discovery declaration ("Cooper's Declaration") that is a transparent attempt to create disputes of fact where none exist. (Doc. 54-1, Pl. Appx. A). The probative value of any post-discovery affidavit is dubious at best. *See e.g., Wright, Federal Practice and Procedure*, § 2722 at 373, 379 (3d ed. 1998) (noting that depositions are "one of the best forms of evidence for supporting or opposing a summary-judgment motion," and that affidavits, not being subject to cross-examination, "are likely to be scrutinized carefully by the court to evaluate their probative value"). By any standard, Cooper's Declaration bears scant resemblance to what Rule 56(c)(4) contemplates as appropriate. It is a hodgepodge of conclusory allegations parroted from her

1

Fourth Amended Complaint,[1] sprinkled with speculation[2], hearsay[3], and references to plainly inadmissible subjects such as Lowery's rumored past consensual romantic relationships and long-dated criminal convictions.[4]

Cooper's Declaration, and any portion of Plaintiff's Response relying on it, should be disregarded by the Court. *See e.g., Pledger v. Mayview Convalescent Home, Inc.*, 2009 U.S. Dist. LEXIS 33198, 52-53 (E.D.N.C. Apr. 14, 2009) (finding that affidavits submitted on summary judgment containing hearsay, conclusory statements, and 'self-serving opinions without objective corroboration' will not be considered by the court") (internal citations omitted). Moreover, the improprieties in Cooper's Declaration corrupt nearly every facet of the her Response.

**A.   Plaintiff Advances Allegations Dismissed by the Court Because They Exceeded the Scope of Plaintiff's Charge of Discrimination**.

Cooper's Declaration repeatedly references purported threats by Lowery that he would kill her as a result of her refusal of his purported advances or complaints to the Company. (Doc. 54-1, Pl. Appx. A, ¶¶ 8, 15, 16, 20) (emphasis added). But the Court struck these allegations from Plaintiff's Third Amended Complaint for lack of subject matter jurisdiction. (Doc. 33.). The Court's Order was clear: **"Any allegations that Lowery threatened [Plaintiff's] life**, that he was watching her on a daily basis, or that he threatened her employment **must be stricken from the [Third Amended Complaint] because they fall outside the scope of the Charge**. (Doc. 33, pp. 5-6).[5] The import of this ruling is unmistakable:

---

[1] *See generally* Cooper's Declaration at ¶¶ 4-14, 17-18, 22, 24.
[2] *See generally* Cooper's Declaration at ¶¶ 4, 13, 16, 20, 22, 25, 26, 29-37.
[3] *See generally* Cooper's Declaration at ¶¶ 9, 17, 26, 31, 32.
[4] *See generally* Cooper's Declaration at ¶¶ 15, 25, 29-32, 37.
[5] Relatedly, Plaintiff's Response contains at least two allegations, purportedly supported by the written statement of Monica Williams (Doc., 54-1, Pl. Appx. C), that Lowery would terminate Plaintiff's employment if she refused to sleep with him (Doc. 52, pp. 12, 13). Ms. Williams has since admitted that Cooper convinced her to fabricate this claim, as well her claim that she overheard Lowery state that "before he lose his job over any 'bxxxx', that he will kill them," in return for a portion of whatever settlement money Cooper obtains from Smithfield. (M. Williams Aff., ¶¶ 4-6, Appx. L). Plaintiff argues the Court should not consider Williams' retraction of her written statement since her "credibility is not to be considered by the court in a motion for summary judgment" (Doc. 53, p. 9, fn. 3). But Williams' retraction is sworn testimony (M. Williams Aff., ¶¶ 4-6, Appx. L), whereas her prior written statement is unverified, unauthenticated, and blatant hearsay. **More importantly**, the Court cannot consider Williams' statements relating to Lowery's purported threat to fire Plaintiff since it has already ruled that

2

Lowery's purported threats to kill Plaintiff cannot be considered by the Court because they are no longer part of this case, and never should have been. *Balas v. Huntington Ingalls Indus.*, 711 F.3d 401, 408 (4th Cir. 2013) ("Only those discrimination claims stated in the initial charge, those reasonably related to the original [EEOC] complaint, and those developed by reasonable investigation of the original [EEOC] complaint may be maintained in a subsequent Title VII lawsuit."); *see also Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005).

Nevertheless, Plaintiff repeatedly cites to Lowery's purported threats as proof that she was subjected to "severe and pervasive" harassment. She asserts:

> The plaintiff's evidence also shows that she was subjected to ***a physically threatening environment*** which ultimately interfered with her ability to work, causing her to feel forced to resign from her position. ***In fact, the plaintiff was fearful for her very life. Lowery threatened to kill the plaintiff if her complaints about him caused him to lose his job***. (Doc. 52, p. 8) (emphasis added).

> In the present case, plaintiff's letter of resignation shows that she felt forced to resign as a result of the intolerable work conditions that she faced because of Lowery's harassment ***and threat to kill her***. (Doc. 52, p. 9) (emphasis added).[6]

Plaintiff relies heavily on these allegations in attempting to impute liability to Smithfield. According to her Response:

> The Plaintiff suffered a tangible employment action when she was forced to resign due to Lowery's creation of a sexually hostile work environment, ***as well as his threat to kill her if her complaints caused him to lose his job***. (Doc 52, p. 10) (emphasis added).

> Williams clearly corroborated the plaintiff's assertions that Lowery not only sexually harassed her, ***but had also threatened to kill her***. In Williams' handwritten note dated July 18, 2011, Williams stated that she heard "***Tommy say before he lose his job over any 'bxxxx', that he will kill them***". This is clearly supportive of the plaintiff's contention that ***Lowery stated that he would kill her before he lost his job over her complaining about him subjecting her to sexual harassment***. (Doc 52, p. 12) (emphasis added).

---

these allegations exceeded the scope of Plaintiff's charge of discrimination. *See* Order on Motion to Dismiss (Doc. 33, p. 5) (finding that "[a]ny allegations that Lowery threatened her life, that he was watching her on a daily basis, ***or that he threatened her employment*** must be stricken from the TAC because they fall outside the scope of the Charge") (emphasis added).

[6] Plaintiff's Opposing Statement of Facts and Additional Material Facts Creating Genuine Dispute ("Plaintiff's SOF") is also littered with allegations relating to these threats (See Doc. 53, ¶¶ 5, 18, 19, 29). Those portions of Plaintiff's SOF should be disregarded by the Court for the same reasons stated herein.

3

Clearly Pope had no intention of removing Lowery from the premises of the defendant company even though Pope was aware that ***Lowery had made a threat to kill someone in the workplace*** and had threatened to terminate the plaintiff if she didn't have sex with him. (Doc. 52, p. 13) (emphasis added).

The Court's prior Order makes clear that these allegations are off limits. Plaintiff's attempts to revive them disregards the Court's Order. The portions of Cooper's Declaration and Response attempting to advance (and rely on) these allegations should be excluded by the Court.

**B.    Cooper's Declaration and Plaintiff's Response Attempt to Advance Allegations That Contradict Her Own Deposition Testimony and Other Prior Responses During Discovery**.

Cooper's Declaration also contains repeated examples of allegations that contradict her prior deposition testimony and disclosures during discovery, suggesting her Declaration is a "sham" affidavit under Circuit precedent. *See, e.g., Jackson v. Consolidation Coal Co.*, 21 F.3d 422 (4th Cir. 1994). As this Court has made clear, "[i]t is well recognized that a plaintiff may not avoid summary judgment by submitting an affidavit that conflicts with earlier deposition testimony." *Pledger v. Mayview Convalescent Home, Inc.*, 2009 U.S. Dist. LEXIS 33198, 52-53 (E.D.N.C. Apr. 14, 2009) (quoting *Alba v. Merrill Lynch & Co.*, 198 Fed. Appx. 288, 300 (4th Cir. 2006)); *see also Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984) ("A genuine issue of material fact is not created where the only issue of facts is to determine which of the two conflicting versions of the plaintiff's testimony is correct."). Plaintiff contradicts her prior deposition testimony repeatedly in her Declaration.

**1.    Cooper's Declaration Alleging that She Requested a Transfer in March 2011 is Contradicted by Her Deposition Testimony.**

Plaintiff alleges in her declaration that "[i]n approximately March 2011, [she] requested a transfer from Jamie Pope to another department or another city to get away from Mr. Lowery. However, [she] was told that there were no vacancies to facilitate the transfer." (Doc. 54-1, Pl. Appx. A, ¶ 17)(emphasis added). At deposition, Plaintiff did testify that she asked Pope to transfer her to another facility. (Cooper Depo., pp. 192-197, line 5, Appx. G). However, she conceded that <u>she did not make that request until after she complained to Pope on July 18, 2011</u>, the day before she resigned. (Id.).

4

### 2. Cooper's Declaration Allegation that She Reported Lowery to HR Employee Lynn Dove in April 2011 Conflicts With Her Own Deposition Testimony and Discovery Responses.

Plaintiff also alleges in her declaration that she complained about Lowery's conduct to Tar Heel Human Resources Manager Lynn Dove in "approximately April 2011." (Doc 54-1, Pl. Appx. A, ¶ 18) (emphasis added). According to Cooper's Declaration, Plaintiff "verbally provided [Dove] with details of the sexual harassment by Mr. Lowery against [her] so that Human Resources could conduct an investigation," and "provided Human Resources with names of witnesses who could support [her] claim of sexual harassment." (Id.). Plaintiff maintains that "[n]othing was done after [she] complained to Dove." (Doc. 54-1, Pl. Appx. A, ¶ 19).

This allegation is completely at odds with Cooper's deposition testimony which establishes that her first (and only) complaint to Smithfield management regarding Lowery's alleged harassment occurred <u>on July 18, 2011</u>, just one day before she voluntarily resigned her employment. (Cooper Depo., pp. 186-187, Def. Appx. G). Plaintiff's contradictory declaration is also at odds with her initial disclosures and other responses during discovery. Plaintiff did not identify Lynn Dove in her Rule 26(a)(1) initial disclosures as an individual likely to have discoverable information relevant to the disputed facts in this case. (Plaint. Initial Discl., Def. Appx. A). Plaintiff likewise failed to identify Dove as an individual likely to have knowledge or information relating to any of the facts or claims asserted in this action in her responses to Smithfield's interrogatories. (Pl. Inter. Resp., 1, Def. Appx. B). And, when asked to identify "any internal complaint of harassment or discrimination made by you, or on your behalf" during her employment, Plaintiff made no mention of any complaint to Dove in April 2011. Instead, she repeatedly responded that her first and only complaint to Smithfield management occurred on July 18, 2011. (Pl. Inter. Resp., 7, Def. Appx. B); (Pl. Suppl. Inter. Resp., 7, Def. Appx. D). She cannot change history now, after the discovery record has closed.[7]

---

[7] Plaintiff attempts to corroborate this sham declaration testimony with the declaration of former co-worker Brandon Moore. (Doc. 54-1, Pl. Appx. B). Moore claims he "was with [Plaintiff] when she verbally complained about Tommy and reported to Lynn Dove that she needed to get away from Tommy because of the sexual harassment. To my knowledge, nothing was done after [Plaintiff] complained." (Id.,

5

### 3. Cooper's Declaration Allegation that She Resigned Because Pope Ended His Investigation Before Calling Her Witnesses is Contradicted by Her Deposition Testimony.

Finally, Plaintiff alleges in her declaration that "Jamie Pope essentially told me the day after I complained about Lowery that he really could not do anything about it. <u>He further stated that he was ending his investigation even though he had not bothered to call all of my witnesses</u>." (Doc. 54-1, Pl. Appx. A, ¶ 29) (emphasis added). She then points to Pope's alleged comment in her Response as the justification for her decision to resign. (Doc. 52, 9).

Once again, these allegations plainly contradict Plaintiff's prior deposition testimony regarding her interactions with Pope during his investigation. When asked to recount Pope's response to her stated intention to resign on July 19, 2011, Plaintiff stated:

> [Pope] said <u>it's still being investigated. He just continued to say that</u>, and that was it. But then, when I got ready to got up -- when I got ready to get up out of the chair, <u>he said it's an ongoing investigation</u>, but they want to put Tommy on first and me on second. I said, I'm not going to work under those conditions.

(Cooper Depo., pp. 194-195, Def. Appx. G).

Cooper's deposition testimony corresponds with the undisputed record, which clearly establishes that Pope was still investigating when Plaintiff chose to resign. (Cooper Depo., pp. 194-197, Appx. G) (Pope Aff., ¶ 14, Appx. M). The significance of these record facts cannot be ignored. They prove both

---

at ¶ 15). Significantly, Moore's Declaration was not produced by Plaintiff until August 22, 2016, after the close of the extended discovery deadline in this case and nearly a month after it was executed by Moore (during the extended discovery period). Plaintiff's "eleventh-hour" production raises obvious suspicion since it foreclosed any opportunity for Smithfield to depose Moore concerning his declaration. And, although Plaintiff did identify Moore as a possible witness during discovery and at her deposition, she made no mention that he had knowledge of <u>any</u> complaint of harassment that she purportedly made to management, let alone to Dove. To the contrary, Plaintiff maintained during discovery that Moore's knowledge was limited to "the sexual comments and propositions that Lowery made to Plaintiff." (Plaint. Initial Discl., Def. Appx. A); (Pl. Inter. Resp., 1, Def. Appx. B). When asked at her deposition whether Moore had any other knowledge relating to the case, Plaintiff stated "I don't know." (Cooper Depo., p. 188, Def. Appx. G). These facts are almost identical to those presented in *Colfield v. Safeway Inc.*, 2016 U.S. Dist. LEXIS 42656, 17-18 (D. Md. Mar. 30, 2016). In that case, the court granted defendant's motion to strike a third-party affidavit offered by the plaintiff to support her discrimination claims on the basis that the affidavit was not produced in a timely manner and contained substantive facts that exceeded the purported scope of the affiant's knowledge, as disclosed in the plaintiff's interrogatory responses. For these same reasons, the Court should disregard Moore's affidavit in its entirety, or, at the very least, those portions addressed in this reply.

that the Company's response was prompt and that it was reasonably calculated to put an end to the alleged harassment. They also prove that Plaintiff failed to avail herself of the Company's proposed corrective measures.

In closing, Plaintiff was on the horns of a dilemma: she had to decide between addressing Smithfield's motion on an evidentiary record that plainly suggests summary judgment is appropriate, or attempting to evade it by fabricating new and contradictory "facts." Plaintiff chose the latter, substituting in her Response the portions of her own deposition testimony that discredit her claim with contradictory declaration testimony that supports it. As the Fourth Circuit has recognized, "[i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting [her] own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984). The portions of Cooper's Declaration described above purport to create precisely the type of self-serving factual disputes the sham affidavit rule intends to avoid. They should be disregarded by the Court as a result.

The evidentiary record in this case warrants summary judgment in Smithfield's favor. Disregarding Plaintiff's sham evidentiary constructs, as the Court must, what remains of Plaintiff's claim is simply not viable. For the foregoing reasons, Smithfield respectfully requests that the Court grant its Motion for Summary Judgment and enter an order dismissing Cooper's claims with prejudice and awarding the Company any additional relief the Court deems just and proper.

Respectfully submitted this 14th day of October 2016.

**SMITHFIELD FARMLAND CORP.**

*/s/ Kurt G. Larkin*
Melissa A. Romanzo (NC Bar No. 38422)
HUNTON & WILLIAMS LLP
101 South Tryon Street, Suite 3500
Charlotte, North Carolina 28280
Telephone: (704) 378-4700
Fax: (704) 378-4890
Email: mromanzo@hunton.com

Kurt G. Larkin (VA Bar No. 70730)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8200
Fax: (804) 788-8218
Email: klarkin@hunton.com

Brian C. Ussery (VA Bar No. 88243)
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219-4074
Telephone: (804) 788-8200
Fax: (804) 788-8218
Email: bussery@hunton.com

***Counsel for Defendant Smithfield Farmland Corp.***

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of October, 2016, a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Angela Newell Gray, Esq.
7 Corporate Center Court, Suite B
Greensboro, NC 27408
angela@graynewell.com
*Attorney for Plaintiff*

                                         */s/ Kurt G. Larkin*
                                         Kurt G. Larkin