IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:13-CV-00145-F

| | | |
|---|---|---|
| LISA COOPER, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| THE SMITHFIELD PACKING COMPANY, INC.[1], | ) | |
|     Defendant. | ) | |

This matter is before the court on Defendant's Motion for Summary Judgment [DE-48]. The issues have been fully briefed, and the matter is now ripe for ruling. For the reasons set forth below, Defendant's Motion for Summary Judgment is ALLOWED.

## I. STATEMENT OF THE CASE

On July 11, 2013, Plaintiff filed her Complaint, asserting that she was entitled to relief on five bases.[2] *See* Compl. [DE-1] at 7-8. Defendant responded by filing a Motion to Dismiss the Complaint [DE-7]. Plaintiff then filed an Opposition [DE-13] and her Amended Complaint [DE-12]. On September 16, 2013, Defendant filed a Motion to Dismiss the Amended Complaint [DE-14]. Plaintiff filed an Opposition [DE-16], to which Defendant filed a Reply [DE-17]. On

---

[1] In Plaintiff's Fourth Amendment Complaint, she identifies Defendant as "The Smithfield Packing Company, Inc." *See* 4th Am. Compl. [DE-34]. Defendant represents that on April 28, 2014, The Smithfield Packing Company, Incorporated merged with Farmland Foods, Inc., and the name of the merged corporation is "Smithfield Farmland Corp." Def.'s Mem. [DE-49] at 7 n.1.

[2] In Plaintiff's Complaint, she alleged entitlement to relief on the following grounds: (1) retaliation in violation of Title VII, (2) wrongful termination and disparate treatment, (3) negligent infliction of emotional distress, (4) intentional infliction of emotional distress, and (5) negligent supervision and retention. *See* Compl. [DE-1] at 7-8.

February 27, 2014, this court denied Defendant's Motion to Dismiss the Complaint on the basis that it was moot. *See* Feb. 27, 2014 Order [DE-18]. Defendant's Motion to Dismiss the Amended Complaint was allowed to the extent that Plaintiff's claim for sexual harassment based on a hostile work environment was dismissed without prejudice, and the remainder of Plaintiff's claims were dismissed with prejudice. *See id.*

Plaintiff filed a Second Amended Complaint [DE-19] on March 18, 2014. On April 4, 2014, Defendant filed a Motion to Strike Plaintiff's Second Amended Complaint [DE-22]. Plaintiff filed an Opposition [DE-24], and Defendant filed a Reply [DE-25]. On August 28, 2014, this court allowed the Motion to Strike. *See* Aug. 28, 2014 Order [DE-27]. The court gave Plaintiff fourteen days to excise certain statements from her Second Amended Complaint and file an amended complaint. *See id.*

On September 9, 2014, Plaintiff filed her Third Amended Complaint [DE-28]. Defendant filed a Motion to Dismiss [DE-29], arguing that Plaintiff's Third Amended Complaint failed to state a claim upon which relief can be granted and the court lacked subject matter jurisdiction over portions of Plaintiff's harassment claims. On October 16, 2014, Plaintiff filed an Opposition [DE-31], to which Defendant filed a Reply [DE-32]. On August 14, 2015, this court allowed, in part, and denied, in part, Defendant's Motion to Dismiss. *See* Aug. 14, 2015 Order [DE-33]. Plaintiff was directed to file a new complaint that included only certain allegations, as set forth in this court's order. *See id.*

Plaintiff filed a Fourth Amended Complaint [DE-34] on August 23, 2015. On June 3, 2016, Defendant filed an Emergency Motion to Compel [DE-41], seeking, in part, to compel Plaintiff to undergo an independent medical examination. Plaintiff filed an Opposition [DE-43].

On June 17, 2016, U.S. Magistrate Judge Robert B. Jones, Jr. denied without prejudice the request for an independent medical examination. *See* June 17, 2016 Order [DE-46].

On September 6, 2016, Defendant filed the instant Motion for Summary Judgment [DE-48]. Plaintiff filed an Opposition [DE-52], to which Defendant filed a Reply [DE-55].

## II. STATEMENT OF THE UNDISPUTED FACTS

In late 1995[3], Plaintiff was hired by Smithfield Packing Company, Inc. ("Smithfield"). 4th Am. Compl. [DE-34] ¶ 8; Def.'s Mat. Facts [DE-50] ¶ 8; Pl.'s Mat. Facts [DE-53] ¶ 1. Smithfield, a nationwide company based in Smithfield, Virginia, operates in the production, processing, and distribution of food and food-related products. 4th Am. Compl. [DE-34] ¶ 7; Def.'s Mat. Facts [DE-50] ¶ 1.

On January 5, 2006, Plaintiff was promoted to second shift Supervisor[4]. 4th Am. Compl. [DE-34] ¶ 8; Def.'s Mat. Facts [DE-50] ¶ 11. On the second shift, Plaintiff worked with Superintendent Tommy Lowery. Pl.'s Mat. Facts [DE-53] ¶¶ 1, 2; Def.'s Mat. Facts [DE-50] ¶ 12. Plaintiff alleges that from January of 2007 to December 31, 2007, she was sexually harassed by Lowery. 4th Am. Compl. [DE-34] ¶ 9. Plaintiff further alleges that from 2008 to 2010, Lowery's sexual harassment occurred on at least a monthly basis. *Id.* at ¶ 11. Finally, Plaintiff alleges that beginning in January of 2011, Lowery's harassment worsened and included sexually explicit statements, sexual advances, and inappropriate sexual contact. *Id.*

---

[3] Plaintiff contends that her employment commenced in *December* of 1995. Pl.'s Mat. Facts [DE-53] ¶ 1. Defendant asserts that Plaintiff was hired in *November* of 1995. Def.'s Mat. Facts [DE-50] ¶ 8.

[4] As Supervisor, Plaintiff oversaw the work of hourly employees assigned to work second shift in the Case Ready department. Def.'s Mat. Facts [DE-50] ¶ 11.

3

On July 18, 2011, Plaintiff complained to Jamie Pope, the Director of Human Resources, about Lowery's sexual harassment. Pl.'s Mat. Facts [DE-53] ¶ 23; Def.'s Mat. Facts [DE-50] ¶ 16. The next day, Plaintiff returned to Human Resources with her written statement. 4th Am. Compl. [DE-34] ¶ 24; Def.'s Mat. Facts [DE-50] ¶ 22. On July 20, 2011, Plaintiff went to Human Resources and delivered a letter of resignation. Def.'s Mat. Facts [DE-50] ¶ 24; 4th Am. Compl. [DE-34] ¶ 26. Pope later closed the investigation instigated by Plaintiff's allegations after concluding that her claims were unsubstantiated. Def.'s Mat. Facts [DE-50] ¶ 25; Pl.'s Mat. Facts [DE-53] ¶ 25.

On or about December 21, 2011, Plaintiff filed a timely charge of discrimination on the basis of retaliation and sexual discrimination with the Equal Employment Opportunity Commission ("EEOC"). 4th Am. Compl. [DE-34] ¶ 4; Def.'s Mat. Facts [DE-50] ¶ 26. EEOC mailed Plaintiff a notice of right to sue letter on April 19, 2013. *See* Compl. [DE-1] Attach. 1. On July 11, 2013, Plaintiff filed the instant lawsuit seeking declaratory relief and damages. *See id.*; 4th Am. Compl. [DE-34] ¶ 1; Def.'s Mat. Facts [DE-50] ¶ 26.

On August 23, 2015, Plaintiff filed her Fourth Amended Complaint, the operative pleading in this case. *See* 4th Am. Compl. [DE-34]; Def.'s Mat. Facts [DE-50] ¶ 26. In her Fourth Amended Complaint, Plaintiff alleges that she was subjected to unlawful sexual harassment during her employment with Smithfield, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII").[5] *See* 4th Am. Compl. [DE-34]; Def's Mat. Facts [DE-50] ¶ 26.

---

[5] The text of Title VII refers to discrimination against employees in regards to employment practices such as pay, but the law also prohibits sexual harassment when it amounts to a hostile work environment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 63-66 (1986).

### III. STANDARD FOR SUMMARY JUDGMENT

The summary judgment standard is well established. "The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of informing the court of the basis for its motion and identifying the matter it believes demonstrates the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The substantive law governing the case will identify those facts that are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When the court determines whether summary judgment is appropriate, it must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)).

### IV. DISCUSSION

**A. Plaintiff has failed to establish a reasonable basis for imputing liability to Smithfield.**

Assuming, without deciding, that Plaintiff can prove she was subjected to sufficiently severe and pervasive gender-based harassment that altered the terms of her employment with Smithfield, Plaintiff has failed to satisfy her *prima facie* burden of establishing a basis for imputing liability to Smithfield.

An employer's liability under Title VII for workplace harassment varies based on the status of the harasser. *Vance v. Ball State Univ.*, — U.S. —, 133 S. Ct. 2434, 2439 (2013). An employer is subject to vicarious liability for a victimized employee when there is an actionable

5

hostile environment created by a supervisor who has immediate or higher authority over the employee. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998). When no tangible employment action has been taken, the employer can raise an affirmative defense to liability. *Faragher*, 524 U.S. at 807-08. An affirmative defense is not available when the supervisor's harassment concludes with a tangible employment action like discharge, demotion, or an undesirable reassignment. *Id.* at 808.

When the harassing employee is merely the victim's coworker, the employer is liable only if it was negligent in controlling working conditions. *Vance*, 133 S. Ct. at 2439. An employee is deemed a supervisor for vicarious liability under Title VII if he "is empowered by the employer to take tangible employment actions against the victim." *Id.* A "tangible employment action" is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 2442 (internal quotation marks omitted). A supervisor also has the "authority to inflict direct economic injury." *Id.* at 2448.

### 1. For purposes of Title VII, Lowery is not a supervisor.

Defendant argues that Plaintiff's claim fails under either the supervisor or coworker standard because she has failed to present sufficient record evidence. Def.'s Mem. [DE-49] at 18. In response, Plaintiff contends that the evidence is clear that Lowery was her supervisor. Pl.'s Opp'n. [DE-52] at 10.

Initially, this court must decide whether Lowery was Plaintiff's supervisor or merely a coworker under Title VII, a question of law. *See Rhodes v. Johnson*, No. 3:13CV00109-MOC-DSC, 2014 WL 2531594, at *6 (W.D.N.C. June 5, 2014) (noting that the determination of whether defendant was plaintiff's supervisor under Title VII or merely a coworker was a question

of law). The use of the title *Superintendent* to describe Lowery's position at Smithfield is not dispositive on the issue of whether he was a supervisor for purposes of Title VII. *See Vance*, 133 S. Ct. 2444-46 (acknowledging that "the term 'supervisor' has varying meanings both in colloquial usage and in the law" and for that reason, a court cannot rely on the term's general usage when determining who is a supervisor under Title VII); *McKinnish v. Donahoe*, 40 F.Supp. 3d 689, 695 (W.D.N.C. 2014) (noting that *Vance* provided courts should not rely on titles when determining whether a person was a supervisor under Title VII).

In this case, the evidence reveals that Lowery did not have the authority to discipline or terminate employees, including Plaintiff. *See* Lowery Dep. [DE-51-11] at 45:17-23, 50:11-15; Russ Dep. [DE-51-12] at 25:25, 26:1-20. In fact, at Smithfield, this authority was held by Human Resources. *See* Russ Dep. [DE-51-12] at 26:1-2. Moreover, Plaintiff has not cited any evidence establishing that Lowery made recommendations concerning tangible employment actions or that the actual decision-makers accorded his recommendations any substantial weight.

In sum, applying the standard set forth in *Vance* to the facts of this case, it is clear that Lowery was not Plaintiff's supervisor for purposes of Title VII. Therefore, Lowery is properly characterized as Plaintiff's coworker.

### 2. Plaintiff cannot establish that Defendant is liable for coworker harassment.

When the harasser is the victim's coworker, "the employer is liable only if it was negligent in controlling conditions." *Vance*, 133 S. Ct. at 2439; *see Ellerth*, 524 U.S. at 759 (holding that "[n]egligence sets a minimum standard for employer liability under Title VII"). An employer may be liable in negligence if it knew or should have known about the harassment and declined to take effective action to end it. *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 333-34 (4th Cir. 2003). When an employer has notice of the harassment, it must respond with

remedial action designed to end the harassment. *E.E.O.C. v. Xerxes Corp.*, 639 F.3d 658, 669 (4th Cir. 2011).

### a. The record is devoid of evidence establishing that Smithfield knew or should have known about Lowery's alleged sexual harassment until July 18, 2011, the day before Plaintiff resigned.

Plaintiff cannot establish that Smithfield acted negligently because she cannot show that the company knew or should have known about the alleged sexual harassment. In particular, Plaintiff admits, and the record establishes, that her first and only formal complaint to Smithfield management regarding Lowery's alleged sexual harassment occurred on July 18, 2011, the day before she resigned. *See* Pl.'s Interrog. Resp. [DE-51-2] ¶ 7; Pl.'s Suppl. Interrog. Resp. [DE-51-5], ¶ 7; Cooper Dep. [DE-51-8] at 187:1-21; Pope Aff. [DE-51-14] ¶¶ 7, 15. Notably, assuming Plaintiff's allegations are true, it would mean that she was experiencing sexual harassment for *over four years* before she made a complaint to Smithfield management. This inordinate delay is unreasonable and inconsistent with a victim's obligation under Title VII to promptly inform the employer when a problem exists. *See Matvia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261, 269-70 (4th Cir. 2001) (holding that a victim must promptly report harassment if she wishes to recover under Title VII). Smithfield cannot be said to be negligent when Plaintiff allowed the conduct to go on for over four years before making a complaint. For this reason, Plaintiff has failed to meet her burden of establishing that Smithfield was negligent.

Plaintiff likewise is unable to prove Smithfield acted negligently because it should have known about the alleged sexual harassment prior to July 18, 2011. Specifically, the evidence before the court suggests that Plaintiff actively concealed the alleged sexual harassment from Smithfield while it was ongoing. On two occasions, on June 15, 2010, and again on June 23, 2011, Plaintiff signed Smithfield's Annual Business Conduct Certification forms certifying that

she "[did] not know about or suspect any unreported misconduct, illegal activities, fraud, misuse of Smithfield's assets or violations of any other Smithfield policy, *including but not limited to its policies regarding . . . sexual harassment and hostile work environment. See* Cooper Dep. [DE-51-9] Exs. 11, 12 (emphasis added).

### b. Smithfield took immediate action in response to Plaintiff's allegations.

The evidence of record reveals that after Plaintiff made her formal complaint in July of 2011, Smithfield took prompt action aimed toward ending the alleged harassment. In fact, upon learning of Plaintiff's allegations on July 18, 2011, Smithfield management immediately referred Plaintiff to the Director of Human Resources, Jamie Pope, and he promptly initiated an investigation. *See* Pope Aff. [DE-51-14] ¶¶ 8-12; Cooper Dep. [DE-51-8] at 186:1-25, 187:1-2. Pope interviewed Plaintiff and asked her to prepare a written statement regarding her allegations. *See* Pope Aff. [DE-51-14] ¶¶ 8, 10, 14; Cooper Dep. [DE-51-8] at 186:15-16, 187:1-25. Pope interviewed each of the witnesses Plaintiff identified as having knowledge of the alleged sexual harassment and requested that they, too, provide written statements.[6] *See* Pope Aff. [DE-50-14] ¶ 11. Not one of the witnesses was able to verify or corroborate Plaintiff's allegations. *Id.* That same day, Pope also thoroughly interviewed Lowery, and he adamantly denied all wrongdoing. *See id.* at ¶ 12; Lowery Dep. [DE-51-11] at 79:19-25, 80:1-24. Despite the fact that Pope was unable to verify or corroborate Plaintiff's allegations against Lowery, he had Lowery execute a copy of the company's Anti-Harassment policy sheet, which verified he understood the company's expectations for employees. *See* Pope Aff. [DE-51-14] ¶ 13 Exh. 4 (Smithfield's "Anti-Harassment Policy Highlights").

---

[6] Pope interviewed and obtained written statements from Monica Williams, Sucorya Campbell, and Elijah Locklear, all individuals that worked with Plaintiff. *See* Pope Aff. [DE-51-14], ¶¶ 10, 11; Lowery Dep. [DE-51-11] at 81:1-4.

The evidence also shows that Pope took immediate steps to ensure that Plaintiff would have no further workplace interaction with Lowery while the investigation was ongoing. In particular, following Plaintiff's complaint on July 18, 2011, Pope gave Plaintiff paid administrative leave for the remainder of the day. *See* Pope Aff. [DE-51-14] ¶ 10. The next day, July 19, 2011, Pope told Plaintiff that he could transfer Lowery to the first shift pending completion of the investigation as an additional measure to prevent Plaintiff from undergoing workplace interactions with Lowery. *See id.* at ¶ 14. Plaintiff informed Pope she had decided to resign. *See id.* Pope asked Plaintiff not to resign and told her that he had not completed his investigation. *See id.*

The fact that the record reveals Plaintiff refused Pope's offers and elected to resign does not undercut the company's efforts. In fact, the evidence reveals that Smithfield's response to Plaintiff's allegations was both swift and consistent with its obligations under Title VII.

**B. Plaintiff's post-discovery declaration is an attempt to create genuine issues of material fact where none exist.**

In Plaintiff's Appendix to the Statement of Facts, filed in support of her Opposition to Defendant's Motion for Summary Judgment, she has filed the "Declaration of Lisa Cooper" ("Cooper Declaration"). *See* Cooper Decl. [DE-54]. Cooper's Declaration, dated September 24, 2016, was made post-discovery.

Federal Rule of Civil Procedure 56(c)(4) requires that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Affidavits filed on summary judgment must contain admissible evidence and be based upon personal knowledge. *Pledger v. Mayview Convalescent Home, Inc.*, No. 5:07CV235-F, 2009 WL 1010428, at *18 (E.D.N.C. Apr. 14, 2009) (citing *Evans v. Tech. Applications &*

10

*Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996)).

As addressed below, the Cooper Declaration presents the following deficiencies: (1) it refers to claims from the Third Amended Complaint that exceed the scope of Plaintiff's charge of discrimination; and (2) it attempts to advance allegations that contradict Plaintiff's deposition and discovery responses.

### 1. The Cooper Declaration refers to claims from Plaintiff's Third Amended Complaint that were dismissed because they exceeded the scope of Plaintiff's charge of discrimination.

The Cooper Declaration refers to Plaintiff's allegations that Lowery threatened to kill her. *See* Cooper Decl. [DE-54] ¶¶ 15, 16, 20. On August 14, 2015, this court held that "[a]ny allegations that Lowery threatened [Plaintiff's] life . . . must be stricken from the [Third Amended Complaint] because they fall outside the scope of the Charge." *See* Aug. 14, 2015 Order [DE-33] at 5. The importance of this ruling was that Lowery's alleged threats to kill Plaintiff cannot be considered by this court because they were never properly before this court. *See Evans*, 80 F.3d at 963 (holding that a Title VII lawsuit is to be based only on discrimination claims stated in the initial charge, those claims that are reasonably related, and those claims that have developed during reasonable investigation of the original complaint); *Martin v. Bolden*, No. WMN-15-3987, 2016 WL 5934076, at *2 (D.Md. Oct. 12, 2016) (same). Consequently, the portions of Plaintiff's Declaration and Opposition that advance and rely on Plaintiff's allegations that Lowery threatened her life must be excluded.

### 2. The Cooper Declaration attempts to advance allegations that contradict Plaintiff's deposition and responses made during discovery.

Defendant contends that the Cooper Declaration is a "sham" affidavit because its allegations contradict Plaintiff's prior deposition testimony and disclosures made during discovery. Def's Reply [DE-55] at 4. The "sham affidavit doctrine" provides that the court,

when considering a motion for summary judgment, may disregard an affidavit contradicting the affiant's prior testimony if it appears the affidavit was filed in an attempt to manufacture an issue of fact. *See, e.g., Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 975 (4th Cir. 1990); *Howard v. Malcolm*, 658 F.Supp. 423, 428 (E.D.N.C. 1987).

In light of the examples addressed below, the court concludes that the sham affidavit doctrine applies. Therefore, this court will disregard the Cooper Declaration [DE-54]. *See Barwick v. Celotex Corp.*, 736 F.2d 946, 960 (4th Cir. 1984) (holding that a court should not credit an affidavit that contradicts the party's sworn testimony).

### a. The allegation in the Cooper Declaration that Plaintiff requested a transfer in March of 2011 is contradicted by her deposition testimony.

In the Cooper Declaration, Plaintiff alleges that "[i]n approximately March 2011, I requested a transfer from Jamie Pope to another department or another city to get away from Mr. Lowery. However, I was told that there were no vacancies to facilitate the transfer." *See* Cooper Decl. [DE-54] ¶ 17. At her May 17, 2016 deposition, Plaintiff *did* testify that she asked Pope to transfer her to another city. *See* Cooper Dep. [DE-51-8] at 195:15-25, 196:1-15 . However, Plaintiff conceded during her deposition testimony that she did not make the request for a transfer until after she complained to Pope on July 18, 2011, the day before she resigned. *Id.*

### b. The allegation in the Cooper Declaration that Plaintiff reported Lowery to HR employee Lynn Dove in April of 2011 is contradicted by Plaintiff's deposition testimony and discovery responses.

In the Cooper Declaration, Plaintiff alleges that

[i]n approximately 2011, I complained to Lynn Dove, who was the Human Resources Manager, about Lowery's conduct. I verbally provided her with details of the sexual harassment by Lowery against me so that Human Resources could conduct an investigation. I provided Human Resources with names of witnesses who could support my claim of sexual harassment.

*See* Cooper Decl. [DE-54] ¶ 18. Plaintiff further alleged that "[n]othing was done after I

complained to Dove." *See id.* at ¶ 19.

Once again, Plaintiff's allegations are contradicted by her deposition testimony, which establishes that her first and only complaint to Smithfield management took place on July 18, 2011, the day before she voluntarily resigned her employment. *See* Cooper Dep. [DE-51-8] at 185:11-25, 186:1-25, 187:1-25. The court finds it noteworthy that Plaintiff did not identify Dove in her Rule 26(a)(1) initial disclosures as an individual likely to have discoverable information relevant to the disputed facts in this case. *See* Pl.'s Init. Discl. [DE-51-1]. Moreover, Plaintiff failed to identify Dove as an individual likely to have knowledge or information relating to any of the facts or claims asserted in this action in her interrogatory responses. Pl.'s Interrog. Resp. [DE-51-2] ¶ 1.

Finally, when Plaintiff was asked to identify "any internal complaint of harassment or discrimination made by [her], or on [her] behalf" during her employment, the alleged complaint to Dove, in April of 2011, was not mentioned. *See* Pl's Interrog. Resp. [DE-51-2] ¶ 7; Pl.'s Suppl. Interrog. Resp. [DE-51-5] ¶ 7. Rather, Plaintiff responded that her first and only complaint to Smithfield management occurred in July of 2011. *See* Pl.'s Interrog. Resp. [DE-51-2] ¶ 7; Pl.'s Suppl. Interrog. Resp. [DE-51-5] ¶ 7.

### c. Plaintiff's allegation in the Cooper Declaration that she resigned because Pope ended his investigation before calling her witnesses is contradicted by her deposition testimony.

Finally, Plaintiff alleges in the Cooper Declaration that

> Jamie Pope essentially told [me] the day after I complained about Lowery that he really could not do anything about it. He further stated that he was ending his investigation even though he had not bothered to call all of my witnesses.

*See* Cooper Decl. [DE-54] ¶ 23. Plaintiff refers to this alleged comment by Pope as the justification for her resignation. *See* Pl.'s Opp'n [DE-52] at 9.

13

Here again, Plaintiff's allegations in the Cooper Declaration directly contradict her prior deposition testimony. During her deposition, when asked about Pope's response to her statement that she intended to resign on July 19, 2011, Plaintiff recounted as follows:

> [Pope] said it's still being investigated. He just continued to say that, and that was it. But then, when I got ready to got [sic] up – when I got ready to get up out of the chair, he said it's an ongoing investigation, but they want to put [Lowery] on first [shift] and me on second [shift]. I said, I'm not going to work under those conditions.

*See* Cooper Dep. [DE-51-8] at 194: 21-25, 195: 1-2.

Plaintiff's deposition testimony is consistent with the evidence of record, which establishes that Pope was still investigating Plaintiff's allegations when she chose to resign. *See id*; Pope Aff. [DE-51-14] ¶ 14. This is significant for a couple of reasons. First, it proves that Smithfield's response was prompt and reasonably calculated to determine if there was merit to Plaintiff's allegations. Second, it proves that Plaintiff declined the efforts of the company.

In sum, the Cooper Declaration, designed by Plaintiff to create a factual dispute, must be disregarded. What remains of Plaintiff's claim does not create a genuine issue of material fact.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment [DE-48] is ALLOWED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED.

This, the _3ᵛ_ day of November, 2016.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge