**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-1002

LISA COOPER,

        Plaintiff - Appellant,

   v.

THE SMITHFIELD PACKING COMPANY, INC.,

        Defendant - Appellee.

-------------------------------

U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

        Amicus Supporting Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington. James C. Fox, Senior District Judge. (7:13-cv-00145-F)

Argued: December 6, 2017                                                         Decided: March 5, 2018

Before DUNCAN and DIAZ, Circuit Judges, and Paula XINIS, United States District Judge for the District of Maryland, sitting by designation.

Affirmed by unpublished opinion. Judge Xinis wrote the opinion in which Judge Duncan and Judge Diaz concurred.

**ARGUED:** Angela Newell Gray, GRAY NEWELL, Greensboro, North Carolina, for Appellant. Kurt George Larkin, HUNTON & WILLIAMS, LLP, Richmond, Virginia, for Appellee. **ON BRIEF:** James L. Lee, Deputy General Counsel, Jennifer S. Goldstein, Associate General Counsel, Elizabeth E. Theran, Acting Assistant General Counsel, Susan L. Starr, Office of General Counsel, UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus United States Equal Employment Opportunity Commission.

Unpublished opinions are not binding precedent in this circuit.

XINIS, District Judge:

Plaintiff-Appellant Lisa Cooper is a former employee of Defendant-Appellee The Smithfield Packing Company (Smithfield). Cooper sued Smithfield under Title VII of the Civil Rights Act and state tort law based on the actions of Tommy Lowery, a superintendent with whom Cooper worked. In a series of decisions, the district court dismissed Cooper's First Amended Complaint; struck certain factual allegations from Cooper's Second and Third Amended Complaints; and granted summary judgment to Smithfield on the lone remaining claim in Cooper's Fourth Amended Complaint. On review, we find that the district court committed no error when it dismissed Cooper's First Amended Complaint or in granting summary judgment in Smithfield's favor. We further find that any error committed by the district court in striking factual allegations from the Second and Third Amended Complaints is harmless. Therefore, we affirm the judgment of the district court.

## I.     Factual and Procedural Background

Between 1995 and 2011, Cooper was employed by Smithfield, save for a short period when she had been terminated and then reinstated for reasons unrelated to this case. According to allegations in Cooper's Fourth Amended Complaint, Lowery sexually harassed her on a regular basis between 2007 and 2011, repeatedly asking her to sleep with him, threatening her when she refused to sleep with him, physically brushing up against her, demeaning her relationship with her husband, and requiring her to work in close proximity with him for no apparent reason. This pattern of abuse culminated in

3

July 2011, when Cooper reported Lowery's behavior to Smithfield's human resources department (HR). After her initial verbal report, Cooper was asked by HR to provide a written statement, which she submitted the following day. The next day, while Smithfield continued to investigate the claims, Cooper resigned.

Cooper timely filed a claim with the EEOC, alleging discrimination, harassment, and retaliation arising from Lowery's alleged pattern of sexual abuse. After receiving a right-to-sue letter, Cooper brought suit against Smithfield for retaliation (Count I); wrongful termination, gender discrimination, and hostile work environment (Count II); negligent infliction of emotional distress (Count III); intentional infliction of emotional distress (Count IV); and negligent supervision and retention (Count V).

The District Court dismissed with prejudice all counts in Cooper's First Amended Complaint except Count II, the hostile work environment claim. With respect to Cooper's tort claims, the district court first found that Cooper's negligent infliction of emotional distress claim failed as a matter of law because Cooper had pleaded intentional and not negligent conduct, and that her intentional infliction claim failed because the conduct alleged was not sufficiently "extreme and outrageous." The district court found that Cooper's negligent retention and supervision claim failed because no common-law tort was involved.

With respect to the Title VII claims, the district court reasoned that Cooper's retaliation claim failed as a matter of law because Cooper had not alleged an adverse employment action, and her disparate treatment claim likewise failed because she averred no facts demonstrating that Smithfield had treated her differently from other similarly

4

situated employees. The district court dismissed Cooper's hostile work environment claim with leave to amend so that Cooper could marshal additional facts to support that Lowery's conduct was motivated by her gender and was severe and pervasive, as required to state a claim.

Cooper subsequently filed her Second Amended Complaint from which she removed the dismissed counts and added facts supporting her hostile work environment claim, but Cooper otherwise did not meaningfully change allegations relating only to the dismissed claims. Consequently, Smithfield moved to strike certain factual allegations included in the Second Amended Complaint, including those regarding Cooper's job qualifications, Lowery's treatment of other workers, and statements Lowery made about the race of Cooper's husband, which the district court granted. After Cooper filed her Third Amended Complaint, removing the allegations stricken by the district court, Smithfield again moved to dismiss. The district court denied the motion to dismiss, but once again struck portions of the Third Amended Complaint relating primarily to death threats Cooper alleged that Lowery had made, reasoning that these allegations were not presented to the EEOC and therefore unpreserved, but otherwise denied Smithfield's motion.

Cooper then filed her Fourth Amended Complaint. After the close of discovery, Smithfield moved for summary judgment as to the remaining hostile work environment claim. The district court granted summary judgment in Smithfield's favor on the ground that Lowery's misconduct could not be imputed to Smithfield. Cooper appeals.

5

## II.     Standard of Review

A district court properly dismisses a claim under Federal Rule of Civil Procedure 12(b)(6) when the complaint does not include sufficient factual allegations to render the claim facially plausible, or to permit reasonable inference that the defendant is liable for the alleged misconduct.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  The court accepts as true all well-pleaded factual allegations and makes all reasonable inferences in the favor of the plaintiff.  *Philips v. Pitt Cty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).  Summary judgment similarly is appropriate when the court, construing all evidence and drawing all reasonable inferences in the non-movant's favor, finds no genuine dispute as to material fact exists and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see In re Family Dollar FLSA Litig.*, 637 F.3d 508, 512 (4th Cir. 2011).

On appeal, this Court reviews the district court's conclusions of law regarding dismissal and summary judgment *de novo* and reviews factual findings for clear error. *See Monroe v. City of Charlottesville*, 579 F.3d 380, 385 (4th Cir. 2009); *Newport News Holdings Corp. v. Virtual City Vision, Inc.*, 650 F.3d 423, 434 (4th Cir. 2011); *N.C. State Conference of NAACP v. McCrory*, 831 F.3d 204, 219 (4th Cir. 2016), *cert. denied sub nom. North Carolina v. N.C. State Conference of NAACP*, 137 S. Ct. 1399 (2017).  A district court's striking of factual allegations from a complaint is reviewed for abuse of discretion.  *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 384 (4th Cir.

2017); *see also Renaissance Greeting Cards, Inc. v. Dollar Tree Stores, Inc.*, 227 F. App'x 239, 246 (4th Cir. 2007).

### III. Discussion

#### A. Dismissal of First Amended Complaint

Cooper appeals the dismissal of the Intentional Infliction of Emotional Distress (IIED), Disparate Treatment and Wrongful Termination, and Retaliation claims from her First Amended Complaint. We address each in turn.

##### 1. Intentional Infliction of Emotional Distress

To sustain an IIED claim under North Carolina law, a plaintiff must allege plausibly that (1) the defendant engaged in extreme and outrageous conduct; (2) the conduct was intended to cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress. *See Waddle v. Sparks*, 414 S.E.2d 22, 27 (N.C. 1992). "Conduct is extreme and outrageous when it exceeds all bounds usually tolerated by a decent society." *Shreve v. Duke Power Co.*, 354 S.E.2d 357, 359 (N.C. Ct. App. 1987). A plaintiff must plead with specificity such shocking and outrageous conduct by the wrongdoer. *See Piro v. McKeever*, 782 S.E.2d 367, 372 (N.C. Ct. App. 2016).

Undoubtedly, sexual harassment is odious and offensive in any context. When sufficiently extreme, the conduct may also support a common-law IIED claim. *See Hogan v. Forsyth Country Club Co.*, 340 S.E.2d 116, 121 (N.C. Ct. App. 1986). The critical flaw in Cooper's First Amended Complaint, however, is her failure to plead facts sufficient to raise the inference that Lowery's actions were "extreme and outrageous."

7

*Cf. id.* (on summary judgment, finding a genuine issue of material fact with respect to intentional infliction of emotional distress for sexual harassment when the plaintiff provided evidence that the defendant told her he wanted to "take" her, "would brush up against her, rub his penis against her buttocks and touch her buttocks with his hands," and "screamed profane names at her, threatened her with bodily injury, and on one occasion, advanced toward her with a knife and slammed it down on a table in front of her."). Rather, in her First Amended Complaint, Cooper averred in a general and conclusory fashion that she was "subjected to sexual harassment . . . which mostly consisted of sexually explicit comments" and that the harassment "worsened and included, but was not limited to, sexually explicit statements made to her, sexual advances made toward her, inappropriate sexual contact and making continuous physical and emotional threats." J.A. 25. She further alleged that Lowery subjected her to "offensive sexual harassment, in terms of the work conditions, privileges, benefits, and work environment [sic]." J.A. 25, 28. Devoid of any specific facts accompanying these characterizations, the First Amended Complaint simply failed to make out acts sufficiently extreme and outrageous to sustain an IIED claim.[1]

---

[1] The subsequent iterations of Cooper's Complaint provided further detail. However, Cooper never requested leave to amend her Complaint as to the IIED claim, nor did she challenge the district court's dismissal of the claim with prejudice. Therefore, our review is confined to the allegations set forth in the First Amended Complaint.

## 2. Disparate Treatment and Wrongful Termination

Cooper's First Amended Complaint failed to allege sufficiently that she suffered an adverse employment action or that similarly situated employees outside of her protected class received more favorable treatment to state a claim for disparate treatment. "Disparate treatment theory as it has emerged in application [to] . . . Title VII . . . has consistently focused on the question of whether there has been discrimination in what could be characterized as ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating." *Page v. Bolger*, 645 F.2d 227, 233 (4th Cir. 1981). Here, Cooper alleged that Lowery "requir[ed] her to work later than her male coworkers for no legitimate business reason," that Lowery required her to work in close physical proximity to him and complete "extensive menial tasks," and that "Lowery did not engage in aforementioned [sexually harassing] acts with any of the male employees." J.A. 25. These general and conclusory averments do not adequately support a reasonable inference that Lowery discriminated against Cooper regarding an employment decision comparable to hiring, firing, promoting, or compensating an employee.

As to Cooper's wrongful termination/constructive discharge claim, Cooper's First Amended Complaint was likewise deficient. To make out a claim for constructive discharge, Cooper must allege plausibly that her "working conditions became so intolerable that a reasonable person in [her] position would have felt compelled to resign." *Green v. Brennan*, 136 S. Ct. 1769, 1776–77 (2016). Because Cooper did not plead facts demonstrating such intolerable conditions, this claim was properly dismissed.

9

### 3. Retaliation

Cooper alleged in her First Amended Complaint that Smithfield retaliated against her by failing to investigate her complaints about Lowery and "ratifying" Lowery's conduct; "failing to transfer her or Lowery to work in other departments . . . [and] continuing to allow Lowery to supervise her"; and "disregarding [her] concerns that Lowery's conduct was affecting her and her ability to work under his supervision, thereby making a concerted effort to get the Plaintiff to quit." J.A. 27–28. Although Cooper is correct that an adverse employment action giving rise to a retaliation claim need not be an "ultimate" employment action (*e.g.*, hiring or firing), the action must nonetheless be "materially adverse." *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). A plaintiff must plausibly allege that the employer's response would dissuade a reasonable employee from making or supporting a charge of discrimination. *Id.* Cooper, by contrast, alleges *inaction* on the part of Smithfield. As pleaded, Cooper's employment status remained the same, as did her wages and terms of employment. *See Yeager v. UPMC Horizon*, 698 F. Supp. 2d 523, 546–47 (W.D. Pa. 2010) (cited by *Robinson v. G.E. Aviation*, No. 7:10-cv-00240-BR, 2012 WL 607559, at *2 (E.D.N.C. Feb. 24, 2012)); *cf. Baird v. Gotbaum*, 662 F.3d 1246, 1250 (D.C. Cir. 2011). And Cooper's voluntary resignation is not an adverse employment action on Smithfield's part. *See Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 189 (4th Cir. 2004). This claim, too, was properly dismissed.

## B. Summary Judgment on the Hostile Work Environment Claim

The district court properly granted summary judgment in Smithfield's favor on Cooper's hostile work environment claim because liability for Lowery's actions could not, as a matter of law, be imputed to Smithfield. An employer may be liable for the harassing behavior of its employee in one of two ways. First, if the plaintiff demonstrates that the harasser is the plaintiff's supervisor, then the employer is strictly liable for harassment culminating in a "tangible employment action." *See Boyer-Liberto v. Fontainbleau Corp.*, 786 F.3d 264, 278 (4th Cir. 2015). As an affirmative defense, the employer may establish that it exercised reasonable care to prevent and correct the harassing behavior, and that the plaintiff unreasonably failed to take advantage of the employer's preventive or corrective measures. *See id.*

Alternatively, if the harasser is a coworker rather than a supervisor, then the employer may be held liable only if the employer "knew or should have known about the harassment and failed to take effective action to stop it." *Pryor v. United Air Lines, Inc.*, 791 F.3d 488, 498 (4th Cir. 2015) (quoting *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 319 (4th Cir. 2008)). An employer's negligence may be established where the plaintiff proves that the employer failed to provide reasonable procedures for victims of harassment to report complaints. *See Hoyle v. Freightliner, LLC*, 650 F.3d 321, 335 (4th Cir. 2011). An employer's written anti-harassment policy "provides 'compelling proof' that the company exercised reasonable care in preventing and correcting harassment," unless the policy was "adopted or administered in bad faith or . . . it was otherwise

defective or dysfunctional." *Id.* (quoting *Barrett v. Applied Radiant Energy*, 240 F.3d 262, 266 (4th Cir. 2001)); *cf. Davis v. City of Charlottesville Sch. Bd.*, 498 F. App'x 231, 2012 WL 5953404, at *1 (4th Cir. 2012) (finding complaint adequately made out negligence when plaintiff "alleged that she immediately reported her first incident of harassment to a supervisor and that the harassment occurred again after she brought it to the attention of her employer").

The district court correctly determined that Lowery was not a supervisor under Title VII. *Vance v. Ball State University*, 133 S. Ct. 2434 (2013), clarified that a "supervisor" under Title VII is a person "empowered by the employer to take tangible employment actions against the victim." *Id.* at 2439. Specifically, the individual must possess the power to hire, fire, demote, promote, transfer, or discipline the plaintiff. *Id.* at 2440. By contrast, "those who, although lacking this power, nevertheless have the ability to direct a co-worker's labor to some ill-defined degree" are not supervisors. *Id.*

The facts construed in the light most favorable to Cooper do not support a finding of supervisory liability under *Vance*. Lowery was neither involved in nor had the authority to hire or fire Cooper, or make any like-kind employment decisions. At best, Lowery provided informal evaluations of Cooper to the HR department, and seemingly had some input regarding vacation days and her work schedule. J.A. 510–12; 743–45. This is insufficient to confer supervisory status under Title VII. Accordingly, the district court did not err by determining that Lowery was Cooper's coworker.

Under coworker liability, the evidence construed most favorably to Cooper does not support a finding that Smithfield was negligent—*i.e.*, that it knew or should have

12

known about Lowery's harassment of Cooper and failed to take any corrective action. Smithfield maintained a written anti-harassment policy reasonably calculated to prevent and address workplace sexual harassment, as well as a written code of conduct prohibiting harassment. J.A. 204–05; 576–78. Smithfield trained employees annually on anti-harassment standards, including the requirement to report violations of Smithfield's code of conduct, and maintained a hotline for employees to report concerns anonymously. *See, e.g.*, J.A. 574. This clearly is not a case in which Smithfield adopted a "see no evil, hear no evil strategy." *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 423 (4th Cir. 2014).

Further, the record evidence shows that Smithfield first learned of Lowery's harassment only days before Cooper voluntarily resigned.[2] Smithfield immediately began investigating Cooper's claims and offered to change Cooper's work assignment while the investigation was ongoing. *Cf. Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 255 (4th Cir. 2015) (prompt investigation of complaint and remedial actions taken in response supported conclusion that employer's response to harassment was effective and that employer was not negligent). Cooper then resigned before Smithfield could provide Cooper any meaningful redress. Taking the evidence in the light most favorable to

---

[2] The district court struck Cooper's sworn declaration submitted in response to Smithfield's motion for summary judgment, finding it a "sham affidavit" designed solely to generate a dispute of material fact after discovery had concluded. Cooper, on appeal, failed to challenge this ruling and so it is waived. The EEOC's arguments as to the sham affidavit, presented as *amici*, cannot preserve that which Cooper did not pursue. *See Snyder v. Phelps*, 580 F.3d 206, 216 (4th Cir. 2009).

13

Cooper, a finding of negligence on this record would be tantamount to requiring Smithfield to "exercise an all-seeing omnipresence over the workplace," which this Court will not do. *Howard v. Winter*, 446 F.3d 559, 567 (4th Cir. 2006). Smithfield's motion for summary judgment on the hostile work environment claim was properly granted.[3]

### C. Allegations Stricken from Second and Third Amended Complaints

Cooper finally challenges the district court's order striking certain allegations from her Second and Third Amended Complaint. The district court's determination had no effect on the ultimate decision to grant summary judgment for failure of proof on Smithfield's supervisory liability and negligence. Accordingly, even if the district court erred in striking allegations that were possibly relevant and properly exhausted, those facts were not material to the summary judgment determination, and any error is harmless.

### IV. Conclusion

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.

---

[3] The EEOC is correct that Cooper should not be penalized for enduring Lowery's longstanding abuse. *See EEOC v. Fairbrook Med. Clinic, PA*, 609 F.3d 320, 330 (4th Cir. 2010). But Smithfield's liability turns not on how long Cooper suffered in silence, but when she *reported* Lowery's harassment (or Smithfield otherwise learned of Lowery's harassment) sufficient to put Smithfield on notice that corrective action must be taken. The EEOC does not dispute that Cooper first reported the harassment to Smithfield's Human Resources department just days before she resigned, and so the EEOC's point, while well taken, is not outcome-determinative.